UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Petters Company, Inc., et al.,

Debtors.

(includes:
Petters Group Worldwide, LLC;
PC Funding, LLC;
Thousand Lakes, LLC;
SPF Funding, LLC;
PL Ltd., Inc.;
Edge One, LLC;
MGC Finance, Inc.;
PAC Funding, LLC;
Palm Beach Financing Holdings, Inc.)

Jointly Administered under
Case No. 08-45257
Jury Trial Demanded

Court File Nos.
08-45258 (GFK)
08-45326 (GFK)
08-45327 (GFK)
08-45328 (GFK)
08-45329 (GFK)
08-45330 (GFK)
08-45331 (GFK)
08-45371 (GFK)
08-45392 (GFK)

Chapter 11 Cases
Judge Gregory F. Kishel

Douglas A. Kelley, Trustee for Petters Company,
Inc., PC Funding, LLC; and SPF Funding, LLC,

Plaintiff,

vs.

Opportunity Finance, LLC; Opportunity Finance
Securitization, LLC; Opportunity Finance
Securitization II, LLC; Opportunity Finance
Securitization III, LLC; International Investment
Opportunities, LLC; Sabes Family Foundation;
Sabes Minnesota Limited Partnership; Robert W.
Sabes; Janet F. Sabes; Jon R. Sabes; Steven Sabes;
Deutsche Zentralgenossenschaftbank AG; West
Landesbank AG; WestLB AG New York Branch;
and The Minneapolis Foundation,

Defendants.

Adv. Proc. No. 10-04301

JURY TRIAL DEMANDED

NOTICE OF HEARING AND MOTION TO DISMISS AMENDED COMPLAINT OF
OPPORTUNITY FINANCE AND ITS RELATED DEFENDANTS

TO:    Plaintiff, Douglas A. Kelley, and all other parties entitled to notice.

1.    Defendants Opportunity Finance, LLC, Opportunity Finance Securitization, LLC, Opportunity Finance Securitization II, LLC, Opportunity Finance Securitization III, LLC, International Investment Opportunities, LLC, the Sabes Family Foundation, Sabes Minnesota Limited Partnership, Robert W. Sabes, Janet F. Sabes, Jon R. Sabes, and Steven F. Sabes ("Movants"), by their undersigned counsel, hereby move the Court for an Order dismissing the above-captioned Adversary Proceeding with prejudice and give notice of hearing.

2.    The Court will set a date and time for hearing on this Motion at 1:30 p.m. on April 5, 2011, in Courtroom 2A, before the Honorable Gregory F. Kishel, Chief Judge of United States Bankruptcy Court, 200 Warren E. Burger Federal Building and U.S. Courthouse, 316 North Robert Street, St. Paul, MN 55101. Any response to this Motion must be filed and served in accordance with the briefing schedule also to be set by the Court. UNLESS A RESPONSE OPPOSING THIS MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

3.    This Motion arises under Fed. R. Bankr. P. 7012, Fed. R. Bankr. P. 7015 and Local Rule 7007-1. This Motion is filed under Fed. R. Bankr. P. 9014 and Local Rules 9013-1 and 9013-2. By this Motion, Movants request that the Court dismiss the above-captioned Adversary Proceeding with prejudice pursuant to Rules 7008, 7009, and 7012 of the Federal Rules of Bankruptcy Procedure.

4.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1344, Fed. R. Bankr. P. 5005, and Local Rule 1070-1. This matter is a core proceeding. The bankruptcy cases jointly administered under No. 08-45257 are now pending in this Court.

5.      In bringing this Motion, Movants do not waive and hereby expressly reserve their right to a jury trial in this matter.

6.      By previous motion dated February 18, 2011, Movants moved to dismiss the initial complaint.  On February 25, 2011, Plaintiff filed an Amended Complaint.  On March 1, 2011, a Summons was issued by the Bankruptcy Court Clerk stating that "an answer under Bankruptcy Rule 7012 to the complaint" is due within 30 days of the issuance of the Summons. A second Summons was issued on March 4, 2011, again stating that a response under Fed. R. Bankr. P. 7012 will be due within 30 days of the issuance of that Summons.  The case management order for the cases jointly administered under No. 08-45257 does not address deadlines for responses to amended complaints, but states that a responsive pleading or motion to dismiss shall be due by the later of February 18, 2011, or "the answer date specified in the summons served on a particular defendant."  In an abundance of caution, however, and assuming that the 30-day deadline applies only to the newly added defendant in this case, this response to the Trustee's Amended Complaint is served and filed within the 14-day timeframe articulated in Fed. R. Civ. P. 15 made applicable to adversary proceedings through Bankruptcy Rule 7015.

WHEREFORE, Movants respectfully request that the Court enter an Order dismissing with prejudice the above-captioned Adversary Proceeding in its entirety pursuant to Rules 7008, 7009, and 7012 of the Federal Rules of Bankruptcy Procedure and granting such other and further relief as the Court deems just and proper.

Dated:  March 11, 2011               WILLIAMS & CONNOLLY LLP
                                     BRIGGS AND MORGAN, P.A.

By:   _/e/ Joseph G. Petrosinelli_

    Joseph G. Petrosinelli (admitted *pro hac vice*)
    Jonathan M. Landy (admitted *pro hac vice*)
    Jefferey D. Bailey (admitted *pro hac vice*)

Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone:     (202) 434-5000
Fax:    (202) 434-5029
Email: jbailey@wc.com

John R. McDonald (#0168592)
Kari S. Berman (#0256705)
Max C. Heerman (#0268227)
Briggs and Morgan, P.A.
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:     (612) 977-9400
Fax:    (612) 977-8650
Email: mheerman@briggs.com

*Attorneys for Opportunity Finance, LLC,*
*Opportunity Finance Securitization, LLC,*
*Opportunity Finance Securitization II, LLC,*
*Opportunity Finance Securitization III, LLC,*
*International Investment Opportunities, LLC, the*
*Sabes Family Foundation, Sabes Minnesota Limited*
*Partnership, Robert W. Sabes, Janet F. Sabes, Jon*
*R. Sabes, and Steven F. Sabes*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | **Jointly Administered Under** |
| | **Case No. 08-45257** |
| Petters Company, Inc., et al., | |
| | Court File Nos.: |
| Debtors. | 08-45258 (GFK) |
| (includes: | 08-45326 (GFK) |
| Petters Group Worldwide, LLC; | 08-45327 (GFK) |
| PC Funding, LLC; | 08-45328 (GFK) |
| Thousand Lakes, LLC; | 08-45329 (GFK) |
| SPF Funding, LLC; | 08-15330 (GFK) |
| PL Ltd., Inc.; | 08-45331 (GFK) |
| Edge One LLC; | 08-45371 (GFK) |
| MGC Finance, Inc.; | 08-45392 (GFK) |
| PAC Funding, LLC; | |
| Palm Beach Finance Holdings, Inc.) | Chapter 11 Cases |
| | Judge Gregory F. Kishel |

Douglas A. Kelley, in his capacity as the Court-appointed
Chapter 11 Trustee of Debtors Petters Company, Inc; PC
Funding, LLC; and SPF Funding, LLC,

        Plaintiff,

vs.                                                                         ADV. NO. 10-04301

Opportunity Finance, LLC; Opportunity Finance
Securitization, LLC; Opportunity Finance Securitization
II, LLC; Opportunity Finance Securitization III, LLC;
International Investment Opportunities, LLC; Sabes
Family Foundation; Sabes Minnesota Limited
Partnership; Robert W. Sabes; Janet F. Sabes; Jon R.
Sabes; Steven Sabes; Deutsche
Zentralgenossenschaftbank AG; West Landesbank AG;
WestLB AG New York Branch; and The Minneapolis
Foundation,

        Defendants.

## MEMORANDUM OF OPPORTUNITY FINANCE AND ITS RELATED
## DEFENDANTS IN SUPPORT OF THEIR MOTION TO DISMISS AMENDED
## COMPLAINT

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND......................................................................................2

    A.    The Parties ...................................................................................2

    B.    The Claims....................................................................................3

    C.    Relationship Between Opportunity Finance and PC Funding ................5

        1.    DZ Bank Lending Facility ........................................................8

        2.    WestLB Lending Facility.........................................................9

    D.    Relationship Between Opportunity Finance and SPF Funding .............9

    E.    Relationship Between the Sabes Family Foundation and SPF Funding...............10

ARGUMENT ...........................................................................................................11

I.    FRAUDULENT TRANSFER CLAIMS RELATING TO TRANSFERS PRIOR
TO OCTOBER 11, 2002 ARE TIME-BARRED. ...........................................11

    A.    Minn. Stat. § 541.05 Bars the Trustee's Claims Related to Transfers
Occurring Prior to October 11, 2002. ...................................................11

    B.    The Trustee Cannot Employ the Doctrine of Fraudulent Concealment. ..............12

II.    THE TRUSTEE LACKS STANDING TO PURSUE FRAUDULENT AND
PREFERENTIAL TRANSFER CLAIMS..........................................................13

    A.    The Trustee Lacks Standing To Pursue Avoidance Claims as Trustee of
PC Funding and SPF Funding. ..............................................................13

    B.    The Trustee Lacks Standing To Pursue Avoidance Claims as Trustee of
PCI. .......................................................................................................14

        1.    Neither Delaware Law Nor Minnesota Law Permits Reverse Veil-
Piercing Under the Circumstances Alleged. ..............................15

        2.    The Trustee Cannot Achieve Substantive Consolidation Through
the Back Door. ........................................................................18

III.    THE FRAUDULENT TRANSFER CLAIMS FAIL AS A MATTER OF LAW.............19

    A.    Repayments of A Secured Debt Are Not Fraudulent Transfers. ...........19

        1.    Under the Bankruptcy Code, A Debtor Cannot Fraudulently
Transfer Property that Has Been Pledged to A Creditor as
Collateral.................................................................................19

        2.    Under the MFTA, Repayments of Secured Debt Are Not
"Transfers."..............................................................................20

    B.    The Trustee's "Constructive" Fraudulent Transfer Claims Fail as A Matter
of Law. ..................................................................................................21

i

        1.     The Trustee Concedes Reasonably Equivalent Value Was Exchanged. .......................................................................................21

        2.     The Trustee Fails To Allege Insolvency or One of Its Equivalents. ..........24

   C.    The Trustee's "Actual" Fraudulent Transfer Claims Fail as A Matter of Law. ....................................................................................................25

   D.    The Trustee's Fraudulent Transfer Claims Fail To Satisfy Rule 9(b). ..................27

IV.    THE TRUSTEE'S REMAINING CLAIMS FAIL AS A MATTER OF LAW. ...............28

   A.    The Trustee Cannot Bring A Turnover and Accounting Claim Because the Relevant Statute Applies Only to Estate Property. .................................................28

   B.    The Trustee Cannot Bring A Substantive Cause of Action for Disallowance. ...........................................................................................29

   C.    The Trustee Cannot Bring Lien Avoidance or Equitable Subordination Claims Because Opportunity Finance and Its Co-Defendants Have Not Filed Any Proof of Claim. .....................................................................................29

   D.    The Trustee's Unjust Enrichment Claim Is Precluded by Federal and State Statutory Law. ..........................................................................................30

CONCLUSION ..............................................................................................................32

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adelphia Recovery Trust v. Bank of Am.*, 390 B.R. 80 (S.D.N.Y. 2008) .....................................13

*ASARCO, LLC v. Americas Mining Corp.*, 396 B.R. 278 (S.D. Tex. 2008)................................14

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ...................................................................................22

*B.E.L.T., Inc. v. Wachovia Corp.*, 403 F.3d 474 (7th Cir. 2005)............................................22, 26

*Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664
     (Bankr. S.D.N.Y. 2000) ........................................................................................................23, 26

*Cognex Corp. v. VCode Holdings, Inc.*, No. 06-1040 (JNE/JJG), 2006 WL 3043129 (D.
     Minn. Oct. 24, 2006).................................................................................................................15

*Compuware Corp. v. Innovatec Commc'ns*, No. 03-C-429, 2005 WL 2076717 (E.D. Wis.
     Aug. 24, 2005) ..........................................................................................................................21

*Dembo v. Internal Revenue Serv. (In re Dembo)*, 126 B.R. 195 (Bankr. E.D. Pa. 1991)..............30

*Drobnak v. Andersen Corp.*, 561 F.3d 778 (8th Cir. 2009) ...........................................................28

*Epperson v. Entm't Express, Inc.*, 338 F. Supp. 2d 328 (D. Conn. 2004) .....................................21

*Freeland v. Enodis Corp.*, 540 F.3d 721 (7th Cir. 2008)..............................................................24

*Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986 (8th Cir. 2007) ..............................2

*Harstad v. First Am. Bank*, 155 B.R. 500 (Bankr. D. Minn. 1993)...............................................13

*Henry v. Lehman Commercial Paper, Inc. (In re First Alliance Mortg. Co.)*, 471 F.3d 977
     (9th Cir. 2006)......................................................................................................................19, 20

*Holloway v. Household Auto. Fin. Corp.*, 227 B.R. 501 (N.D. Ill. 1998) .....................................29

*In re Andrew Velez Constr., Inc.*, 373 B.R. 262 (Bankr. S.D.N.Y. 2007) .....................................28

*In re Augie/Restivo Baking Co.*, 860 F.2d 515 (2d Cir. 1988).......................................................18

*In re Billy Joe Sims*, 278 B.R. 457 (Bankr. E.D. Tenn. 2002) .......................................................29

*In re Carrozzella & Richardson*, 286 B.R. 480 (D. Conn. 2002)..................................................24

*In re Charter Co.*, 913 F.2d 1575 (11th Cir. 1990) ......................................................................28

*In re Charterhouse, Inc.*, 84 B.R. 147 (Bankr. D. Minn. 1988) ....................................................31

*In re Colonial Realty Co.*, 980 F.2d 125 (2d Cir. 1992) ................................................29

*In re Crawford*, 274 B.R. 798 (8th Cir. B.A.P. 2002) ...................................................13

*In re Elrod Holdings Corp.*, 421 B.R. 700 (Bankr. D. Del. 2010) ................................24

*In re Hanson*, 373 B.R. 522 (Bankr. N.D. Ohio 2007) ..................................................24

*In re Hechinger Inv. Co.*, 274 B.R. 71 (D. Del. 2002) ...................................................31

*In re Image Masters, Inc.*, 421 B.R. 164 (Bankr. E.D. Pa. 2009) ...........................22, 24

*In re Knox*, 237 B.R. 687 (Bankr. N.D. Ill. 1999) ........................................................31

*In re Northgate Computer Sys., Inc.*, 240 B.R. 328 (Bankr. D. Minn. 1999) ...............22

*In re Ozark Rest. Equip. Co.*, 816 F.2d 1222 (8th Cir. 1987) ..................................30, 31

*In re Painter*, 84 B.R. 59 (W.D. Va. 1988) ...................................................................30

*In re Polaroid Corp.*, 424 B.R. 446 (Bankr. D. Minn. 2010) ........................................18

*In re Propex, Inc.*, 415 B.R. 321 (Bankr. E.D. Tenn. 2009) ..........................................24

*In re Senior Cottages of Am., LLC*, 482 F.3d 997 (8th Cir. 2007) .................................2

*In re Teligent, Inc.*, 325 B.R. 134 (S.D.N.Y. 2005) ......................................................28

*In re Vintero Corp.*, 735 F.2d 740 (2d Cir. 1984) .........................................................13

*Knight v. Prod. Res. Grp., LLC*, No. Civ. 036443 (MJD/JGL), 2005 WL 1630523 (D.
  Minn. July 11, 2005) ...........................................................................................20, 21

*Kranz v. Koenig*, 240 F.R.D. 453 (D. Minn. 2007) .......................................................27

*Lingenfelter v. Stoebner*, No. 03-CV-5544 (JMR/FLN), 2005 WL 1225950 (D. Minn.
  May 23, 2005)..........................................................................................................27

*Lippe v. Bairnco Corp.*, 230 B.R. 906 (S.D.N.Y. 1999)......................................24, 25, 26

*Lustig v. Weisz and Assoc. (In re Unified Commercial Capital, Inc.)*, 260 B.R. 343
  (Bankr. W.D.N.Y. 2001)...........................................................................................24

*Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260 (D. Del. 1989) .....................16

*Mosier v. Cargill Fin. Servs. Corp. (In re Mansfield Corp.)*, 339 B.R. 194 (Bankr. D.
  Minn. 2006)..............................................................................................................12

*Norwest Bank Worthington v. Ahlers*, 485 U.S. 197 (1988)....................................30, 31

*Nw. Bank & Trust Co. v. First Ill. Nat'l Bank*, 354 F.3d 721 (8th Cir. 2003) ...............................27

*Parnes v. Gateway 2000, Inc.*, 122 F.3d 539 (8th Cir. 1997) .........................................................28

*Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077 (8th Cir. 1999) ...................................................2

*Resolution Trust Corp. v. Armbruster*, 52 F.3d 748 (8th Cir. 1995) ............................................13

*Richardson v. The Huntington Nat'l Bank (In re Cyberco Holdings, Inc.)*, 382 B.R. 118
    (Bankr. W.D. Mich. 2008) ........................................................................................................20

*Ries v. Wintz Props., Inc. (In re Wintz Cos.)*, 230 B.R. 848 (B.A.P. 8th Cir. 1999) ..............20, 21

*Sears v. Likens*, 912 F.2d 889 (7th Cir. 1990) .............................................................................27

*Sharp Int'l Corp. v. State Street Bank & Trust Co.*, 403 F.3d 43 (2d Cir. 2005) ..............23, 24, 26

*Siematic MobelWerke GMBH & Co. v. Siematic Corp.*, 643 F. Supp. 2d 675 (E.D. Pa.
    2009) .........................................................................................................................................21

*Stoebner v. Lingenfelter*, 115 F.3d 576 (8th Cir. 1997).................................................................15

*Tuttle v. Lorillard Tobacco, Co.*, 377 F.3d 917 (8th Cir. 2004) .....................................................11

*United States v. Inslaw, Inc.*, 932 F.2d 1467 (D.C. Cir. 1991) ......................................................28

*Universal Computer Consulting, Inc. v. Pitcairn Enters., Inc.*, No. Civ.A. 03-2398, 2005
    WL 2077269 (E.D. Pa. Aug. 26, 2005) ...................................................................................24

*Webster Indus., Inc. v. Northwood Doors, Inc.*, 320 F. Supp. 2d 821 (N.D. Iowa 2004)..............21

*Wellman v. Wellman*, 933 F.2d 215 (4th Cir. 1991) ...................................................................13

## STATE CASES

*Agcountry Farm Credit Servs., FLCA v. Oelke*, No. A04-2096, 2005 WL 1950153 (Minn.
    Ct. App. Aug. 16, 2005).............................................................................................................21

*Buller v. A.O. Smith Harvestore Prods., Inc.*, 518 N.W.2d 537 (Minn.1994)..............................12

*Cargill, Inc. v. Hedge*, 375 N.W.2d 477 (Minn. 1985)..................................................................17

*Farstveet v. Rudolph*, 630 N.W.2d 24 (N.D. 2001) ......................................................................21

*Harris v. Mardan Bus. Sys.*, 421 N.W.2d 350 (Minn. Ct. App. 1988) .........................................15

*Lorenz Bus Serv., Inc. v. Richfield Bus Co.*, No C2-02-56, 2002 WL 2005468 (Minn. Ct.
    App. Sept. 3, 2002) ...................................................................................................................21

*Parkview Estates Homeowners Ass'n v. Arkell Dev. Corp.*, No. C7-94-913, 1994 WL
    705375 (Minn. Ct. App. Dec. 20, 1994) ...............................................................32

*Roepke v. W. Nat'l Mut. Ins. Co.*, 302 N.W.2d 350 (Minn. 1981) ...............................17

*Schmucking v. Mayo*, 235 N.W. 633 (Minn. 1931) ........................................................12

*Shields v. Goldetsky (In re Butler)*, 552 N.W.2d 226 (Minn. 1996)...............................20

*Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*, 493 N.W.2d 137 (Minn. Ct. App.
    1992) ................................................................................................................31, 32

*Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*, 599 N.Y.S.2d 816 (1st Dep't
    1993) ......................................................................................................................23

*Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509 (Minn. 1979) .............15

*Wallace v. Wood*, 752 A.2d 1175 (Del. Ch. 1999) ................................................15, 16

## STATUTES AND RULES

11 U.S.C. § 101...............................................................................................................25

11 U.S.C. § 502...............................................................................................................29

11 U.S.C. § 506.........................................................................................................29, 30

11 U.S.C. § 510...............................................................................................................30

11 U.S.C. § 541...............................................................................................................29

11 U.S.C. § 542...............................................................................................................28

11 U.S.C. § 544...............................................................................................................13

11 U.S.C. § 548...................................................................................................... passim

Fed. R. Civ. P. 9(b) ........................................................................................................27

Minn. Stat. § 513.41............................................................................................... passim

Minn. Stat. § 513.42........................................................................................................25

Minn. Stat. § 513.43........................................................................................................22

Minn. Stat. § 513.44............................................................................................... passim

Minn. Stat. § 513.45..............................................................................................21, 22, 24

Minn. Stat. § 541.05..................................................................................................................11

## OTHER AUTHORITIES

5 COLLIER ON BANKRUPTCY § 542.02 [2]......................................................................................28

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 307 ................................................................15

Opportunity Finance, LLC ("Opportunity Finance") and its related defendants[1] submit this memorandum of law in support of their motion to dismiss the Amended Complaint, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012(b).[2]

## PRELIMINARY STATEMENT

The Trustee does not seek to recover a single transfer between Petters Company, Inc. ("PCI") and Opportunity Finance or its co-defendants, and for good reason: there were none. Opportunity Finance had no business relationship with PCI. Instead, in connection with standard commercial loan transactions, Opportunity Finance made secured loans to two special-purpose entities, PC Funding, LLC ("PC Funding") and Petters Finance, LLC ("SPF Funding").[3] These two entities, in turn, repaid the loans, in satisfaction of antecedent, secured debts. These loan repayments are the transfers that the Trustee seeks to recover. A large number of these secured loans were satisfied prior to October 11, 2002.

These basic facts, which are admitted on the face of the Amended Complaint, require that all of the Trustee's claims be dismissed. As we demonstrate below:

- The Trustee's claims seeking to recover transfers that occurred prior to October 11, 2002 are barred by the applicable statute of limitations;

---

[1] Opportunity Finance Securitization, LLC, Opportunity Finance Securitization II, LLC, Opportunity Finance Securitization III, LLC, International Investment Opportunities, LLC, the Sabes Family Foundation, Sabes Minnesota Limited Partnership, Robert W. Sabes, Janet F. Sabes, Jon R. Sabes, and Steven F. Sabes.

[2] The Amended Complaint does not amend any of the original Complaint's substantive allegations against Opportunity Finance or its related defendants. Therefore, this Motion to Dismiss the Amended Complaint is materially identical to the Motion to Dismiss filed by Opportunity Finance on February 18, 2011 (ECF No. 34).

[3] SPF Funding was formerly known as Petters Finance, LLC. Am. Compl. ¶ 4.

- The Trustee lacks standing to pursue claims on behalf of either PC Funding (because Opportunity Finance is the only creditor of that entity), SPF Funding (because that entity has no creditors), or PCI (because the Trustee's "reverse veil-piercing" allegations fail as a matter of law);

- The Trustee's fraudulent transfer claims are not recognized under either the Bankruptcy Code or Minnesota law under these circumstances, where a secured lender simply receives repayments of antecedent debts, and they are otherwise insufficiently pled under Rule 9(b); and

- The Trustee's various additional causes of action are barred under applicable law.

For each of these reasons, the Court should dismiss with prejudice all claims against

Opportunity Finance and its related defendants.

### FACTUAL BACKGROUND[4]

#### A.     The Parties

Jon R. Sabes and Steven F. Sabes incorporated Opportunity Finance in early 2001 to

extend secured commercial loans to corporate borrowers.  Opportunity Finance was a successor

entity to International Investment Opportunities, LLC ("IIO"), which was formed several years

earlier by Robert W. Sabes and which also provided secured financing to corporate borrowers.

Am. Compl. ¶ 101.  As relevant here, Opportunity Finance provided secured loans to two

special-purpose entities—SPF Funding and PC Funding.  *See, e.g.*, *id.* ¶¶ 101-02.

Thomas Petters caused SPF Funding to be formed as a special-purpose entity in April

2001 for the purpose of engaging in secured loan transactions with IIO and later Opportunity

Finance.  *See id.* ¶ 81; *see also* April 17, 2001 Credit Agreement between IIO and SPF Funding §

5.6(a) (attached hereto as Ex. 1).  SPF Funding is incorporated in Minnesota.  Am. Compl. ¶ 4.

---

[4] For purposes of this Motion to Dismiss only, as required under Rule 12(b)(6), the allegations of the Complaint (to the extent they do not conflict with one another) are accepted as true.  Also, the Court is permitted to consider documents that are attached to the Complaint, referenced therein, or embraced by it.  *See, e.g.*, *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 990 (8th Cir. 2007); *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1000 n.4 (8th Cir. 2007); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

It filed its petition commencing Chapter 11 bankruptcy on October 15, 2008. *Id.* ¶ 28; *In re SPF Funding*, No. 08-45328, Dkt. No. 1. As a special-purpose entity, SPF Funding identified no creditors on its petition. *In re SPF Funding*, No. 08-45328, Dkt. No. 1. The Trustee does not allege any facts showing that SPF Funding is (or was) insolvent, or has (or had) unreasonably small assets or debts beyond its ability to pay.

Similarly, on December 17, 2001, Mr. Petters caused PC Funding to be formed as a bankruptcy-remote, special-purpose entity for the sole purpose of engaging in secured lending transactions with Opportunity Finance. *See* Am. Compl. ¶ 82; *see also id.* at Ex. A § 5.7(a). PC Funding is incorporated in Delaware. *Id.* ¶ 3. PC Funding filed its petition commencing Chapter 11 bankruptcy on the same day as SPF Funding. *Id.* ¶ 28; *In re PC Funding*, No. 08-45326, Dkt. No. 1. Consistent with its separate corporate existence, it disclosed a single creditor—Opportunity Finance. *In re PC Funding*, No. 08-45326, Dkt. No. 1. The Trustee does not allege any facts showing that PC Funding is (or was) insolvent, or has (or had) unreasonably small assets or debts beyond its ability to pay. To the contrary, the most recent PC Funding balance sheet filed by the Trustee disclosed that, as of January 31, 2011, PC Funding had more than $20.3 million in assets and owed its only creditor, Opportunity Finance, $15.7 million. *In re Petters Company, Inc.*, No. 08-45257, Dkt. No. 1045 at Ex. 6.

### B.     The Claims

The Trustee primarily asserts fraudulent transfer claims against Opportunity Finance and its related defendants, including claims related to transfers between (i) PC Funding and Opportunity Finance (Counts II-VII), (ii) SPF Funding and Opportunity Finance (Counts IX-XII), and (iii) SPF Funding and the Sabes Family Foundation (Counts XIII-XVIII). Apart from these specific transfers, the Amended Complaint does not identify any disputed transfers between any Petters-affiliated entity and any of these defendants.

As to the transfers between PC Funding and Opportunity Finance, the Trustee asserts

that, beginning on or about January 7, 2002 and continuing through December 3, 2007,

Opportunity Finance engaged in 546 secured loan transactions with PC Funding.  Am. Compl. ¶¶

101, 106.  The Amended Complaint alleges that Opportunity Finance received $90,488,703 in

interest on its secured loans.  *Id.* ¶ 114.  According to the PricewaterhouseCoopers Interim

Report ("PwC Interim Report"), Opportunity Finance received approximately $17,331,874 (or

19.2%) of that interest prior to October 11, 2002.  *See In re Petters Company, Inc.*, No. 08-

45257, Dkt. No. 809-2 at Ex. 53; *see also* Ex. 2.[5]

With regard to the transfers between SPF Funding and Opportunity Finance, the Trustee

alleges that between May 11, 2001 and March 14, 2005, Opportunity Finance engaged in 80

separate secured loan transactions with SPF Funding.  Am. Compl. ¶¶ 102, 107.  Although it

provides no specifics regarding these transfers, the Amended Complaint asserts that Opportunity

Finance received $22,252,038 in interest on its secured loans.  *Id.* ¶ 118.  The PwC Interim

Report indicates that Opportunity Finance received approximately $19,881,073 (or 89.3%) of

that interest prior to October 11, 2002.  *See In re Petters Company, Inc.*, No. 08-45257, Dkt. No.

809-2 at Ex. 49; *see also* Ex. 3.[6]

As to the transfers between SPF Funding and the Sabes Family Foundation, the Trustee

alleges that between August 13, 2001 and May 9, 2007, the Sabes Family Foundation engaged in

at least 77 separate transactions with SPF Funding.  Am. Compl. ¶¶ 103, 107.  Without providing

---

[5] In terms of principal and interest together, the Trustee alleges a total of $2,244,923,662, Am.
Compl. ¶ 113, of which PC Funding repaid approximately $227,581,875 before October 11,
2002.  *See In re Petters Company, Inc.*, No. 08-45257, Dkt. No. 809-2 at Ex. 53; *see also* Ex. 2.

[6] In terms of principal and interest together, the Trustee alleges a total of $248,175,039, Am.
Compl. ¶ 117, of which SPF Funding repaid approximately $175,254,073 before October 11,
2002.  *See In re Petters Company, Inc.*, No. 08-45257, Dkt. No. 809-2 at Ex. 49; *see also* Ex. 3.

any specific information regarding these transfers, the Amended Complaint asserts that the Sabes

Family Foundation received $13,986,232 in interest on its secured loans.  *Id.* ¶ 120.  According

to the PwC Interim Report, the Sabes Family Foundation received approximately $4,882,490 (or

34.9%) of that interest prior to October 11, 2002.  *See In re Petters Company, Inc.*, No. 08-

45257, Dkt. No. 809-2 at Ex. 49; *see also* Ex. 4.[7]

The Trustee seeks to set aside the aforementioned transfers "for the benefit of defrauded

individuals and organizations that are *creditors of PCI*."  Am. Compl. ¶ 48 (emphasis added); *see

also id.* ¶ 100.  He makes this attempt notwithstanding the fact that all of the disputed transfers

were received from either PC Funding or SPF Funding.  *See id.* ¶¶ 113-21.  Indeed, the Trustee

does not allege *any direct transfers* between PCI and Opportunity Finance or its co-defendants.

The Amended Complaint acknowledges that each challenged transfer satisfied an antecedent

debt owed to one or more of these defendants.  *Id.* ¶¶ 56, 72, 94.

In addition to the fraudulent transfer claims, the Trustee asserts a variety of other claims,

including a preferential transfer claim related to transfers from PC Funding to Opportunity

Finance occurring within 90 days prior to PC Funding's petition (Count VIII), and claims for

turnover and accounting (Count I), disallowance (Count XXIII), lien avoidance (Count XXIV),

equitable subordination (Count XXV), and unjust enrichment (XXVI).

### C.      Relationship Between Opportunity Finance and PC Funding

In December 2001, Opportunity Finance agreed to provide secured loans to finance

portions of Mr. Petters' consumer goods diverting business.  Opportunity Finance agreed to

make loans through its own resources and through a $100 million senior credit facility provided

---

[7] In terms of principal and interest together, the Trustee alleges a total of $19,986,232, Am.
Compl. ¶ 119, of which SPF Funding repaid approximately $4,882,490 before October 11, 2002.
*See In re Petters Company, Inc.*, No. 08-45257, Dkt. No. 809-2 at Ex. 49; *see also* Ex. 4.

to Opportunity Finance by Deutsche Zentralgenossenschaftbank AG ("DZ Bank"), one of

Germany's largest commercial banks.  *See id.* ¶ 20.  As a central part of the transaction,

Opportunity Finance and DZ Bank insisted that Mr. Petters incorporate a special-purpose,

bankruptcy-remote entity to be the borrower.  *See, e.g.*, December 28, 2001 Opinion Letter from

Mayer, Brown & Platt re: PC Funding, LLC at 6 (attached hereto as Ex. 5).  On December 17,

2001, Mr. Petters formed PC Funding as a special-purpose, bankruptcy-remote entity to which

Opportunity Finance would extend secured loans.

Also on December 17, 2001, PC Funding entered into two agreements with Opportunity

Finance—a Credit Agreement and a Security Agreement.  Am. Compl. ¶¶ 55-56.  In the Credit

Agreement, Opportunity Finance agreed to provide, in its discretion, secured loans to PC

Funding to finance accounts associated with the sale of consumer goods.  *Id.* ¶¶ 55, 62; *id.* at Ex.

A § 2.1(a).  Each secured loan was to be evidenced by a promissory note executed by PC

Funding in favor of Opportunity Finance.  *Id.* ¶¶ 55, 62; *id.* at Ex. A § 2.1(b).  In the Security

Agreement, PC Funding granted to Opportunity Finance a security interest in all of PC

Funding's accounts, books and records, chattel paper, contracts, copyrights, documents,

equipment, fixtures, general intangibles, goods, instruments, inventory, investment property,

money, cash or cash equivalents, and all proceeds of the foregoing.  *Id.* ¶ 56; *id.* at Ex. B § 2.

Also on December 17, 2001, PC Funding entered into a Sale Agreement with PCI, *id.* ¶

57, setting forth the terms and conditions under which PCI would periodically sell, convey,

transfer and assign to PC Funding all of PCI's rights, title, and interest in accounts related to the

sale of consumer goods to retailers.  *Id.*  As contemplated by the Sale Agreement, each time

Opportunity Finance extended a loan to PC Funding, PCI would assign to PC Funding its rights,

title, and interest in the associated receivables.  *Id.* ¶ 58; *id.* at Ex. C.

As a critical part of the Credit Agreement, PC Funding made numerous representations to

Opportunity Finance, including that, while the Credit Agreement was in effect, it would:

- Operate its "business solely for the purpose of conducting Receivables Sales financed by" Opportunity Finance or its affiliates, *id.* at Ex. A § 5.1;

- "[K]eep adequate books and records with respect to its business activities in which proper entries, reflecting all financial transactions, are made in accordance with generally accepted accounting principles," *id.* at Ex. A § 5.2;

- "[O]wn no assets, and . . . not engage in any business, other than the assets and transactions specifically contemplated by this Agreement," *id.* at Ex. A § 5.7(a);

- "[N]ot incur any indebtedness or obligation . . . other than in connection with Receivables Sales financed by" Opportunity Finance or its affiliates, *id.* at Ex. A § 5.7(b);

- "[N]ot make any loans or advances to any third party" or "acquire obligations or securities of any of its Affiliates," *id.* at Ex. A § 5.7(c);

- "[P]ay [its] debts and liabilities only from [its] assets," *id.* at Ex. A § 5.7(d);

- "[D]o all things necessary to observe organizational formalities and preserve [its] existence and . . . not amend, modify, or otherwise change its certificate of formation or limited liability company agreement, or suffer the same to be amended, modified or otherwise changed, without the prior written consent of" Opportunity Finance, *id.* at Ex. A § 5.7(e);

- "[M]aintain all of [its] books, records, financial statements and bank accounts separate from those of [PCI] or any of its other Affiliates," *id.* at Ex. A § 5.7(f);

- "[H]old itself out to the public as a legal entity separate and distinct from any other entity . . . [and] correct any known misunderstanding regarding [its] status as a separate entity, . . . [and] not identify itself or any of its Affiliates as a division or part of the other and . . . maintain and utilize separate invoices and checks," *id.* at Ex. A § 5.7(g);

- "[M]aintain adequate capital, as determined in [its] reasonable discretion, for the normal obligations reasonably foreseeable in a business of [its] size and character and in light of [its] contemplated business operations," *id.* at Ex. A § 5.7(h);

- "[N]ot commingle [its] funds or other assets with those of [PCI] or any other Affiliate . . . or any other person or entity," *id.* at Ex. A § 5.7(j);

- "[M]aintain [its] assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify [its] individual assets from those of [PCI] or any other Affiliate or any other person or entity," *id.* at Ex. A § 5.7(k);

- "[N]ot hold itself out to be responsible for the debts or obligations of any other person or entity," *id.* at Ex. A § 5.7(l); and

- "[M]aintain an independent director as set forth in its limited liability company agreement," *id.* at Ex. A § 5.7(m).

In connection with execution of these agreements, Opportunity Finance was represented by, *inter alia*, Mayer, Brown & Platt ("Mayer Brown"). *See* Ex. 5. Mayer Brown reviewed the proposed financing structure between Opportunity Finance and PC Funding and opined that (1) PCI's sale to PC Funding of its rights, title, and interest in receivables constituted a true sale, and (2) a court would not substantively consolidate the assets and liabilities of PCI with PC Funding in the event that PCI later became a debtor in a voluntary or involuntary bankruptcy proceeding. *Id.* at 24. In connection with those opinions, Mr. Petters certified, on behalf of PC Funding, the accuracy of the representations in the Credit Agreement about PCI's separate corporate existence, which were incorporated into Mayer Brown's opinion letter. *See id.* at A-2.

### 1. DZ Bank Lending Facility

Several days after execution of the Credit Agreement and Security Agreement, Opportunity Finance closed on the $100 million senior lending facility with DZ Bank. To effectuate that transaction, Opportunity Finance organized a wholly-owned, special-purpose entity—Opportunity Finance Securitization, LLC ("OF Securitization"), *see* Am. Compl. ¶¶ 7, 20—to serve as the borrower of funds from DZ Bank. Under the contemplated structure, OF Securitization would purchase Opportunity Finance's receivables due from PC Funding, which would then provide Opportunity Finance with funds to lend to PC Funding. *See* December 28, 2001 Opinion Letter from Mayer, Brown & Platt re: Opportunity Finance Securitization, LLC at 3-5 (attached hereto as Ex. 6). In accordance with these agreements, DZ Bank began to loan

funds to OF Securitization in early 2002, and Opportunity Finance in turn began to extend

secured loans to PC Funding in accordance with the terms of the Credit Agreement and Security

Agreement.  *See* Am. Compl. ¶ 101.

### 2.      WestLB Lending Facility

In 2003, Opportunity Finance ceased using the DZ Bank facility to finance transactions

with PC Funding.  In March 2005, Opportunity Finance obtained a new senior lending facility

from West Landesbank AG ("WestLB"), another large German commercial bank.  *See* Am.

Compl. ¶ 21.  As a central requirement of its agreement with WestLB, Opportunity Finance

incorporated another special-purpose entity—Opportunity Finance Securitization III, LLC—to

receive loans from WestLB and to purchase receivables from Opportunity Finance.  *See, e.g.*,

March 16, 2005 Opinion Letter from Andrews Kurth re: Opportunity Finance Securitization III,

LLC at 2 (attached hereto as Ex. 7).  The structure of the transactions with WestLB was

materially identical to that in place with DZ Bank.  *Id.* at 3-7.

In connection with the WestLB closing, Opportunity Finance engaged Andrews & Kurth

as counsel.  Andrews & Kurth opined, just as Mayer Brown had done in 2001, that (1) PCI's sale

to PC Funding of its rights, title, and interest in receivables constituted a true sale, and (2) a court

would not substantively consolidate the assets and liabilities of PCI with PC Funding in the event

that PCI later became a debtor in a voluntary or involuntary bankruptcy case under the

Bankruptcy Code.  *See* March 16, 2005 Opinion Letter from Andrews Kurth re: PC Funding,

LLC at 29 (attached hereto as Ex. 8).

### D.      Relationship Between Opportunity Finance and SPF Funding

Prior to extending secured loans to PC Funding, Opportunity Finance and its predecessor,

IIO, made a number of secured loans to a different special-purpose entity, SPF Funding.  The

documents governing the relationship between Opportunity Finance and SPF Funding were

9

signed in April 2001 and were substantially similar to those later governing the relationship

between Opportunity Finance and PC Funding.  *See* Ex. 1 & April 17, 2001 Security Agreement

between IIO and SPF Funding (attached hereto as Ex. 9).  In fact, in its Credit Agreement with

IIO, SPF Funding made nearly identical representations regarding its separate corporate

existence as PC Funding later made to Opportunity Finance in December 2001.  *See* Ex. 1 §§

5.1, 5.2 & 5.6.

### E.      Relationship Between the Sabes Family Foundation and SPF Funding

In 2001, Opportunity Finance and members of the Sabes family assigned several existing

promissory notes owed by SPF Funding to the Sabes Family Foundation.  The Sabes Family

Foundation is a trust organized and operated for religious, charitable, scientific, literary, and

educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code.

Am. Compl. ¶ 12.  SPF Funding acknowledged the assignment of notes to the Sabes Family

Foundation and entered into a series of agreements bringing those notes under, among other

things, the terms of the April 17, 2001 Credit Agreement between SPF Funding and Opportunity

Finance.  *See* August 14, 2001 Agreement between SPF Funding, LLC and The Sabes Family

Foundation (attached hereto as Ex. 10) & October 17, 2001 Agreement between SPF Funding

and The Sabes Family Foundation (attached hereto as Ex. 11).

*********************

Through this Amended Complaint, the Trustee now seeks to recover, as "fraudulent

transfers," all of the transfers PC Funding and SPF Funding made to repay the secured loans

those entities received from Opportunity Finance and IIO.  The law precludes the Trustee's

claims.

## ARGUMENT

I. **FRAUDULENT TRANSFER CLAIMS RELATING TO TRANSFERS PRIOR TO OCTOBER 11, 2002 ARE TIME-BARRED.**

Of the interest payments the Trustee challenges as fraudulent transfers, Opportunity Finance, IIO, and the Sabes Family Foundation received approximately $42,095,437 prior to October 11, 2002.[8]  *See* Exs. 2, 3, & 4.  The fraudulent transfer claims related to these transfers are time-barred.

    A.    **Minn. Stat. § 541.05 Bars the Trustee's Claims Related to Transfers Occurring Prior to October 11, 2002.**

Minnesota law provides, in relevant part:

> [T]he following actions shall be commenced within six years: . . . (2) upon a liability created by statute, other than those arising upon a penalty or forfeiture or where a shorter period is provided by section 541.07; . . . [and] (6) for relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud . . . .

Minn. Stat. § 541.05, sub. 1.  In *Tuttle v. Lorillard Tobacco, Co.*, 377 F.3d 917 (8th Cir. 2004), the Eighth Circuit held that, although claims under the Minnesota Prevention of Consumer Fraud Act, the Minnesota Unlawful Trade Practices Act, and the Minnesota False Statement in Advertising Act sound in fraud, subdivision 1(2) of Minn. Stat. § 541.05 governed because the claims were based upon liability created by statute.  *Id.* at 926.  The court held, as a result, that the plaintiff could not utilize the discovery allowance period of subdivision 1(6).  *Tuttle* plainly controls here:  The Trustee's claims for allegedly fraudulent transfers are purely a creature of state statutory law—namely, Minnesota's codification of the Uniform Fraudulent Transfer Act ("MFTA"), *see* Minn. Stat. § 513.41 *et seq.*, and thus are governed by subdivision 1(2) of

---

[8] The total principal and interest repayments received before that date is alleged to be approximately $407,718,437.70.  *See* Exs. 2, 3, & 4.

Minnesota Stat. § 541.05.  Accordingly, since PC Funding and SPF Funding filed their

bankruptcy petitions on October 11, 2008, all claims related to transfers they made prior to

October 11, 2002 are time-barred and should be dismissed.[9]

**B.    The Trustee Cannot Employ the Doctrine of Fraudulent Concealment.**

The Trustee attempts to evade this result by alleging that the limitations period should be

"tolled" by Mr. Petters' alleged fraudulent concealment.  Am. Compl. ¶ 79; *see also id.* ¶¶ 74-78.

This argument is unavailing.  Minnesota law recognizes the doctrine of fraudulent concealment

so that, *inter alia*, a *defendant* who fraudulently conceals a cause of action cannot benefit from

his actions.  *Buller v. A.O. Smith Harvestore Prods., Inc.*, 518 N.W.2d 537, 542 (Minn.1994);

*see also Schmucking v. Mayo*, 235 N.W. 633, 634 (Minn. 1931).   In this case, however, the

Trustee seeks to invoke the doctrine of fraudulent concealment based on the alleged fraudulent

concealment of Mr. Petters—who is not a defendant—and against Opportunity Finance and its

co-defendants, who are not alleged to have fraudulently concealed anything.  This effort has no

basis in Minnesota law and should be rejected.  It also is inconsistent with the Amended

Complaint, which admits that it was "Petters and his Associates [that] fraudulently and

intentionally concealed the ongoing fraud in an effort to hinder and delay authorities and other

current and prospective investors and other creditors of PCI, PGW, and other debtor entities from

discovering the fraud."  Am. Compl. ¶ 76.  Given this admission, the fraudulent concealment

doctrine cannot save the Trustee's time-barred claims.[10]

---

[9] The six-year clock runs from the date of the challenged transfers.  *See, e.g.*, *Mosier v. Cargill Fin. Servs. Corp. (In re Mansfield Corp.)*, 339 B.R. 194, 199-200 (Bankr. D. Minn. 2006).

[10] Nor can the Trustee rely on the so-called "adverse domination" rule.  Neither the Minnesota Supreme Court nor the Minnesota Court of Appeals has recognized such a rule—whether in the context of the limitations period under subdivision 1(2) of Minnesota Stat. § 541.05 or otherwise. The Eighth Circuit has explicitly refused to read an adverse domination rule into state law where

## II.   THE TRUSTEE LACKS STANDING TO PURSUE FRAUDULENT AND PREFERENTIAL TRANSFER CLAIMS.

The Trustee asserts claims against Opportunity Finance and its co-defendants as trustee of three distinct entities—PCI, PC Funding, and SPF Funding.  Am. Compl. at 1.  He does not, however, seek to avoid any transfers for the benefit of the creditors of PC Funding or SPF Funding, but rather "for the benefit of defrauded individuals and organizations that are *creditors of PCI*."  Am. Compl. ¶ 48 (emphasis added); *see also id.* ¶ 100 ("*The creditors of PCI* would suffer great injustice if the assets of PC Funding and SPF Funding are not made available to satisfy the debts of PCI . . . .") (emphasis added).  The Trustee lacks standing to pursue these claims.

### A.   The Trustee Lacks Standing To Pursue Avoidance Claims as Trustee of PC Funding and SPF Funding.

The Trustee has standing to pursue only the rights of an unsecured creditor in existence at the commencement of the case who could avoid the transfer under applicable law.  *See* 11 U.S.C. § 544(b) ("[T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . .").  It thus has been universally recognized that the Trustee's avoidance powers can be asserted only to benefit an actual creditor of the debtor; if an avoidance action will benefit only the debtor itself, the Trustee lacks standing to maintain it.  *See, e.g.*, *In re Crawford*, 274 B.R. 798, 806 (8th Cir. B.A.P. 2002); *Harstad v. First Am. Bank*, 155 B.R. 500, 511 (Bankr. D. Minn. 1993), *aff'd* 39 F.3d 898 (8th Cir. 1994); *see also Wellman v. Wellman*, 933 F.2d 215, 218 (4th Cir. 1991); *In re Vintero Corp.*, 735 F.2d 740, 742 (2d Cir. 1984); *Adelphia Recovery Trust v. Bank of Am.*, 390 B.R. 80, 92-98 (S.D.N.Y. 2008).

---

there is no indication that the state's highest court would do so.  *Resolution Trust Corp. v. Armbruster*, 52 F.3d 748, 751-53 (8th Cir. 1995).

13

Both PC Funding and SPF Funding were organized as special-purpose entities for the sole purpose of engaging in secured financing transactions with Opportunity Finance or IIO. Am. Compl. ¶ 82. Consistent with its separate corporate existence, PC Funding's bankruptcy petition identified its only creditor as Opportunity Finance. *See In re PC Funding, LLC*, 08-45326, Dkt. No. 1. SPF Funding's petition identified no creditors at all. *See In re SPF Funding, LLC*, 08-45328, Dkt. No. 1. Given that SPF Funding has no creditors, and that PC Funding's only creditor is the same entity against which the Trustee seeks to assert his avoidance claims, the Trustee cannot, in his capacity as the Trustee of PC Funding or SPF Funding, maintain his avoidance claims against Opportunity Finance or any of its related defendants. *See ASARCO, LLC v. Americas Mining Corp.*, 396 B.R. 278, 316-17 (S.D. Tex. 2008) (special-purpose entity had no debts or obligations at time of challenged fraudulent transfer and, therefore, debtor-in-possession of that entity lacked standing to pursue fraudulent transfer claim).

**B.     The Trustee Lacks Standing To Pursue Avoidance Claims as Trustee of PCI.**

Perhaps in recognition of his inability to pursue claims on behalf of PC Funding and SPF Funding, the Trustee seeks standing to pursue avoidance claims on behalf of *PCI's creditors* through an unprecedented "reverse veil-piercing" theory. He alleges that PC Funding and SPF Funding failed to observe certain corporate formalities and maintain adequate capital, and therefore they were "mere alter egos" of PCI. Am. Compl. ¶¶ 80-100. Accordingly, he seeks to offensively use a reverse veil-piercing theory, and pierce the corporate structure separating the debtor (PCI) from special-purpose entities created and maintained by it (PC Funding and SPF Funding), in order to pursue fraudulent transfer claims against an unaffiliated, third-party secured creditor of the special-purpose entities (Opportunity Finance). The Trustee's theory has no legal basis, and should be rejected as a matter of law.

14

    **1.**      **Neither Delaware Law Nor Minnesota Law Permits Reverse Veil-Piercing Under the Circumstances Alleged.**

In a traditional veil-piercing case, a plaintiff asks the court to hold individual shareholders liable for a corporation's debts. *See, e.g.*, *Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509 (Minn. 1979). By contrast, in "reverse veil-piercing" cases, a shareholder asks the court to disregard the corporate form in order to escape the adverse consequences that would ensue if corporate property were determined to belong solely to the corporation rather than to the shareholder. *See generally Stoebner v. Lingenfelter*, 115 F.3d 576, 579 (8th Cir. 1997). Whether a court will pierce (or reverse pierce) the corporate veil is a question of state law. *Id.* Here, because PC Funding is incorporated in Delaware, Am. Compl. ¶ 3, Delaware law governs whether the Trustee may attempt to reverse pierce that entity's corporate veil; because SPF Funding is incorporated in Minnesota, *id.* ¶ 4, Minnesota law governs whether the Trustee may attempt to reverse pierce its corporate veil. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 307 ("The local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability . . . to its creditors for corporate debts."); *see also Harris v. Mardan Bus. Sys.*, 421 N.W.2d 350, 352 n. 2 (Minn. Ct. App. 1988) ("The rights of respective shareholders are governed by the laws of the state of incorporation . . . ."); *Cognex Corp. v. VCode Holdings, Inc.*, No. 06-1040 (JNE/JJG), 2006 WL 3043129, at *9 (D. Minn. Oct. 24, 2006) (applying law of state of incorporation to alter-ego claim).

        **a.**      **Delaware Law Does Not Allow Reverse Veil-Piercing Claims.**

We have not found a case in which a Delaware court has reverse-pierced the corporate veil of a Delaware corporation, let alone in circumstances comparable to this case. This is not surprising, given the great reluctance of Delaware courts to pierce the corporate veil at all. "Persuading a Delaware court to disregard the corporate entity is a difficult task." *Wallace v.*

*Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999) (internal quotations omitted). To succeed on a veil-piercing claim based upon an alter ego theory in Delaware, a party must show that (1) the parent and subsidiary corporation operated as a single economic entity, and (2) an overall element of injustice or unfairness is present. *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 269 (D. Del. 1989) (applying Delaware law). It is not enough that some person involved in a transaction act in a way that injects injustice or unfairness; instead, the "[t]he law requires that fraud or injustice be found in the *defendants'* use of the corporate form." *Id.* (emphasis added). The mere fact that the plaintiff has alleged a fraud (or fraudulent transfer) by someone else cannot satisfy this essential element of the claim. *Id.* at 268.

Thus, even if Delaware law recognized the concept of reverse veil-piercing—and, again, we are aware of no evidence that it does—the Trustee's allegations here cannot provide a basis to pierce the PC Funding corporate veil, because the Trustee does not, and could not, allege that *Opportunity Finance* used PC Funding's corporate form to perpetrate any fraud or injustice. PC Funding was 100% owned by PCI, Am. Compl. ¶¶ 5, 81; Opportunity Finance never owned any interest in that entity, and was, at all times, an unaffiliated third-party lender to that entity. According to the Trustee's allegations, it was Mr. Petters who "formed and operated PC Funding . . . as PCI's SPE[] for the sole purpose of receiving loan proceeds from . . . designated investors." *Id.* ¶ 82. And the Trustee alleges that it was PCI that used "PC Funding and SPF Funding [as] nothing more than instrumentalities of PCI to further the Ponzi scheme and . . . [t]o further[] the fraud orchestrated by Petters through the Ponzi scheme." *Id.* ¶ 83. It was also Mr. Petters, on behalf of PC Funding, who represented to Opportunity Finance that PC Funding was (and would remain) separate from PCI and would follow all corporate formalities to maintain its separate corporate existence. *See id.* at Ex. A § 5.7. In view of the Trustee's own allegations,

16

the reverse veil-piercing argument fails as a matter of law, and cannot confer standing on the

Trustee to bring claims, on behalf of PCI's creditors, against Opportunity Finance.

> **b.      Minnesota Law Does Not Allow Reverse Veil-Piercing Claims
> Under the Alleged Circumstances.**

The Minnesota Supreme Court has allowed reverse piercing of the corporate veil in only

extremely limited circumstances, none of which are present here.  In *Cargill, Inc. v. Hedge*, 375

N.W.2d 477 (Minn. 1985), for example, the court allowed the owner-occupants of a farm, who

owned their farm through a family corporation, to claim a homestead exemption from judgment

creditors.  The court, however, noted the dangers of allowing reverse veil-piercing:

> One of the features of a corporation is limiting creditor liability to the corporate
> assets.  We are aware of the danger of a debtor being able to raise or lower his
> corporate shield, depending on which position best protects his property.
> Consequently, a reverse pierce should be permitted in only the most carefully
> limited circumstances.

*Id.* at 480.  It thus recognized that a reverse veil-pierce will be allowed only when (1) the degree

of identity between the shareholder and his or her corporation makes clear that the corporation is

a mere alter ego of the shareholder, and (2) no third parties—*e.g.*, creditors or other

shareholders—would be harmed by the decision to pierce the veil.  *Id.* at 479; *see also Roepke v.*

*W. Nat'l Mut. Ins. Co.*, 302 N.W.2d 350 (Minn. 1981) (allowing a decedent's estate to receive

the benefit of a corporate auto insurance policy).

These circumstances do not exist here, because third parties outside of PCI and SPF

Funding—namely, Opportunity Finance and its co-defendants—would be greatly harmed by a

reverse veil-piercing.  As discussed above, through the negotiation of detailed loan agreements,

containing representations and warranties by SPF Funding and supported by opinion letters from

distinguished law firms, Opportunity Finance relied on the vitality of SPF Funding's corporate

form and its separate existence from PCI.  The Trustee now seeks to use a reverse veil-piercing

argument offensively, to upset the ex-ante expectations of Opportunity Finance and to impose

upon it liability for Mr. Petters' alleged actions.  No case in Minnesota supports use of the

doctrine in this way.  Accordingly, the Trustee's allegations seeking to reverse veil-pierce the

SPF Funding corporate form cannot, as a matter of law, confer standing on the Trustee to pursue

claims against Opportunity Finance on behalf of PCI's creditors.

> **2.     The Trustee Cannot Achieve Substantive Consolidation Through the Back Door.**

The Trustee's attempt to use an alter ego theory against Opportunity Finance also should

be rejected because it is, in fact, a disguised effort to achieve substantive consolidation through

the back door:  "[T]he Trustee seeks that this Court *treat PC Funding and PCI as one entity, and*

*also treat SPF Funding and PCI as one entity for all purposes stated herein and with respect to*

*all causes of action pleaded herein*.  The creditors of PCI would suffer great injustice *if the*

*assets of PC Funding and SPF Funding are not made available to satisfy the debts of PCI . . . .*"

Am. Compl. ¶ 100 (emphasis added); *compare also id.*, *with In re Augie/Restivo Baking Co.*, 860

F.2d 515, 518 (2d Cir. 1988) ("Substantive consolidation usually results in, *inter alia*, pooling

the assets of, and claims against, the two entities; satisfying liabilities from the resultant common

fund. . . .").  As this Court has recognized, although the circuit tests for determining whether to

substantively consolidate the assets and liabilities of multiple entities are akin to that of piercing

the corporate veil, they all "are more strongly oriented toward creditors' original understandings,

expectations, and rights, and they all impose a heavy burden on the proponent."  *In re Polaroid*

*Corp.*, 424 B.R. 446, 455 n. 12 (Bankr. D. Minn. 2010).  Before Opportunity Finance extended

secured financing to them, PC Funding and SPF Funding made representations about their

separate legal and corporate existence.  Am. Compl. at Ex. A §§ 5.1, 5.2, 5.7; Ex. 1 §§ 5.1, 5.2 &

5.6.  Those representations informed Opportunity Finance's ex-ante expectations and rights with

respect to the secured lending arrangement, and formed the basis for numerous legal opinion

letters concluding that a court would be unlikely to substantively consolidate PC Funding with

PCI in the event that PCI went into bankruptcy. *See* Ex. 5; Ex. 8. The Trustee should not be

permitted to upset those expectations by distorting alter ego law to achieve *de facto* substantive

consolidation. The Trustee's alter ego allegation therefore cannot confer standing to pursue

these claims.[11]

## III.   THE FRAUDULENT TRANSFER CLAIMS FAIL AS A MATTER OF LAW.

### A.   Repayments of A Secured Debt Are Not Fraudulent Transfers.

Although the Trustee alleges that the loan repayments at issue were fraudulent transfers,

he admits that the property conveyed by PC Funding and SPF Funding was encumbered by

security interests in favor of Opportunity Finance. *See*, *e.g.*, Am. Compl. ¶ 56 ("The promissory

notes were secured by a Security Agreement."); *id.* ¶ 72 ("Opportunity Finance then took a

blanket security interest in all of the assets of PC Funding."); *id.* ¶ 94 ("PCI caused PC Funding

and SPF Funding to grant purported security interests to Opportunity Finance and the Sabes

Family Foundation . . . ."). As a matter of law, both under the Bankruptcy Code and the MFTA,

conveyances of assets encumbered by security interests cannot be constructive or actual

fraudulent transfers. Accordingly, the Trustee's fraudulent transfer claims must be dismissed.

### 1.   Under the Bankruptcy Code, A Debtor Cannot Fraudulently Transfer Property that Has Been Pledged to A Creditor as Collateral.

A trustee may avoid only a transfer "of an interest of the debtor in property." 11 U.S.C. §

548(a)(1). When a debtor conveys assets that are subject to that transferee's security interest, the

debtor has not conveyed any interest he has in the property. *See, e.g., Henry v. Lehman*

---

[11] Opportunity Finance will be filing separately its opposition to the Trustee's pending
substantive consolidation motion, which is scheduled to be heard on April 20, 2011.

*Commercial Paper, Inc. (In re First Alliance Mortg. Co.)*, 471 F.3d 977 (9th Cir. 2006);

*Richardson v. The Huntington Nat'l Bank (In re Cyberco Holdings, Inc.)*, 382 B.R. 118 (Bankr.

W.D. Mich. 2008).  In other words, "a debtor cannot fraudulently transfer to a creditor property

that has already been pledged to that creditor as collateral."  *Cyberco*, 382 B.R. at 139

(dismissing Trustee's claim because bank was not alleged to have received "more than what it

was owed"); *see also First Alliance*, 471 F.3d at 1008 (rejecting trustee's attempt to use a

fraudulent transfer theory to avoid "repayments of fully secured obligations").  The Court thus

should dismiss the Trustee's Section 548 fraudulent transfer claims on the grounds that no

interest of PC Funding or SPF Funding was transferred because Opportunity Finance received

"nothing more" than its "own collateral."  *See Cyberco*, 382 B.R. at 137.

### 2.    Under the MFTA, Repayments of Secured Debt Are Not "Transfers."

The result is no different under the MFTA.  As the *Cyberco* court noted, the UFTA

incorporates the concept that "a debtor can fraudulently transfer to another only that which the

debtor actually owns."  382 B.R. at 142.  Under the MFTA, "[a] transfer made or obligation

incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred

the obligation . . . with actual intent to hinder, delay or defraud any creditor of the debtor . . . ."

Minn. Stat. § 513.44(a)(1).  Whether a "transfer" was made is a dispositive threshold question.

*See Ries v. Wintz Props., Inc. (In re Wintz Cos.)*, 230 B.R. 848, 860 (B.A.P. 8th Cir. 1999);

*Knight v. Prod. Res. Grp., LLC*, No. Civ. 036443 (MJD/JGL), 2005 WL 1630523, at *4 (D.

Minn. July 11, 2005); *Shields v. Goldetsky (In re Butler)*, 552 N.W.2d 226, 231-32 (Minn. 1996).

The MFTA defines "transfer" as "every mode . . . of disposing of or parting with an asset or an

interest in an asset . . . ."  Minn. Stat. § 513.41(12); *see also Wintz*, 230 B.R. at 860; *Butler*, 552

N.W.2d at 231-32 (same).  An "asset" is "property of the debtor," but does not include "property

to the extent it is *encumbered by a valid lien*."  Minn. Stat. § 513.41(2)(i) (emphasis added); *see*

20

*also Wintz*, 230 B.R. at 860.  A "lien" is "a charge against or an interest in property to secure

payment of a debt or performance of an obligation, and includes *a security interest created by

agreement*, a judicial lien obtained by legal or equitable process or proceedings, a common-law

lien, or a statutory lien."  Minn. Stat. § 513.41(8) (emphasis added); *see also Wintz*, 230 B.R. at

860.

    Courts applying the MFTA—and other states' nearly-identical statutes—have repeatedly

held that "there is no transfer subject to possible avoidance where the 'asset' 'transferred' is

encumbered by a valid prior lien."  *Siematic MobelWerke GMBH & Co. v. Siematic Corp.*, 643

F. Supp. 2d 675, 691 (E.D. Pa. 2009).[12]  Because the Trustee admits that all property conveyed to

Opportunity Finance was subject to valid prior liens, there were no "transfer[s] subject to

possible avoidance."  The fraudulent transfer claims brought under the MFTA therefore should

be dismissed.

**B.    The Trustee's "Constructive" Fraudulent Transfer Claims Fail as A Matter
        of Law.**

    The Trustee's constructive fraudulent transfer claims fail for two additional, independent

reasons.  First, the Trustee concedes that reasonably equivalent value was exchanged for the

transfers because they repaid antecedent debts.  Second, the Trustee fails to adequately allege

insolvency (or its equivalents), a necessary predicate to a constructive fraudulent transfer claim.

**1.    The Trustee Concedes Reasonably Equivalent Value Was Exchanged.**

---

[12] *See also Wintz*, 230 B.R. at 860; *Knight*, 2005 WL 1630523, at *4; *Agcountry Farm Credit
Servs., FLCA v. Oelke*, No. A04-2096, 2005 WL 1950153, at *3 (Minn. Ct. App. Aug. 16, 2005);
*Lorenz Bus Serv., Inc. v. Richfield Bus Co.*, No C2-02-56, 2002 WL 2005468, at *3-4 (Minn. Ct.
App. Sept. 3, 2002); *Compuware Corp. v. Innovatec Commc'ns*, No. 03-C-429, 2005 WL
2076717, at *10 (E.D. Wis. Aug. 24, 2005); *Epperson v. Entm't Express, Inc.*, 338 F. Supp. 2d
328, 342 (D. Conn. 2004); *Webster Indus., Inc. v. Northwood Doors, Inc.*, 320 F. Supp. 2d 821,
836-37 (N.D. Iowa 2004); *Farstveet v. Rudolph*, 630 N.W.2d 24, 34 (N.D. 2001).

Constructive fraudulent transfer claims fail if the Trustee has not alleged facts showing that "reasonably equivalent value" was lacking in exchange for the challenged transfers. *See* 11 U.S.C. § 548(a)(1)(B); Minn. Stat. §§ 513.44(a)(2)(i)-(ii) & 513.45(a). *See also, e.g.*, *In re Northgate Computer Sys., Inc.*, 240 B.R. 328, 365-66 (Bankr. D. Minn. 1999); *In re Image Masters, Inc.*, 421 B.R. 164, 176-77 (Bankr. E.D. Pa. 2009). The Trustee not only fails to allege a lack of reasonably equivalent value, he concedes that PC Funding and SPF Funding were repaying antecedent debts owed to Opportunity Finance.

The Trustee's lone allegation about the lack of "reasonably equivalent value" in exchange for repayment of the secured loans consists of boilerplate recitations of the elements of his fraudulent transfer claims. *See* Am. Compl. ¶¶ 138, 150, 156, 162, 184, 190, 196, 206, 218, 224, 230. Such allegations are mere legal conclusions, not entitled to deference on a motion to dismiss. *See, e.g.*, *Image Masters,* 421 B.R. at 180 (applying *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) to reject "threadbare, formulaic recitation of the elements of a cause of action for avoidance of a transfer based on constructive fraud").

Nor could the Trustee adequately plead that Opportunity Finance did not give "reasonably equivalent value" in exchange for the transfers. As the Amended Complaint makes clear, each of the challenged transfers satisfied an antecedent debt owing to Opportunity Finance. *See, e.g.*, Am. Compl. ¶¶ 56, 72, 94. Under the Bankruptcy Code, "value" given for a transfer includes "satisfaction or securing of a *present or antecedent debt* of the debtor." 11 U.S.C. § 548(d)(1)(2 (emphasis added.). Under the MFTA, "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an *antecedent debt is secured or satisfied*." Minn. Stat. § 513.43 (emphasis added); *see also B.E.L.T., Inc. v. Wachovia Corp.*, 403 F.3d 474, 477-78 (7th Cir. 2005) (holding, under Illinois version of MFTA,

22

that "[r]epayment of an antecedent loan comes within the 'reasonably equivalent value' rule."). That is precisely what happened here.

Dismissal of the Trustee's constructive fraudulent transfer claims is fully consistent with the Second Circuit's holding in *Sharp Int'l Corp. v. State Street Bank & Trust Co.*, 403 F.3d 43 (2d Cir. 2005). There, State Street extended a $20 million line of credit to the debtor. *Id.* at 47. State Street later became suspicious that the debtor might be engaged in fraud, *id.*, and "arranged quietly" for the debtor to repay its outstanding line of credit "from the proceeds of new loans from unsuspecting lenders." *Id.* State Street said nothing about its suspicions to the replacement lenders. *Id.* at 48. The bankruptcy trustee sued State Street to recover the debtor's repayment of the secured loan. *Id.* The Second Circuit affirmed dismissal of the constructive fraud claims, holding that the trustee had failed to allege a lack of "fair consideration."[13] *Id.* at 53. The court cited approvingly case law holding that "a conveyance which satisfies an antecedent debt made while the debtor is insolvent is neither fraudulent nor otherwise improper, *even if its effect is to prefer one creditor over another*. It is of no significance that the transferee has knowledge of such insolvency." *Id*. at 54-55 (emphasis added) (quoting *Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*, 599 N.Y.S.2d 816 (1st Dep't 1993)). The same result is required here. The Trustee concedes that each transfer received from PC Funding and SPF Funding satisfied an antecedent debt owed to Opportunity Finance. *See*, *e.g.*, Am. Compl. ¶¶ 56, 72, 94. As a matter of law, therefore, PC Funding and SPF Funding received reasonably equivalent value and the

---

[13] "Fair consideration" under New York's Uniform Fraudulent Conveyance Act parallels the "reasonably equivalent value" standard under the Uniform Fraudulent Transfer Act in effect in Minnesota and most other states. Indeed, courts have held that the two terms "have the same fundamental meaning." *See, e.g., Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 677 (Bankr. S.D.N.Y. 2000).

repayments cannot be avoided as constructive fraudulent transfers.[14]  *See Sharp*, 403 F.3d at 54-

55; *see also Image Masters*, 421 B.R. at 178-80; *In re Propex, Inc.*, 415 B.R. 321, 324 (Bankr.

E.D. Tenn. 2009); *In re Hanson*, 373 B.R. 522 (Bankr. N.D. Ohio 2007).

### 2.   The Trustee Fails To Allege Insolvency or One of Its Equivalents.

The Trustee's constructive fraud claims also fail because the Trustee makes no

substantive factual allegations, as he must, that either PC Funding or SPF Funding were

insolvent at the time of the transfers.  *See, e.g.*, Minn. Stat. § 513.44(a)(2)(i) (must allege the

debtor "was engaged or was about to engage in a business or a transaction for which the

*remaining assets of the debtor were unreasonably small* in relation to the business or

transaction." (emphasis added)); *id.* § 513.44(a)(2)(ii) (must allege the debtor "intended to incur,

or believed or reasonably should have believed that the debtor would incur, *debts beyond the*

*debtor's ability to pay* as they became due." (emphasis added)); *id.* § 513.45(a) (must allege "the

debtor was insolvent at that time or the debtor became *insolvent* as a result of the transfer or

obligation." (emphasis added)); *see also Lippe v. Bairnco Corp.*, 230 B.R. 906, 915-16

---

[14] It is of no moment that the secured loan repayments included interest.  It is well settled that the contractual repayment of a loan plus accrued interest is a repayment of an antecedent debt for reasonably equivalent value.  *See, e.g.*, *Freeland v. Enodis Corp.*, 540 F.3d 721, 735 (7th Cir. 2008) (if debtor is contractually obligated to pay interest accrued on note, payment of that interest constitutes "'dollar-for-dollar forgiveness of a contractual debt' which is 'reasonably equivalent value'"); *Lustig v. Weisz and Assoc. (In re Unified Commercial Capital, Inc.)*, 260 B.R. 343, 351-53 (Bankr. W.D.N.Y. 2001) (Ponzi scheme "investor" may enforce contract with the Ponzi schemer "to pay a reasonable rate of interest for the use (loan) of funds" and debtor receives fair value when defendant loans debtor money at reasonable rate of interest); *In re Carrozzella & Richardson*, 286 B.R. 480, 491 (D. Conn. 2002) ("In exchange for the interest paid to the Defendants, the Debtor received a dollar-for-dollar forgiveness of a contractual debt. This satisfaction . . . is . . . 'reasonably equivalent value.'"); *In re Elrod Holdings Corp.*, 421 B.R. 700 (Bankr. D. Del. 2010) (secured note bearing interest rate and security interest in property in exchange for loan is reasonably equivalent value); *Universal Computer Consulting, Inc. v. Pitcairn Enters., Inc.*, No. Civ.A. 03-2398, 2005 WL 2077269, at *13 (E.D. Pa. Aug. 26, 2005) (holding that payment of promissory note with interest in exchange for loan was reasonably equivalent value).

(S.D.N.Y. 1999) (dismissing constructive fraud claim because conclusory allegations of insolvency are insufficient to survive motion to dismiss).

First, other than conclusory allegations that parrot the elements of a Section 513.44(a)(2)(i) claim, *see*, *e.g.*, Am. Compl. ¶¶ 87, 149, 183, 217, the Trustee has failed to assert that either PC Funding or SPF Funding had "unreasonably small capital" at the time of the loan repayments. Second, the Trustee does not allege facts that would show that PC Funding or SPF Funding were unable to their pay debts as they came due. Finally, the Trustee makes no allegations regarding the "sum" of either PC Funding's or SPF Funding's "debts" and "assets" at the time of the loan repayments, and therefore has not alleged that either was "insolvent" within the meaning of the MFTA. *See* Minn. Stat. § 513.42(a) ("[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation."); *see also* 11 U.S.C. § 101(32) (insolvency means "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation").

C.    **The Trustee's "Actual" Fraudulent Transfer Claims Fail as A Matter of Law.**

The Trustee's "actual" fraudulent transfer claims also should be dismissed because the Amended Complaint fails to allege that the transfers from PC Funding and SPF Funding were made with the intent to hinder, delay, or defraud creditors of those entities. For "actual" fraud claims to survive a motion to dismiss, a plaintiff must allege that the defendant had an "actual intent to hinder, delay, or defraud any creditor of the debtor." Minn. Stat. § 513.44(a)(1)*; see also* 11 U.S.C. § 548(a)(1)(A) (using substantially the same language). Here, SPF Funding's petition does not list any creditors, and the only creditor of PC Funding is Opportunity Finance. *See In re PC Funding, LLC*, 08-45326, Dkt. 1; *In re SPF Funding, LLC*, 08-45328, Dkt. No. 1. As a matter of both logic and law, PC Funding and SPF Funding could not have intended to

defraud Opportunity Finance by repaying loans extended to them by Opportunity Finance and its

affiliates.  Thus, under the *Iqbal/Twombly* "plausibility" standard, the Trustee's actual fraud

claims should be dismissed.[15]

This is the appropriate result even if there were other creditors (which there are not).  In

*B.E.L.T.*, the defendant provided the debtor with a line of credit, but later concluded the debtor

was a "bad risk and stopped making loans."  403 F.3d at 476.  The defendant accepted payment

on the outstanding loan balances.  *Id.*  Subsequent lenders claimed they furnished the money

used to pay down those balances, and sued under a fraudulent transfer theory.  *Id.*  The Seventh

Circuit affirmed dismissal, holding that the plaintiff must make allegations that bear on the

debtor's "motive in paying" the lender because actual fraud is not present unless the debtor

intended to defraud creditors through the repayment.  *Id.* at 478.  General allegations that the

debtor concealed facts about its business are not sufficient because they do not bear on the

debtor's motives for repaying the lender.  *Id.*  Moreover, when attacking repayment of a loan, it

is insufficient to allege that, by borrowing money, the debtor prolonged a larger fraud because

repaying a lender "d[oes] not enable" a debtor to "stay in business longer."  *Id.*  In fact, the court

noted that *no case* holds that repaying an antecedent debt to a third-party creditor negotiated at

arm's length is an actual fraud because "the theory that paying an antecedent debt evinces actual

intent to hinder, delay, or defraud any [other] creditor of the debtor" has no basis in law.  *Id.*

---

[15]  Moreover, here, as in *Lippe*, actual fraud is merely alleged in a conclusory fashion, and there
are no allegations that the debtors lacked sufficient assets to satisfy creditors after the loan
repayments were made.  This is not sufficient to withstand a motion to dismiss.  230 B.R. at 915;
*see also Sharp*, 403 F.3d at 49-53 (dismissing "actual" fraud claims on motion to dismiss);
*Churchill*, 256 B.R. at 675-80 (same).

**D.    The Trustee's Fraudulent Transfer Claims Fail To Satisfy Rule 9(b).**

Rule 9(b) applies to the Trustee's actual and constructive fraudulent transfer claims.  *See*

*Kranz v. Koenig*, 240 F.R.D. 453, 455-56 (D. Minn. 2007) (citing, *inter alia*, *Nw. Bank & Trust*

*Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 726 (8th Cir. 2003)).  Rule 9(b) provides that, "[i]n

alleging fraud or mistake, a party must state with particularity the circumstances constituting

fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be

alleged generally." Fed. R. Civ. P. 9(b).  Fraudulent transfer claims must be dismissed if they are

not pleaded with sufficient particularity—*i.e.*, if (1) they are based on "conclusory allegations,"

(2) they lack specificity as to time, place, and content of false representations, (3) they fail to

state when the acts occurred, who engaged in them, and what was obtained, or (4) they are based

on information and belief without setting forth the source of the information and the reason for

the belief.  *Kranz*, 240 F.R.D. at 456.  The Trustee's fraud claims suffer from each of these

defects, and therefore should be dismissed.

First, as noted above, the fraud claims are based on mere conclusory allegations with

regard to many of the statutory elements of the asserted claims.  Second, the Trustee's

allegations are non-specific, "lumping together" Opportunity Finance and all ten of its related

defendants (including individuals, a partnership, a foundation, and corporations), and charging,

without supporting facts, that they acted in concert.  *See, e.g.*, Am. Compl. ¶ 105 (alleging

"Opportunity Finance, the Sabes Family Foundation, and other entities that provided financing to

them or that were controlled by the Sabes Family Defendants received distributions from PCI . . .

."). Allegations that lump defendants together are insufficient to satisfy Rule 9(b)'s pleading

requirements.  *See Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990); *Lingenfelter v. Stoebner*,

No. 03-CV-5544 (JMR/FLN), 2005 WL 1225950, at *7 (D. Minn. May 23, 2005).  Third, the

Trustee makes numerous allegations "on information and belief," or otherwise qualifies his

27

allegations. For example, "information and belief" allegations purportedly underpin the

Trustee's allegations that the challenged transfers were "for the benefit" of individual

defendants, Am. Compl. ¶¶ 14, 17, 18, and were "based upon wholly fraudulent and fictitious

documents and financial transactions," *id.* ¶ 110. Qualified allegations of this type are not

sufficient to state a plausible claim for relief, and do not satisfy Rule 9(b). *Drobnak v. Andersen

Corp.*, 561 F.3d 778, 784 (8th Cir. 2009); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th

Cir. 1997).

For the foregoing reasons, the Trustee's fraud claims do not satisfy the pleading

requirements of Rule 9(b), and therefore should be dismissed.

## IV.    THE TRUSTEE'S REMAINING CLAIMS FAIL AS A MATTER OF LAW.

The Trustee asserts several causes of action that attempt to bootstrap the fraudulent

transfer claims, but they too are legally deficient.

### A.    The Trustee Cannot Bring A Turnover and Accounting Claim Because the Relevant Statute Applies Only to Estate Property.

The Court should dismiss the Trustee's "turnover and accounting" claim (Count I)

because the statute upon which it is based, 11 U.S.C. § 542, applies only to property of an estate

in the possession of a third party. The statute does not apply where title is in dispute. *See*, *e.g.*,

*United States v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991) (turnover statute cannot be

used to demand assets when their ownership is disputed); *In re Charter Co.*, 913 F.2d 1575, 1579

(11th Cir. 1990) (same). Courts thus have routinely held that Section 542 does not apply to

property that allegedly has been preferentially or fraudulently transferred. *See In re Andrew

Velez Constr., Inc.*, 373 B.R. 262, 273 (Bankr. S.D.N.Y. 2007); *In re Teligent, Inc.*, 325 B.R.

134, 137 (S.D.N.Y. 2005) (same); *see also* 5 COLLIER ON BANKRUPTCY § 542.02 [2] (Alan N.

Resnick & Henry J. Sommer eds., 16th ed.). Not until such property is "recovered" does it

become property of the estate subject to Section 542.  *See* 11 U.S.C. § 541(a)(3) (property of the estate includes "any interest in property that the trustee *recovers* under section . . . 550 . . . of this title") (emphasis added); *see also In re Colonial Realty Co.*, 980 F.2d 125, 132 (2d Cir. 1992).

### B.    The Trustee Cannot Bring A Substantive Cause of Action for Disallowance.

The statute on which the Trustee relies for his disallowance claim (Count XXIII)—11 U.S.C. § 502—does not provide a basis for the claim.  Section 502 provides the mechanism for treatment of creditors' proofs of claims.  *See* 11 U.S.C. § 502(a).  But subsections (b) and (d)— invoked by the Trustee, *see* Am. Compl. ¶¶ 257-60—do not create a cause of action.  To the contrary, subsection (b) addresses the court's determination of the allowable amount of submitted claims, and subsection (d) deals with the disallowance of claims made when the creditor is one "from which property is recoverable" or "is a transferee of a transfer avoidable" under the preference and fraudulent transfer statutes.  11 U.S.C. § 502(b),(d).  Opportunity Finance and its related defendants have not filed proofs of claim, so Section 502 is inapplicable.

Even if the statute were factually applicable, however, it does not grant a private right of action to a bankruptcy trustee.  *See In re Billy Joe Sims*, 278 B.R. 457, 466 (Bankr. E.D. Tenn. 2002) ("§ 502(b)(2) provides no express private right of action" and Congress intended none); *Holloway v. Household Auto. Fin. Corp.*, 227 B.R. 501, 504 (N.D. Ill. 1998) (holding that "no private remedy exists" under § 502); c*f.* 11 U.S.C. § 548(a).  As a matter of law, then, the Court should dismiss the Trustee's disallowance claim.

### C.    The Trustee Cannot Bring Lien Avoidance or Equitable Subordination Claims Because Opportunity Finance and Its Co-Defendants Have Not Filed Any Proof of Claim.

Citing 11 U.S.C. § 506(d), the Trustee asks the Court to declare and order that any lien asserted by Opportunity Finance or its co-defendants is invalid and void (Count XXIV).  Am. Compl. ¶¶ 261-63.  Section 506(d) states that "to the extent that a lien secures a claim against the

debtor that is not an allowed secured claim, such lien is void, unless . . . such claim was

disallowed only under section 502(b)(5) or 502(e) . . . or . . . such claim is not an allowed

secured claim due only to the failure of any entity to file a proof of such claim . . . ."  11 U.S.C.

§ 506(d).  Accordingly, there can be no lien avoidance unless a proof of claim has been filed.

*See*, *e.g.*, *In re Painter*, 84 B.R. 59, 62 (W.D. Va. 1988); *Dembo v. Internal Revenue Serv. (In re
Dembo)*, 126 B.R. 195, 198 (Bankr. E.D. Pa. 1991).  Opportunity Finance and its related

defendants have not filed a proof of claim—the Amended Complaint does not allege otherwise—

and there has been no determination of allowability as to any potential lien belonging to them.

The lien avoidance claim therefore fails as a matter of law.[16]

> ### D.     The Trustee's Unjust Enrichment Claim Is Precluded by Federal and State Statutory Law.

The Trustee's unjust enrichment/equitable disgorgement claim (Count XXVI) rests upon

the same bases as his fraudulent transfer claims.  But both federal law and state law preclude the

Trustee from attempting to obtain fraudulent transfer relief through equitable causes of action.

The authority to pursue an equitable claim, such as unjust enrichment, is statutorily constrained.

"[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised

within the confines of the Bankruptcy Code."  *Norwest Bank Worthington v. Ahlers*, 485 U.S.

197, 206 (1988); *see also In re Ozark Rest. Equip. Co.*, 816 F.2d 1222, 1230 (8th Cir. 1987)

(trustee must have basis in Code to assert equitable claim).  Even Section 105 does not confer

"the ability to award equitable relief where the party asserting the cause of action for such relief

does not have standing under any other section of the Code."  *Ozark*, 816 F.2d at 1230.  Thus, a

---

[16] The Trustee also requests that any hypothetical claim that may be made by these defendants be equitably subordinated pursuant to 11 U.S.C. § 510(c) (Count XXV). Am. Compl. ¶¶ 264-68. Section 510(c) allows equitable subordination only of "an *allowed claim*."  11 U.S.C. § 510(c)(1) (emphasis added).  As none of these defendants has filed a proof of claim, let alone had one "allowed," the equitable subordination claim likewise fails as a matter of law.

trustee must have an independent statutory basis to pursue an equitable claim such as unjust

enrichment. *See In re Knox*, 237 B.R. 687, 701 (Bankr. N.D. Ill. 1999) ("[B]ankruptcy judges

cannot award equitable relief independent of rights arising in or under the Bankruptcy Code.").

Where an independent basis for pursuing an equitable claim is lacking, courts dismiss such

claims. *See*, *e.g.*, *Ozark*, 816 F.2d at 1230 (rejecting equitable veil piercing claim because "no

provision of the Code gives the trustee in this case standing to assert the alter ego claim"); *In re*

*Charterhouse, Inc.*, 84 B.R. 147, 154 (Bankr. D. Minn. 1988) (claim for equitable relief was

unavailable); *In re Hechinger Inv. Co.*, 274 B.R. 71, 98 (D. Del. 2002) (unjust enrichment claims

not available to take the place of failed fraudulent transfer claims).

Here, Congress has created no statutory claim of unjust enrichment, nor otherwise vested

the Court with specific authority to grant relief for such a claim. The Court thus is powerless to

grant the requested relief. *See Norwest Bank*, 485 U.S. at 207; *Ozark*, 816 F.2d at 1230.

Moreover, the Trustee's unjust enrichment claim is merely an attempt to hedge against failure of

the fraudulent transfer claims. *See* Am. Compl. ¶¶ 269-75 (invoking "unjust enrichment" to

recover funds allegedly fraudulently transferred). Federal law does not permit using equity to

hedge against failures of statutory claims, *Charterhouse*, 84 B.R. at 154, nor to effect fraudulent

transfer relief when statutory fraudulent transfer requirements cannot be satisfied, *Hechinger*,

274 B.R. at 96-97. If the Trustee cannot obtain fraudulent transfer relief pursuant to applicable

fraudulent transfer law, he cannot obtain it under the guise of "unjust enrichment." *Id*.;

*Charterhouse*, 84 B.R. at 154.

Likewise, under Minnesota law an equitable claim is not available where an adequate

legal remedy exists or where statutory standards for recovery are set by the legislature. *See*

*Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992);

*Parkview Estates Homeowners Ass'n v. Arkell Dev. Corp.*, No. C7-94-913, 1994 WL 705375, at

*3 (Minn. Ct. App. Dec. 20, 1994).  Statutory standards for recovery are contained in the federal

and state fraudulent transfer laws.  *See, e.g.*, 11 U.S.C. § 548; Minn. Stat. § 513.41 *et seq.*  The

Trustee's unjust enrichment claim plainly overlaps with his claims under the MFTA, and

therefore should be dismissed.  *Southtown*, 493 N.W.2d at 140.

## CONCLUSION

For the foregoing reasons, Opportunity Finance and its related defendants respectfully

request that the Court grant its Motion to Dismiss the Amended Complaint and dismiss all claims

against them with prejudice.

Dated:  March 11, 2011                              Respectfully submitted,

                                                   WILLIAMS & CONNOLLY LLP
                                                   BRIGGS AND MORGAN, P.A.


                                                   By:   */e/ Joseph G. Petrosinelli*
                                                   Joseph G. Petrosinelli (admitted *pro hac vice*)
                                                   Jonathan M. Landy (admitted *pro hac vice*)
                                                   Jefferey D. Bailey (admitted *pro hac vice*)
                                                   Williams & Connolly LLP
                                                   725 Twelfth Street, N.W.
                                                   Washington, D.C.  20005
                                                   Telephone:    (202) 434-500
                                                   Facsimile:    (202) 434-5029
                                                   Email:        jbailey@wc.com

                                                   John R. McDonald
                                                   Kari S. Berman
                                                   Max Heerman
                                                   Briggs and Morgan, P.A.
                                                   2200 IDS Center
                                                   80 South 8th Street
                                                   Minneapolis, MN  55402
                                                   Telephone:    612-977-8746
                                                   Facsimile:    612-977-8650
                                                   Email:        kberman@briggs.com

32

*Counsel to Opportunity Finance, LLC; Opportunity Finance Securitization, LLC; Opportunity Finance Securitization II, LLC; Opportunity Finance Securitization III, LLC; International Investment Opportunities, LLC; Sabes Family Foundation; Sabes Minnesota Limited Partnership; Robert W. Sabes; Janet F. Sabes; Jon R. Sabes; Steven Sabes*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| In re: | **Jointly Administered Under**<br>**Case No. 08-45257** |
| Petters Company, Inc., et al., | |
| Debtors. | Court File Nos.: |
| (includes: | 08-45258 (GFK) |
| Petters Group Worldwide, LLC; | 08-45326 (GFK) |
| PC Funding, LLC; | 08-45327 (GFK) |
| Thousand Lakes, LLC; | 08-45328 (GFK) |
| SPF Funding, LLC; | 08-45329 (GFK) |
| PL Ltd., Inc.; | 08-15330 (GFK) |
| Edge One LLC; | 08-45331 (GFK) |
| MGC Finance, Inc.; | 08-45371 (GFK) |
| PAC Funding, LLC; | 08-45392 (GFK) |
| Palm Beach Finance Holdings, Inc.) | |
| | Chapter 11 Cases |
| | Judge Gregory F. Kishel |

---

Douglas A. Kelley, in his capacity as the Court-appointed
Chapter 11 Trustee of Debtors Petters Company, Inc; PC
Funding, LLC; and SPF Funding, LLC,

       Plaintiff,

vs.                                   ADV. NO. 10-04301

Opportunity Finance, LLC; Opportunity Finance
Securitization, LLC; Opportunity Finance Securitization
II, LLC; Opportunity Finance Securitization III, LLC;
International Investment Opportunities, LLC; Sabes
Family Foundation; Sabes Minnesota Limited
Partnership; Robert W. Sabes; Janet F. Sabes; Jon R.
Sabes; Steven Sabes; Deutsche
Zentralgenossenschaftbank AG; West Landesbank AG;
WestLB AG New York Branch; and The Minneapolis
Foundation,

       Defendants.

---

## CERTIFICATE OF SERVICE

---

I, Max Heerman, certify that on March 11, 2011, I caused the foregoing to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

- Jefferey D Bailey    jbailey@wc.com
- Adam C Ballinger     aballinger@lindquist.com, ddavis@lindquist.com
- Kari Berman     kberman@briggs.com, kwilczyk@briggs.com
- Monica L. Clark     clark.monica@dorseylaw.com
- Katherine A. Constantine     constantine.katherine@dorsey.com, yokiel.maryjo@dorsey.com
- Matthew D. Forsgren     mforsgren@briggs.com, cdanek@briggs.com
- Elizabeth A Hulsebos     hulsebos.elizabeth@dorsey.com
- Kirstin D. Kanski     kkanski@lindquist.com, cfunk@lindquist.com
- Jonathan M Landy     jlandy@wc.com
- Mark D Larsen     mlarsen@lindquist.com, ddaun@lindquist.com;dhilgers@lindquist.com
- James A. Lodoen     jlodoen@lindquist.com, gluessenheide@lindquist.com
- John R. McDonald     jmcdonald@briggs.com, mjacobson@briggs.com
- Patrick J McLaughlin     mclaughlin.patrick@dorsey.com
- David L. Mitchell     dlmitchell@rkmc.com
- Joseph G Petrosinelli     jpetrosinelli@wc.com
- Michael Rosow     mrosow@winthrop.com, jahlers@winthrop.com;tcooke@winthrop.com
- Jeffrey D. Smith     jsmith@lindquist.com, ddavis@lindquist.com
- Daryle Uphoff     duphoff@lindquist.com

I further certify that I caused a copy of the foregoing documents to be sent via U.S. Mail to the following non-ECF participants:

Deutsche Zentralgenossenschaftbank AG
DG Bank Building
609 Fifth Avenue
New York, NY 10017-1021

West Landesbank AG
Superintendent of Banks
New York State Banking Department
One State Street
New York, NY 10004-1511

West Landesbank AG
c/o Tom McCaffery, Branch Head
7 World Trade Ctr., 250 W. Greenwich St.
New York, NY 10007

West Landesbank AG
c/o Sonja Kardorf, Branch Head
7 World Trade Ctr., 250 W. Greenwich St.
New York, NY 10007

West Landesbank AG
c/o Michael Frank, Branch Head
7 World Trade Ctr., 250 W. Greenwich St.
New York, NY 10007

WestLB AG New York Branch
7 World Trade Center
250 Greenwich St
New York, NY 10007

WestLB AG New York Branch
Superintendent of Banks
New York State Banking Department
One State Street
New York, NY 10004-1511

Dated:  March 11, 2011                         /e/ Max Heerman

                                            Briggs and Morgan, P.A.
                                            80 South 8th Street, Suite 2200
                                            Minneapolis, MN  55402

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:

Petters Company, Inc., et al.,

        Debtors.

(includes:
Petters Group Worldwide, LLC;
PC Funding, LLC;
Thousand Lakes, LLC;
SPF Funding, LLC;
PL Ltd., Inc.;
Edge One, LLC;
MGC Finance, Inc.;
PAC Funding, LLC;
Palm Beach Financing Holdings, Inc.)

**Jointly Administered under
Case No. 08-45257
Jury Trial Demanded**

Court File Nos.
08-45258 (GFK)
08-45326 (GFK)
08-45327 (GFK)
08-45328 (GFK)
08-45329 (GFK)
08-45330 (GFK)
08-45331 (GFK)
08-45371 (GFK)
08-45392 (GFK)

Chapter 11 Cases
Judge Gregory F. Kishel

---

Douglas A. Kelley, Trustee for Petters
Company, Inc., PC Funding, LLC; and SPF
Funding, LLC,

        Plaintiff,

vs.

Opportunity Finance, LLC; Opportunity
Finance Securitization, LLC; Opportunity
Finance Securitization II, LLC; Opportunity
Finance Securitization III, LLC; International
Investment Opportunities, LLC; Sabes Family
Foundation; Sabes Minnesota Limited
Partnership; Robert W. Sabes; Janet F. Sabes;
Jon R. Sabes; Steven Sabes; Deutsche
Zentralgenossenschaftbank AG; West
Landesbank AG; WestLB AG New York
Branch; and The Minneapolis Foundation,

        Defendants.

Adv. Proc. No. 10-04301

**ORDER**

---

The above-entitled matter came on for hearing before the undersigned on the motion of Opportunity Finance, LLC; Opportunity Finance Securitization, LLC; Opportunity Finance Securitization II, LLC; Opportunity Finance Securitization III, LLC; International Investment Opportunities, LLC; Sabes Family Foundation; Sabes Minnesota Limited Partnership; Robert W. Sabes; Janet F. Sabes; Jon R. Sabes; and Steven Sabes (the "Opportunity Finance Defendants") for dismissal of Plaintiff's claims with prejudice pursuant to Rules 7008, 7009, and 7012 of the Federal Rules of Bankruptcy Procedure.  Appearances, if any, were noted on the record.  Based on all the files, records and proceedings herein:

IT IS ORDERED that the Opportunity Finance Defendants' motion to dismiss is granted. IT IS FURTHER ORDERED that Plaintiff's claims against the Opportunity Finance Defendants are hereby dismissed in their entirety with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.


_____
United States Bankruptcy Judge