UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| In re: | **JOINTLY ADMINISTERED UNDER CASE NO. 08-45257** |
| PETTERS COMPANY, INC., ET AL, | Court File No. 08-45257 |
| Debtors. | |
| | Court File Nos: |
| (includes: | |
| Petters Group Worldwide, LLC; | 08-45258 (GFK) |
| PC Funding, LLC; | 08-45326 (GFK) |
| Thousand Lakes, LLC; | 08-45327 (GFK) |
| SPF Funding, LLC; | 08-45328 (GFK) |
| PL Ltd., Inc. | 08-45329 (GFK) |
| Edge One LLC; | 08-45330 (GFK) |
| MGC Finance, Inc.; | 08-45331 (GFK) |
| PAC Funding, LLC; | 08-45371 (GFK) |
| Palm Beach Finance Holdings, Inc.) | 08-45392 (GFK) |
| | Chapter 11 Cases Judge Gregory F. Kishel |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DOUGLAS A. KELLEY, in his capacity
as the court-appointed Chapter 11
Trustee of Debtors Petters Company, Inc.;
PC Funding, LLC; and SPF Funding, LLC,

        Plaintiff,

v.                                                        ADV 10-4301

OPPORTUNITY FINANCE, LLC; OPPORTUNITY
FINANCE SECURITIZATION, LLC; OPPORTUNITY
FINANCE SECURITIZATION II, LLC; OPPORTUNITY
FINANCE SECURITIZATION III, LLC; INTERNATIONAL
INVESTMENT OPPORTUNITIES, LLC; SABES FAMILY
FOUNDATION; SABES MINNESOTA LIMITED
PARTNERSHIP; ROBERT W. SABES; JANET F.
SABES; JON R. SABES; STEVEN SABES; DEUTSCHE
ZENTRALGENOSSENSCHAFTBANK AG; WEST
LANDESBANK AG; and THE MINNEAPOLIS FOUNDATION,

        Defendants.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *05/19/2016*
Lori Vosejpka, Clerk, By JRB, Deputy Clerk

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM ON OPPORTUNITY FINANCE DEFENDANTS' MOTION FOR DISMISSAL, RE:  EFFECT OF SUBSTANTIVE CONSOLIDATION ON TRUSTEE'S STANDING

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

At St. Paul, Minnesota
May 19, 2016.

This adversary proceeding was commenced in the Chapter 11 cases of Debtor Petters Company, Inc., and the other Debtor-entities related to it.  It is before the court for a ruling on an issue posed by Defendants Opportunity Finance, LLC, et al (collectively, "the Opportunity Finance defendants") in their motion for dismissal.[1]  In 2013, substantive consolidation was ordered in the underlying bankruptcy cases, as to the estates of all of the Debtors except Petters Group Worldwide, Inc. ("PGW").  The issue at bar is how that grant of substantive consolidation affects the capacity of the Plaintiff ("the Trustee") to sue the Opportunity Finance defendants under 11 U.S.C. § 544(b) and Minnesota's fraudulent transfer laws, on the range of transfers he seeks to avoid.  Oral argument for the Opportunity Finance defendants was presented by Christopher J. Mandernach of Williams & Connelly, LLP and John R. McDonald of Briggs and Morgan, P.A. James A. Lodoen and Mark D. Larsen of Lindquist & Vennum, PLLP argued for the Trustee.  H. Peter Haveles, Jr. of Kaye Scholer LLP argued for Defendant DZ Bank.  This memorandum sets forth the ruling on the issue.  The Opportunity Finance defendants' motion for dismissal raised other issues that will receive separate rulings.

---

[1]That term will denote, as a group, Opportunity Finance, LLC; Opportunity Finance Securitization, LLC; Opportunity Finance Securitization II, LLC; Opportunity Finance Securitization III, LLC; International Investment Opportunities, LLC; Sabes Family Foundation; Sabes Minnesota Limited Partnership; Robert W. Sabes; Janet F. Sabes; Jon R. Sabes; and Steven Sabes.  Defendant Deutsche Zentralgenossen-schaftbank will be termed "DZ Bank"; Defendant West Landesbank AG will be termed "WestLB."  The term "the defense" will denote all of the Defendants collectively, when they have joined forces against the Trustee to take specific positions.

## INTRODUCTION

The underlying cases were commenced in October, 2008, after the collapse of a massive Ponzi scheme perpetrated by Thomas J. Petters, the principal of the Debtors.  This adversary proceeding was one of some 200 in a docket of avoidance litigation commenced in the cases.  It is one of the most prominent within the docket--both for the magnitude of the judgment sought by the Trustee and in the scope and complexity of the subject matter, i.e. hundreds of transactions that featured the subject transfers.[2]

Early in this litigation, the Opportunity Finance defendants moved for dismissal under Rule 12(b)(6) in lieu of filing an answer.  Numerous defendants in other adversary proceedings in the docket did the same.

This adversary proceeding was among a small number that presented substantial legal issues distinct to it--more involved and specific to particular parties-defendant.[3]  Further judicial attention to this and other such matters was deferred pending the issuance of three sets of rulings on issues common across the litigation docket.[4]

Around the same time, another proceeding was judicially assigned higher priority for litigation, trial, and decision:  a motion the Trustee brought in the main cases, for the substantive consolidation of the estates of all of the Debtors but one.[5]  The Opportunity Finance defendants vigorously opposed the Trustee on the merits of that motion.  They were joined by other defendants

---

[2]In the interests of brevity, no more backdrop for the bankruptcy filings, the cases, and the general litigation will be recited.  The parties very well know it; and it has been set forth in multiple, prior published decisions made in the underlying bankruptcy cases and other cases and proceedings related to them.

[3]During ongoing discussion on case administration, counsel took to calling these parties "the unique issues defendants."

[4]The three sets of rulings were published as *In re Petters Co., Inc.*, 494 B.R. 413, 495 B.R. 887, and 499 B.R. 342 (all Bankr. D. Minn. 2013).

[5]The Trustee omitted PGW's case and estate from the request for substantive consolidation made through that motion.  The remaining eight Debtors were all subsidiaries of PCI.

in the Trustee's litigation, including DZ Bank and WestLB. A lengthy decision on the Trustee's motion was entered, published as *In re Petters Company, Inc.*, 506 B.R. 784 (Bankr. D. Minn. 2013).

The Opportunity Finance defendants and other respondents took appeals from that order. They elected to have the appeals proceed in the district court. Judge Patrick J. Schiltz was assigned to the appeals.[6] Ultimately, Judge Schiltz dismissed the appeal for lack of appellate standing in the Opportunity Finance defendants and its allies. *WestLB AG v. Kelley*, 531 B.R. 783 (D. Minn. 2015). The Eighth Circuit Court of Appeals has just affirmed Judge Schiltz's decision. *Opportunity Finance, LLC v. Kelley*, ___ F.3d ___, No. 15-2061, 2016 WL 2848587 (8th Cir. May 16, 2016).

Some months after the appeal to the district court was made, the Trustee began asserting in this adversary proceeding that one of the keystone aspects of the Opportunity Finance defendants' motion for dismissal was ripe for decision due to the grant of substantive consolidation. That point was the defense's contention that the Trustee had no litigable claim against them for avoidance of fraudulent transfers under Minnesota state law, as to payments that had been made by the Debtor-entities that had no statutorily-qualified creditors when they were put into bankruptcy. On such transfers, the Opportunity Finance defendants insisted, the Trustee lacked a figurative predecessor from which to take the derivative standing under 11 U.S.C. § 544(b) that he asserted

---

[6]While the appeal in the main case was before Judge Schiltz, things got complicated at the doing of both sides. The Trustee moved to certify the appeal to the Eighth Circuit pursuant to 28 U.S.C. § 158(d)(2)(B)(i). Judge Schiltz denied that motion. *WestLB AG v. Kelley*, 514 B.R. 287 (D. Minn. 2014). Meanwhile, the Opportunity Finance defendants moved for withdrawal of the reference. The asserted cause was, among other things, that the statutory commitment of fraudulent transfer actions to the final decision-making authority of a bankruptcy judge (28 U.S.C. § 157(b)(2)(H)) was constitutionally infirm under *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594 (2011), and its progeny in several circuit courts of appeal. That motion was transmitted to the district court pursuant to Loc. R. Bankr. P. (D. Minn.) 5011-1. Judge Michael J. Davis, then Chief in the district court, was assigned to the motion--which he denied. *Kelley v. Opportunity Finance, LLC et al* [14-cv-3375, Dkt. No. 36] (D. Minn. Jan. 26, 2015). After that, it was settled that this adversary proceeding would go forward in the forum where it was commenced, the bankruptcy court--at least until motions for summary judgment received rulings.

when he invoked Minnesota state law as a substantive basis for avoidance.  For the Trustee's case

against the Opportunity Finance defendants, the Debtor-transferors in question were PC Funding,

LLC and SPF Funding, LLC.

The Opportunity Finance defendants resisted having this issue scheduled for

submission.  At various times they suggested that proceeding here would infringe on appellate

jurisdiction due to an overlap of issues; at others they cited "prudential considerations" to argue for

deferral until the issue of the ultimate forum was resolved through their motion for withdrawal of

reference.

However, the issue was set for argument.[7]  And now it is indisputably ripe for a

ruling.

## ISSUE AT BAR, UNDER CURRENT STATE OF PLEADING
## AND IN CONTEXT OF MOTION FOR DISMISSAL

Before getting into the merits, it is necessary to lay out the issue presented--specific

to its genesis (the Trustee's pleading) and the vehicle through which it is raised (the defense's

motion for dismissal).

The Trustee sued the Opportunity Finance defendants to avoid transfers of money

they had received in repayment of loans they had made to the Petters enterprise structure.[8]  As the

Trustee pled it, these transactions were documented as loans to fund the business in which the

_____

[7]The court's election to proceed has now been vindicated; with the Eighth Circuit's recent ruling, there is no appellate jurisdiction to infringe on.  And, of course, Judge Davis's ruling settled the issue of forum--in a fashion entirely consistent with the way this district has handled the division of judicial labor for years now, for adversary proceedings where a jury trial was demanded of right or *Stern* issues were presented.

[8]As in prior decisions, the phrase "Petters enterprise structure" will be used in a connotative sense--to describe the complicated group of related artificial entities through which Tom Petters carried on his activity but without specifying particular entities.  Throughout his litigation, the Trustee pleads that Tom Petters engaged in pervasive commingling of assets and widespread disregard of corporate separateness. The full extent and legal consequences of such commingling are still unsettled in the litigation; so it is not judicially prudent to get too specific in references until it is required for dispositive rulings as to particular entities.

Petters enterprise structure was ostensibly engaged:  the facilitation of sales of consumer merchandise inventory outside more standard distribution channels, i.e. directly between wholesaler- or retailer-providers and retailer-purchasers.  The Trustee's forensic-accounting investigation revealed that there were few or no underlying transactions in such goods over a decade or more, and the Petters structure's receipt and use of lenders' cash infusions was parlayed as a Ponzi scheme.[9]

        The Trustee sues the Opportunity Finance defendants on claims of fraudulent transfer.  In part, he relies on the Minnesota enactment of the Uniform Fraudulent Transfer Act ("MUFTA"), Minn. Stat. §§ 513.41 - 513.51 (2014), via the empowerment of 11 U.S.C. § 544(b).[10] He relies on both statutory theories of fraudulent transfer, i.e. actually- and constructively-fraudulent.

        For such empowerment, however, § 544(b) requires a trustee to prove that the

---

        [9]A wide array of parties and multiple courts now refer to the historical existence and the broad nature of the Petters scheme as assumed fact.  *E.g.*, *Peterson v. Winston & Strawn LLP*, 729 F.3d 750, 751 (7th Cir. 2013); *Peterson v. Somers Dublin Ltd.*, 729 F.3d 741, 744 (7th Cir. 2013); *United States Sec. and Exch. Comm'n v. Quan*, 817 F.3d 583, 587-589 (8th Cir. 2016); *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 836-837 (8th Cir. 2014); *In re Cypress Fin. Trading Co., L.P.*, 620 Fed.Appx. 287, 288 (5th Cir. 2015); *In re Palm Beach Fin. Partners, L.P.*, 527 B.R. 518, 521 (S.D. Fla. 2015); *In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 319-321 (Bankr. S.D. Fla. 2013).

        [10]Section 544(b) makes some remedies under state substantive law available to a trustee in bankruptcy, to

> . . . avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under [11 U.S.C. §] 502 . . . or that is not allowable only under [11 U.S.C. §] 502(e) . . . .

11 U.S.C. § 544(b)(1).  Such substantive authority can include fraudulent transfer statutes.  *E.g., In re Marlar*, 267 F.3d 749, 755-756 (8th Cir. 2001); *In re Popkin & Stern*, 223 F.3d 764, 769 n.11 (8th Cir. 2000); *In re Estate of Graven*, 64 F.3d 453, 456 n.5 (8th Cir. 1995); *In re Graven*, 936 F.2d 378, 383 n.7 (8th Cir. 1991); *In re DLC, Ltd.*, 295 B.R. 593, 601 (B.A.P. 8th Cir. 2003).  MUFTA was the statutory source of fraudulent-transfer law in Minnesota when the Trustee commenced this adversary proceeding. In 2015 the Minnesota legislature amended and retitled MUFTA using a new uniform law, the Uniform Voidable Transactions Act.  2015 Minn. Laws, ch. 17.  The amendment, however, applies only to transactions that occur after August 1, 2015.  2015 Minn. Laws, ch. 17, ¶ 13.  Thus, MUFTA's provisions still apply to this adversary proceeding.

debtor for whose estate he sues, in fact *had* a creditor of the sort identified in the statute, one with

a right to payment from the debtor, in order for the trustee to invoke the same state-law avoidance

remedies that such a creditor could have used on the date of the bankruptcy filing and in the

absence of the bankruptcy filing. *In re Petters Company, Inc.*, 494 B.R. at 440-441; *In re Petters

Company, Inc.*, 495 B.R. at 895-896. To make a more concrete metaphor for it, a right of avoidance

for a bankruptcy estate under § 544(b) must be anchored to the debtor's pre-bankruptcy past--

based on actual pre-petition facts in which that debtor features as a participant, linked directly to

the pre-petition right of a creditor of that debtor.

   Absent such a predicate creditor, a trustee lacks derivative standing to sue under

§ 544(b). *In re Wintz Cos.*, 230 B.R. 848, 859 (B.A.P. 8th Cir. 1999). And further, to meet the

plausibility standard for fact-pleading under current Supreme Court precedent,[11] a trustee must

identify in his complaint, by name, one or more such predicate creditors. *In re Petters Company,

Inc.*, 495 B.R. at 895-901.

   When the Trustee originally sued out this adversary proceeding, the pleading

addressed to this point was minimal:

> 141. At all times material hereto, there was and is at least one or more creditors who held and who hold unsecured claims against the Debtors that were and are allowable under Bankruptcy Code § 502 or that were and are not allowable only under Bankruptcy Code § 502(e). The PC Funding Transfers are avoidable under applicable nonbankruptcy law by a creditor holding an unsecured claim in the bankruptcy case.

Complaint [Dkt. No. 1, 40].[12] The only other pleading-content that bore on the issue of a predicate

---

[11]i.e., *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12]This paragraph is quoted as an exemplar. Virtually the same text was used to address the existence of a predicate creditor for all of the counts that invoke Minnesota state law for the avoidance of transfers made to the Opportunity Finance defendants other than the Sabes Family Foundation through PC Funding, LLC [Complaint, ¶¶ 141, 147, 153, 159] and through Debtor SPF Funding, LLC [Complaint,

creditor was:

> 47. The Trustee seeks to set aside such transfers, recover and preserve the property of PC Funding and the property of SPF Funding—which at all times relevant herein was the de facto property of PCI—for the benefit of defrauded individuals and organizations that are creditors of PCI.

Complaint [Dkt. No. 1, 12].

This clearly did not pass muster under the second memorandum and the requirement under its ruling #6A, that a specific predicate creditor be identified in pleading. 495 B.R. at 900-901.

After the second memorandum was issued, the Trustee filed his Second Amended Complaint in May, 2014. Its pleading on the predicate-creditor issue was markedly different. For the legal structure of his fact-pleading, the Trustee now relied entirely on the fact that substantive consolidation had been ordered in the meantime:

> 142. The Trustee has standing to assert the claims herein because, at all times material hereto, there was and is at least one or more creditors, as specifically identified in paragraphs 78 and 79 above, who hold an allowed unsecured claim and who held and who hold an unsecured claim against the Debtor that was and is allowable under Bankruptcy Code § 502 or that was and is not allowable only under Bankruptcy Code § 502(e).

> 143. The Trustee's claim is timely because, at all times material hereto, there was and is at least one or more creditors who held and who hold allowed and allowable claims, as identified in paragraph 79 above, (a) whose claims against the Defendants did not arise, exist or accrue at any time until within the six years before the first date on which a bankruptcy petition was filed by any debtor in the above-captioned bankruptcy cases, and (b) who had

---

¶¶ 175, 181, 187, 193]; through SPF Funding to defendant Sabes Family Foundation [Complaint, ¶¶ 209, 215, 221, 229] and through SPF Funding to defendant The Minneapolis Foundation [Complaint, ¶¶ 233, 239, 245, and 251].

neither actual knowledge nor discovery of facts
constituting deemed notice of the nature of Petters'
fraud and the Ponzi scheme at any time until within
six years before the first date on which a bankruptcy
petition was filed by any debtor in the
above-captioned bankruptcy cases.

144.  The PC Funding Transfers are avoidable under
applicable nonbankruptcy law by a creditor holding
an unsecured claim in the bankruptcy case.

Second Amended Complaint [Dkt. No. 83, 71].[13]

In turn, the text of paragraphs 78 and 79 of the Second Amended Complaint is new

to the historical sequence of the Trustee's pleading.  The two paragraphs run a total of 27 pages.

Within them the Trustee identifies (in tabular format and separate narrative) multiple creditors

toward satisfying the predicate-creditor requirement.  PC Funding and SPF Funding are never

mentioned in these paragraphs; and there is no indication that they were ever in contractual privity

with or otherwise indebted to any of the proffered predicate creditors.  On the other hand, one or

the other of PC Funding and SPF Funding is named as the transferor of money to the Opportunity

Finance defendants, solely or in the conjunctive with PCI, at multiple points throughout ¶¶ 113-130

of the Second Amended Complaint.

Now, the point of this discussion.  In the original motion for dismissal, the issue was

framed as follows: was the Trustee's pleaded case for avoidance under Minnesota law fatally

deficient, not only for the failure to identify a predicate creditor on the face of the complaint, but for

the de facto and de jure *lack* of such a creditor as to the Debtors that actually made the transfers

he would have avoided?  This, of course, went to the Trustee's first pleading.

---

[13]Again, this text is quoted as an exemplar of other pleaded sequences later in the Second
Amended Complaint.  *See* the paragraphs of the Second Amended Complaint noted as follows:  as to
transfers made through Debtor PC Funding, LLC to Opportunity Finance defendants other than Sabes
Family Foundation and The Minneapolis Foundation, ¶¶ 142-144, 150-152, 158-160, and 166-168; as to
transfers made through Debtor SPF Funding, LLC to the same defendants, ¶¶ 184-186, 192-194, 200-
202, and 208-210; as to transfers made to Defendant Sabes Family Foundation, ¶¶ 226-228, 234-236,
242-244, and 250-252; and as to transfers made through Debtor SPF Funding, LLC to Defendant The
Minneapolis Foundation, ¶¶ 258-260, 266-268, 274-276, and 282-284.

Under the amendment made in light of substantive consolidation, the issue is differently framed: can the Trustee use creditors whose pre-petition claims lay against some of the Debtor-entities whose estates were substantively consolidated, to satisfy the predicate-creditor requirement for the avoidance of transfers that were actually made by other Debtor-entities, when the transferor-Debtor lacked any third-party creditors of its own, not related to it, as of the relevant date?

This issue is framed differently, but it has the same considerations as the original. This is because it descends from the same root-requirement of substantive law: under § 544(b) a plaintiff-trustee must derive his avoidance power from a predicate creditor that is legally-cognizable as a creditor under non-bankruptcy law.  But the driving mechanism is different, because the Trustee now posits that a post-petition grant of substantive consolidation may be given retroactive effect for the purposes of his avoidance litigation, enabling him to satisfy the requirement as to transfers made by *any* of the Debtors whose estates are now consolidated, by proffering creditors that held claims allowable in bankruptcy as to *any* of the *other* Debtors whose estates are consolidated with those of the transferor-Debtors.

The Trustee never overtly concedes that his case would fail on that threshold, were it not for this possible transference of creditor-standing.[14]  However, the schedules he prepared for the two Debtors in question list no creditors at all for SPF Funding [BKY 08-45328, Dkt. No. 9], and only one creditor (secured) for PC Funding--Opportunity Finance, LLC [BKY 08-45326, Dkt. No. 9]. The Trustee has never denied the thrust of the defense's argument--that neither SPF Funding nor PC Funding had any consensual, contractual creditors when bankruptcy petitions were filed for

---

[14]As alternate state-law bases to deem a predicate creditor of one as a predicate creditor of all, the Trustee has also pleaded the theories of alter ego (to run between the SPE-Debtors and PCI) and reverse piercing of the corporate veil.  In moving for dismissal, the Opportunity Finance defendants challenged the Trustee's pleading for those theories also.  The submission of those arguments under their motion for dismissal was deferred, pending the treatment of substantive consolidation as the primary avenue that the Trustee relies on for transference.

them, and thus had no predicate creditor for § 544(b).[15]   The facial strength of the Opportunity

Finance defendants' original argument thus was fairly high.[16]   However, the Trustee's later success

in getting substantive consolidation made for a whole other issue--the one now at bar.

## DISCUSSION AND ANALYSIS

So, on to the issue on its merits.[17]   Again, the question may be articulated differently,

from different perspectives; but for present purposes it may be put as: in application of the state law

of fraudulent transfer, after the substantive-consolidation of the estates of multiple debtors, may the

trustee use the standing of a pre-petition creditor of *one* of those debtor-entities to satisfy the

predicate-creditor requirement for the avoidance of a pre-petition transfer made by *another* of the

debtor-entities, where the proposed predicate creditor itself had no pre-petition claim against the

transferor-debtor?

One indisputable threshold point:  such a transference of predicate-creditor status

could not be justified under the Bankruptcy Code alone, applying general principles of statutory

construction.  Partly by negative inference and partly by positive statutory prescription, a claim in

---

[15]The claims registers for both cases show a number of proofs of claim filed against each of these SPE-Debtors post-petition; but all of them assert joint-and-several liability against these SPE-Debtors and the others, under theories of conspiracy, aiding and abetting fraud in procuring lending from the claimants for other Debtors, and the like.

[16]The Opportunity Finance defendants have admitted, through counsel, that this was the whole point of their requiring PCI to create PC Funding and SPF Funding as "special-purpose entities" ("SPEs"), as a precondition of obtaining credit from them.  The idea was that the contractual obligations and payments for their lending into the Petters enterprise structure would be channeled exclusively through the SPEs as the nominal lenders to the Debtors--making the SPEs the initial transferees of any payment by the Debtors.  If the SPEs were maintained without debt owing to other creditors, it was thought, transaction-based lenders like the Opportunity Finance defendants would be insulated from liability in avoidance under state law were the broader structure of their borrower to fail later and then be put into bankruptcy.  This crafted structure and its legal implications for litigation like this are well-summarized in *Opportunity Finance, LLC v. Kelley*, ___ F.3d at ___, No. 15-2061, slip op. at 12-14, 2016 WL 2848587 *6 (Bye, J., dissenting). The specificity of this contrivance is revealed by the other term that industry jargon attached to the conduit: "bankruptcy-remote entity."

[17]The final dismissal of the appeal from the substantive consolidation order moots out all of the defense's arguments over divestiture of jurisdiction, prudential considerations, and the like.  Something got a little simpler, for once.

bankruptcy must be based on a right to payment, 11 U.S.C. § 101(5), that was enforceable pre-petition under an agreement or applicable nonbankruptcy law, 11 U.S.C. § 502(b)(1), and was enforceable against the debtor that is in bankruptcy in the case in which the claim's allowability is at issue, *id*. *See In re Polaroid Corp.*, 543 B.R. 888, 898-899 (Bankr. D. Minn. 2016).

Thus, despite the nominal, structural relatedness of PCI, PC Funding, and SPF Funding as parent and subsidiaries, creditors with claims allowable originally against the separate bankruptcy estate of PCI would not function in that status, as predicate creditors on which the Trustee could assert standing to avoid PC Funding's or SPF Funding's transfers of their own property. *See In re Petters Co., Inc.*, 494 B.R. at 440-441and *In re Petters Co., Inc.*, 495 B.R. 895-896 (for trustee to invoke state law of fraudulent transfer under § 544(b), there must be an actual unsecured creditor of the debtor in the bankruptcy case in which trustee is suing, that holds an allowable unsecured claim against *that* debtor's bankruptcy estate, and that could have sued the transferee under same law of fraudulent transfer).

But now, after the grant of substantive consolidation as to PCI and all of its SPE-subsidiaries, the Trustee argues that he is empowered to sue in avoidance of transfers made by SPE-subsidiaries PC Funding and SPF Funding. He asserts that he now has a standing derivative of creditors holding claims allowable on account of debt that PCI owed those creditors before PCI's bankruptcy filing, as a consequence of the consolidation.

And what rationale does the Trustee give, to support such a transference of predicate-creditor standing? Well, the grant of substantive consolidation . . . *did something*.

If the Trustee's notion is correct, the question is, what did substantive consolidation *do*, to get him *there*? Whatever the answer is--and even if it is "nothing"--it starts in the general law; and then it gets specific to these cases.

Substantive consolidation is a judicially-crafted remedy that can be traced back to *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215 (1941). It was created and developed

12

entirely on considerations of equity; it is applied only in bankruptcy cases; and it is used exclusively to support the administrative function in bankruptcy.[18]  Its origin and nature were discussed at greater length in the earlier decision, 506 B.R. at 792-800, and that need not be reprised now.

Under the analysis of several circuit courts, a grant of substantive consolidation may be tailored in its incidents, just as any equitable remedy may.  *In re Petters Co., Inc.*, 506 B.R. at 852-853.  The Eighth Circuit takes this approach.  *In re Giller*, 962 F.2d 796, 799 (8th Cir. 1992) ("the bankruptcy court retains the power to order a less than complete consolidation," in the sense that causes of action for avoidance that lay in favor of the estates of individual debtors before consolidation may be expressly preserved for possible recovery in favor of the consolidated estate).

That was done here.  Substantive consolidation was granted in 2013 on the following terms:

> 2.     The cases and bankruptcy estates of Debtors:
>
> Petters Company, Inc. [BKY 08-45257]
> PC Funding, LLC [BKY 08-45326]
> Thousand Lakes, LLC [BKY 08-45327]
> SPF Funding, LLC [BKY 08-45328]
> PL Ltd., Inc. [BKY 08-45329]
> Edge One LLC [BKY 08-45330]
> MGC Finance, Inc. [BKY 08-45331]
> PAC Funding, LLC [BKY 08-45371]
> Palm Beach Finance Holdings, Inc. [BKY 08-45392]
>
> are consolidated, for all purposes substantive and administrative.
>
> 3.     The relief accorded under Term 2 shall be retroactively effective, as of October 11, 2008.
>
> 4.     All rights under applicable law to avoid transfers of

---

[18]Hence, the absurdity of the notion that a motion for substantive consolidation is a "*Stern* proceeding" not subject to final disposition at the order of a bankruptcy judge absent consent of the parties, under the Supreme Court's recent jurisprudence.  *See Wellness Intern. Network, Ltd. v. Sharif*, 135 S.Ct. 1932 (2015); *Exec. Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165 (2014); and *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594 (2011).  That issue is not before this court at this time; and the point was previously addressed.  506 B.R. at 792 n.10.  But given the defense's continuing dither on the point, the statement has to be made.  Again.

> the property of any of the Debtors identified in Term 2 to parties other than any of the other Debtors so identified, which rights of avoidance were originally vested in the bankruptcy estates of all such transferor-Debtors by operation of the Bankruptcy Code, are preserved for the Trustee's exercise for the benefit of the single bankruptcy estate that results from the consolidation ordered under Term 2.

506 B.R. at 854.  The refinements at Terms 3 and 4 were imposed at the Trustee's specific request (though not necessarily styled in the same text he had proffered).

The Trustee had requested both of those provisions in mind of broadly-phrased cautions in earlier case law: "substantive consolidation normally would eliminate the justification for the exercise of the trustee's avoidance power" under a constructive-fraud theory, against a defendant that had received payment from one debtor's assets on debt that was owing solely by a related debtor, *In re Giller*, 962 F.2d at 799; and giving retroactive effect to a grant of substantive consolidation is to be considered carefully, and if done is not to be structured automatically to the greatest benefit of the estate, *In re Petters Co., Inc.*, 506 B.R. at 852-853 (summarizing earlier authority from circuits other than the Eighth).  After he got that structure of relief, the Trustee started arguing that *Giller* furnished broad authority for the transference of predicate-creditor standing, given the degree of accommodation the *Giller* court gave to the trustee there.

It is not that easy, however.  The two trustees' cases started on the same ground level, but there is a world of difference between the outcome the *Giller* trustee got and what the Trustee seeks here.

As a first step, both the *Giller* trustee and the Trustee here had to justify the consolidation of the estates in their cases, as a resonance of the way their debtor-entities were *operated* pre-petition.  They did that by proving up the recognized requirements in historical, pre-petition fact--large-scale, pre-petition commingling, failure to observe corporate formalities, abuses of corporate form, confusion or uncertainty on the part of outside contractual counter-parties as to

14

which entity they were extending credit to, and so forth.

Presumably, the *Giller* trustee had the same basic administratively-oriented reason for getting the estates consolidated--to avoid an expensive process of tracing inter-debtor transfers to reallocate assets to their proper repose in particular estates; to avoid the unreliability of such an accounting, which would result from sloppy practices, bad record-keeping, or illegal conduct by the debtors; to save the large expense and delay that such a process would entail; to enable a single and much simpler process of claims allowance. The Trustee here proved up that justification more than adequately; and he did so without serious contest from his opponents on the motion for substantive consolidation. 506 B.R. at 816-823.

But the *Giller* trustee's reasons for *qualifying* his grant of substantive consolidation were different from those of the Trustee here. The *Giller* trustee got the bankruptcy court to preserve each estate's causes of action for avoidance against third-party transferees, as they stood on their own legal and factual substance before consolidation. Apparently the *Giller* trustee sought this because he anticipated an argument from the defendants that he had sued on a constructive-fraud theory, and in particular on one sort of transaction--the use of one debtor's assets to pay debt owing by another related debtor to a third-party creditor, to which the transferor-debtor was not legally liable.[19] The Eighth Circuit ratified the bankruptcy court's conditioning of its grant of substantive consolidation on that preservation, essentially justifying it on the ground that it would

---

[19]The anticipated argument went to one of the elements of a constructively-fraudulent transfer, a lack of reasonably equivalent value received by the transferor, in connection with the making of the transfer. In context that would have been established by the transferor-debtor's use of its assets to pay debt on which it was not liable. The *Giller* trustee's concern was that the lack of value to the transferor would somehow melt away retroactively as a matter of law, when all debtors' debts were pooled in the bankruptcy cases toward realization from a pooled body of all debtors' assets. His opponent on his motion for substantive consolidation used that very proposition to urge that the causes of action not be preserved, probably on an argument that substantive consolidation should not be tailored in favor of its proponent to avoid any inherent litigation disadvantage that could otherwise result from an unqualified application. 962 F.2d at 799. He was unsuccessful on his argument there. In light of today's ruling, perhaps his concern was not well-founded.

give the highest benefit to the estate.[20]

Here, the Trustee was similarly careful to insist on preserving all of the avoidance causes of action out of all of the estates, as they were constituted before he brought his motion for substantive consolidation.   He was given that much, under Term 4 of the order for substantive consolidation.

And yet, the strategic theory here was broader than the one that the *Giller* trustee used.  No doubt, the Trustee also wanted to head off the same possible defense to his constructive-fraud claims, that substantive consolidation might otherwise germinate.  But his larger collateral purpose for seeking substantive consolidation went to his avoidance litigation against defendants that had used SPEs as nominal intermediaries in their transacting with PCI, as contrived blocks to the very avoidance claims that the Trustee has brought now.  To carry that out, the Trustee argues that the outside, post-petition event of substantive consolidation had a direct effect on his cases for those causes of action.  As he would have it, the pooling of claims into a single estate entitles him to use the right of avoidance that any creditor of any Debtor held against its own debtor-Debtor pre-petition, against any transferee of any of the Debtors.[21]   The Trustee justifies this, somewhat cursorily, on the assertion that "[t]he common sense, and well-recognized, effect of [substantive consolidation] is a complete and unqualified merger of the respective Debtors' estates, including a combination of their debt structures, into one, singular, consolidated estate," which "renders

---

[20]In some ways the reasoning for this conclusion was tautological.  The *Giller* trustee justified his seeking substantive consolidation as a basic remedy on the ground that the pooling *of the assets* of separate debtors' estates would enable him to fund the pursuit of meritorious causes of action for avoidance that otherwise reposed in the assetless and insolvent estate of one of the related debtors.  The Eighth Circuit ratified the post-consolidation preservation of avoidance causes of action because "eliminating the trustee's avoidance power after consolidation would also eliminate the very reason for ordering consolidation in the first place, that is, to obtain the funds required to recover transferred assets." 962 F.2d at 799.

[21]And according to the Trustee's argument, because the grant of substantive consolidation was made retroactive to the date of the first bankruptcy filing by one of the Debtors--October 11, 2008, for PCI--the right of avoidance for any creditor he deems to be his predicate creditor is to be fixed by the circumstances that obtained at the point in time just before that filing.

16

standing challenges moot," or subject to "straight-out reject[ion]."

        As a strategic tack in the use of substantive consolidation, this is different from what the *Giller* trustee did.  For that matter, the posture and positioning of remedies, claims, parties, and stages in litigation in these cases is materially different from those presented in the handful of published decisions that address the effect of substantive consolidation on particular claims in trustees' litigation or the propriety of imposing substantive consolidation when its proponent expressly intends such a collateral effect.[22]   The specific issue posed here is a matter of first impression.

        It is crucial to note one distinction at the outset.  As it was originally conceived, substantive consolidation was largely justified toward the conservation of estate assets, and rationalized on the idea that it was not unfair to pool all assets for a global distribution to all creditors when the debtors had commingled assets anyway and most creditors were confused or uncertain as to which corporate entity they were dealing with and relying on.  *In re Petters Co., Inc.*, 506 B.R. at 792-797.

        However, that is an asset-oriented rationale for allowing consolidation in the first instance.  Here, the Trustee seeks to parlay an *accomplished* substantive consolidation *collaterally*, to the estate's advantage in a different part of his administration:  his pursuit of rights of recovery

---

[22]In *In re Bonham*, 229 F.3d 750 (9th Cir. 2000), substantive consolidation was allowed toward a retroactive extension of the lookback for avoidance under 11 U.S.C. § 548(a), using the date of the earliest bankruptcy filing as a reference point.  *In re Baker & Getty Fin. Servs., Inc.*, 974 F.2d 712 (6th Cir. 1992) involved the same proposed use of the remedy.  *In re Kroh Bros. Dev. Co.*, 117 B.R. 499 (W.D. Mo. 1989) ratified the collateral use of the retroactively-imposed substantive consolidation of a non-debtor entity with a debtor-entity, to bring a transfer made by the non-debtor entity into a lookback period dating from the bankruptcy filing of a debtor-entity brought into the consolidation.  *In re DBSI, Inc.*, 447 B.R. 243 (Bankr. D. Del. 2011) allowed a showing of insolvency within the debt and asset structures that were consolidated with retroactive effect, to make out a badge of fraud for an actual-fraud theory under § 548 and state law. The court in *In re American Way Serv. Corp.*, 229 B.R. 496 (Bankr. S.D. Fla. 1999) seemed to think that giving retroactive effect to substantive consolidation was a good way to enable "the representatives of the respective estates to rely on the Code's avoidance powers with a minimum of procedural wrangling" over the repose of assets.  229 B.R. at 527.  The reasoning in some of these decisions is far too pat.  But in any event, none of them involves a proposal to put substantive consolidation to collateral function in the way the Trustee proposed here.

in avoidance that are vested in and asserted by bankruptcy estates.

        The implications of substantive consolidation here do not concern the current assets of those estates.  The statutory *powers* on which a trustee sues to avoid and recover are not themselves assets of the estate, i.e. property of the estate.  They can lead to the post-petition recapture of property that would have passed into the estate had it not been transferred pre-petition; and upon avoidance, at latest on post-judgment realization, any property recovered becomes property of the estate.  *In re Arzt*, 252 B.R. 138, 141 (B.A.P. 8th Cir. 2000).of estate).[23] *Cf. In re Allen*, 768 F.3d 274, 284 (3d Cir. 2014) (upon entry of judgment for avoidance of transfer and recovery of money, funds in question become property of estate).[24]  But the abstract, unrealized right to avoid and recover is not itself "property of the estate."  *In re Cybergenics Corp.*, 226 F.3d 237, 243-244 (3d Cir. 2000).

        This distinction is fundamental and crucial when it comes to the Trustee's post-consolidation standing under 11 U.S.C. § 544(b) to avoid particular transfers alleged to be fraudulent.  Clearly, the assets held by individual estates (as successors to their linked debtors) become fungible upon substantive consolidation, in that their cumulated value is now distributed to the members of a cumulated body of creditors.  *Giller* establishes that, not least in its outcome: it enabled the assets from one pre-consolidation estate to be used for the administrative expenses

---

[23]The point is gleaned from the logical essence of making a transfer, and then avoiding it in the context of the bankruptcy process.  The idea is further reflected in the text of 11 U.S.C. § 541(a); Sections 541(a)(3) and (4) provide that the estate includes "[a]ny interest in property that the trustee recovers under [11 U.S.C. §] . . . 550" and "[a]ny interest in property preserved for the benefit of . . . the estate under [11 U.S.C. §] 551 . . . ."  11 U.S.C. §§ 550-551 provide the actual mechanisms through which the estate recovers the value of property that was preferentially or fraudulently transferred, after avoidance.  *In re Willaert*, 944 F.2d 463, 464 (8th Cir. 1991); *In re DLC, Ltd.*, 295 B.R. 593, 606-607 (B.A.P. 8th Cir. 2003), *aff'd*, 376 F.3d 819 (8th Cir. 2004).

[24]There is a split among the circuits as to whether the vesting as property of the estate takes place on the entry of a judgment of avoidance, or not until actual post-judgment recovery of the transferred asset or its value.  *E.g.*, *In re Allen* (entry of judgment); *Rajala v. Gardner*, 709 F.3d 1031 (10th Cir. 2013) (recovery); *In re Mortg. America Corp.*, 714 F.2d 1266 (5th Cir. 1983) (entry of judgment); *In re Colonial Realty Co.*, 980 F.2d 125 (2d Cir. 1992) (recovery).

anticipated for the recovery on rights of action that had been held by a different pre-consolidation estate. But the rights of avoidance held by the individual estates before consolidation are not assets. What does substantive consolidation do to them?

In a superficial way, substantive consolidation does bring rights of avoidance together, in a goal-centered sense. As property of the consolidated estate upon recovery, the ultimate realization on them goes to the benefit of the single post-consolidated estate, and it is distributed to the pooled claimants against the estate. If preserved as they stood pre-consolidation, they may be pursued, each on their merits, to avoidance and recovery for the enhancement of that asset pool. But if rights of avoidance are "preserved" as such, does the act of substantive consolidation itself independently affect them as they are constituted under the law that governs them in bankruptcy or outside of it?

The Trustee argues that it does, in the transference of standing that he postulates. Whether that is correct doubles back to how substantive consolidation functioned in the Debtors' cases, at a more fundamental level.

As the Trustee would have it, the key event to be recognized in consequence of substantive consolidation would be a "complete merger of legal entities." He sees this "merger" reflected in the "consolid[ation of] the assets and liabilities of multiple debtors[,] . . . treating them as if the liabilities were owed by, and the assets held by, a single legal entity." The concept here might be termed a "merger treatment"--i.e. the post-consolidation estate and all of its attributes including rights of avoidance are to be "treated" as if the post-consolidation estate was the surviving entity of something like a corporate merger. The previous existence of the individual bankruptcy estates would be considered irrelevant, because they and all of their attributes would have been merged into the new "single legal entity."

As the Trustee envisions it, all of the legal attributes of the estates, and in particular a trustee's empowerments to avoid individual transfers, become polymorphous through the act of

substantive consolidation; they run to the benefit of all of the creditors whose claims are pooled against the "single legal entity," and they can be asserted in the right and on the standing of absolutely any of those creditors against any transferee that transacted with any and every debtor-entity.

The Trustee's assertion is largely conclusory. The whole construct has several deep flaws, and the discordance has three sources.

The first is that the argument ignores the separate pre-petition existence of the Debtors as entities themselves, and the estates (ultimately the one consolidated estate) as entities created only by operation of law on the bankruptcy filings. The Debtors had their own historical *and separate* existence pre-petition; the creation of a bankruptcy estate did not terminate that existence for any of them.

The second comes out of the text and tenor of the original order for substantive consolidation, which must be strictly construed in the effect to be given to it. The argument fails to acknowledge that the consolidation as ordered did not change the status or structure of the Debtor-entities as separate persons under nonbankruptcy law. It only altered the structure of the bankruptcy estates that were associated with those Debtor-entities. And how, exactly, did that work under the retrojection effected by Term 3 of the consolidation order?

The answer involves a *sequence* of changes, because the Debtors' bankruptcy filings were not done simultaneously. More importantly, Terms 2 through 4 left undisturbed the existence and legal personality of the underlying pre-petition Debtor-entities. It happened in this wise:

- Prior to October 11, 2008 (the date of PCI's bankruptcy filing, the date of the deemed effectiveness of the consolidation), there were nine separate Debtor-entities including PCI. Each one was liable for its own debts. The assets of each were chargeable to its own debts, whether through consensual payment or nonconsensual seizure on judgment collection or in bankruptcy.

20

- On October 11, 2008, PCI went into bankruptcy. Its assets passed into its bankruptcy estate pursuant to 11 U.S.C. § 541(a).

- *As of the same date*, the debts and assets of each of the SPE-Debtors were pooled and the resulting aggregation was deemed consolidated with the debts and assets of PCI. This came about on that date by the retrojection of the consolidation remedy. Thus, the collective pool of assets and debts is deemed to have come under administration in bankruptcy (and thus under bankruptcy jurisdiction) *as of that date*, even though the SPE-Debtors were not in bankruptcy as yet. The retrojection under Term 3 worked a consolidation as to one debtor-entity (PCI) and multiple non-debtors.[25] (None of the parties recognized this last point.)

- As each Debtor-entity was put into bankruptcy after that, the entity itself came formally under bankruptcy jurisdiction.[26] As a technical matter, a bankruptcy estate was created for each one, upon its filing. The question of whether any assets passed into those estates by the simple operation of § 541(a) gets metaphysical, due to the consolidation already in effect under the case-structure of PCI. But whatever their content and attributes, the SPE-Debtors' separate estates immediately consolidated with the preexisting PCI estate as they were created, under the plain meaning of Terms 2 and 3.

- Most to the point of the dispute at bar, none of this had any effect on the existence of the SPE-Debtors as separate entities under nonbankruptcy law, as to any time past, contemporaneous, or future. The order itself only did its work on the "cases and estates" of the subject Debtors, Term 2; it was limited in its effect to constructs under bankruptcy law. The order did not purport to "consolidate" the Debtor-entities themselves. That would have gone beyond any articulation of the remedy in any extant, actual court ruling.[27] All of the

---

[25]The use of the phrase "as to" and the conjunction "and" is utterly deliberate. The prepositions "of" and "with" would have carried entirely different--and wrong--meanings.

[26]PC Funding; Thousand Lakes, LLC; SPF Funding; PL Ltd., Inc.; Edge One LLC; and MGC Finance, Inc. were put into bankruptcy on October 15, 2008. Debtor PAC Funding, LLC was put into bankruptcy on October 17, 2008; and Debtor Palm Beach Finance Holdings, Inc. on October 19, 2008.

[27]A few published decisions contain references in passing to "consolidated debtors" or "consolidated entities" in reference to debtors in cases where substantive consolidation was sought. *In re Bonham*, 229 F.3d at 764; *Eastgroup Properties v. S. Motel Ass'n, Ltd.*, 935 F.2d 245, 248 (11th Cir.

Debtor-entities continued to maintain their pre-petition legal personalities separately, and they do so today.[28]

The third source is the underlying substantive law that continues to govern the rights of avoidance held by the consolidated estate in the PCI cases--unaffected by the equitable reallocation that substantive consolidation under the 2013 order brought about among and within those estates.[29]

This third aspect takes the analysis to the central nature of the Trustee's empowerment under § 544(b).  To be used by a trustee pursuant to § 544(b), avoidance powers under state law must be factually anchored in an actual pre-bankruptcy past: the transfer must have

<hr/>

1991); *In re Auto-Train Corp., Inc.*, 810 F.2d 270, 276 (D.C. Cir. 1987); *In re Pearlman*, 462 B.R. 849, 852 (Bankr. M.D. Fla. 2012).  This wording is just loose and imprecise.  Nowhere in any published decision on substantive consolidation does any court address the legal viability of consolidating debtor-entities themselves, as a contested issue.

[28]The Trustee himself tacitly acknowledged this, when he proposed, and obtained confirmation of, a plan that provided:

> Except as otherwise provided in the Plan or as determined otherwise by the PCI Liquidating Trustee, the existence of the Debtors may, but is not required to, be terminated by merger, consolidation or dissolution or as otherwise permitted by applicable law, all at such time and on such terms as the PCI Liquidating Trustee determines to be necessary or appropriate to implement this Plan and all without further order of the Bankruptcy Court.  In order to effectuate such terminations in accordance with applicable law, the PCI Liquidating Trustee may, without further order of the Bankruptcy Court, execute and file with the applicable governmental authorities such certificates of merger, consolidation or dissolution or similar instruments as the PCI Liquidating Trustee determines to be necessary or appropriate.

Second Amended Chapter 11 Plan of Liquidation [BKY 08-45257, Dkt. No. 3263], § 8.3, *confirmed* April 15, 2016 [Dkt. No. 3305].

[29]The roots of substantive consolidation as a remedy go back to 1941.  *In re Petters Co., Inc.*, 506 B.R. at 792.  Since the enactment of the Bankruptcy Code of 1978, its application has been justified by the grant of equitable power to the bankruptcy court under 11 U.S.C. § 105(a).  *E.g., In re Augie/Restivo Baking Co., Ltd.,* 860 F.2d 515, 518 (2d Cir. 1988).  However, it is fundamental that relief granted in use of the equity power under § 105(a) must not contravene express substantive provisions of the Bankruptcy Code.  *E.g. Law v. Siegel*, 571 U.S. ___, ___, 134 S.Ct. 1188, 1194 (2014); *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988).  The original order for substantive consolidation here was not fine-tuned to shunt off the issue at bar; and in any event it likely could not have been, without offending this authority.  Thus, the effect that the Trustee envisions could only come about by implication from the mere grant of substantive consolidation, against the constricting backdrop of governing substantive law.

been made by the debtor-entity that then went into bankruptcy through the case in which the trustee

sues, and a specific creditor of that debtor must have had a right under state law to sue in

avoidance, at the time the debtor was put into bankruptcy.[30]  Where substantive consolidation is

ordered, all rights of avoidance premised on such a pre-bankruptcy reality go with everything else

in and associated with the prior estates, into a coordinated administration by the trustee of the post-

consolidation estate.  If all pre-consolidation rights of avoidance are expressly preserved by the

grant of substantive consolidation, they are assumed bodily into the estate.  Necessarily, they retain

all of the substantive integrity they had when they reposed in the separate debtors' estates.  The

passage alone does not alter anything about such preserved rights of avoidance.  In particular, after

consolidation-with-preservation as it was ordered here, three things stay the same, or persist.

First, *the historical facts of action and status do not change*.  Here, an SPE-

subsidiary of PCI was the transferor; and any cause of action for the avoidance of any payment of

money by that SPE-subsidiary is still to be treated with it as the transferor.  The pre-petition debt

structures of all of the Debtors did not change from what they were, when each one was put into

bankruptcy.

Second, *the governing law stays the same*.  The transferor itself must have had a

predicate creditor at the time that transferor went into bankruptcy, a creditor with a claim against

the transferor that was enforceable under nonbankruptcy law and that gave the creditor standing

to sue *the transferee then* under the law of fraudulent transfer.

Third, *after substantive consolidation the transferor-entity itself continues to exist,

as a legal person that is in bankruptcy*, until its existence is terminated under applicable

nonbankruptcy law.  Substantive consolidation only works a consolidation of bankruptcy estates,

the fictive legal entities that came into existence solely by operation of law upon the filing of a

---

[30]*See* authorities cited *supra* at 6-7.

23

petition for relief as to their associated debtors.[31]  It only alters the allocation of assets among

creditors, for one consolidated distribution.   Nowhere in the reported case law has a grant of

substantive consolidation been structured or construed to bring about a merger or dissolution of the

debtor-entities themselves, that are associated with the estates that are being pooled through

consolidation.  It never should be.[32]

This is why the Trustee's likening of substantive consolidation to a merger is

overstated, and even misleading.  The notion is no more than an analogy, and one of very limited

scope at that.   Substantive consolidation applies only to the estates as entities that arise in a

bankruptcy case; and in its application as an equitable remedy it cannot alter or circumvent the

positive substantive prescriptions of the Bankruptcy Code.  To give a trustee standing to use state-

law fraudulent transfer remedies against pre-petition transfers by a specific debtor, § 544(b)

requires the presence in the case of a specific creditor that could have used the same remedies

to avoid those very transfers.   If the debtor-transferor had no such creditors, the gap is not

retroactively filled by a substantive consolidation of that debtor's bankruptcy estate with others,

even if the other cases feature allowable creditor-claims that would qualify their holders as

predicate creditors for the use of avoidance remedies against transfers by their own debtors.  As

a remedy effective only within a bankruptcy case and the administration of its estate, substantive

consolidation cannot reach with legal effect back in time before the date on which a case was

commenced--or at least, back beyond the first filing for a debtor in a group of related debtors.

---

[31]The use of "as to" is deliberate, and the non-use of the preposition "by" deliberate also.  A bankruptcy case may be commenced by voluntary or involuntary petition.  11 U.S.C. §§ 301, 303.  And the petitions for all of the Debtors here were filed by a federally-appointed receiver for them--not by the Debtor-entities on their own volition.

[32]There is a reason for this; other than for corporate entities chartered under federal law, "[t]he question whether a corporation 'exists' for any purpose is . . . determined by state law."  *Melrose Distillers, Inc. v. United States*, 359 U.S. 271, 272 (1959).  *See also* 8 Fletcher Cyc. Corp. § 4054 (2010) (collecting cases for this proposition).  The Trustee probably was conceding this point as backdrop when he included a provision for the post-confirmation dissolution of Debtor-entities through processes under nonbankruptcy law.  *Supra*, 22 n.28.

Equity, through the vehicle of substantive consolidation, does not lie to recast such creditors into qualifying predicate creditors for the avoidance of transfers made by debtors that were not their own.  The law still requires the trustee's standing to be anchored in the actual history of the transferor-debtor, and substantive consolidation does not and could not remake that history.[33]

There is an alternate view of how substantive consolidation affects rights of avoidance under § 544(b).  It might be termed, somewhat imprecisely, an "asset treatment."  While (as previously noted) a statutorily-vested right of avoidance is not an asset of the bankruptcy estate as such, it could be envisioned as a contained bundle of legal attributes that passes whole and in its own integral right to the control of the post-consolidation trustee, if expressly preserved through the grant of substantive consolidation.  After that, it could be pursued on its own merits, as they lay before consolidation.  The standing of the post-consolidation trustee would depend on the same pre-petition facts as had the pre-consolidation trustee's, rising or falling on the existence of a predicate creditor of the debtor that made the transfers in suit.  The avoidability of the transfer would be gauged against the circumstances under which the original transferor-debtor and the transferee made and accepted the transfer.  The consolidated estate would receive the fruits of any avoidance made on the merits and any recovery in consequence, and the proceeds would be pooled to go to all eligible claimants of all of the debtors in a cumulated pro rata sharing.

That outcome, however, would be the only consequence of a grant of substantive consolidation, as to rights of avoidance held within the pre-consolidation estates.  Consolidation of the bankruptcy estates would not affect the substantive merits of any right of avoidance brought into the pooling of the estates' fortunes.

_____

[33]Put another way: for the Trustee's notion of a "merger treatment" to really work, substantive consolidation would have to result in an actual, retroactive, pre-petition merger of all subject debtor-entities, with an assumption of all debts of the merged debtors, and that with the consent of all creditors owed that debt.  A reengineering like that would create the anchoring to an actual pre-petition creditor's claim that § 544(b) requires.  Absent a very specific basis under state law and creditor consent, such a massive retroactive readjustment would be far outside the reordering prerogatives of the bankruptcy process.  And the chance of either of those two circumstances being available and present is negligible.

This notion of the consequence of substantive consolidation resonates with the underlying nature of the remedy, and with the relief specifically ordered in these cases in 2013. Necessarily, it limits the scope of the Trustee's derivative power to avoid fraudulent transfer using state law, to Congress's original contemplation when § 544(b) was structured. By staying within those bounds, it embodies the restraint that the Supreme Court has cautioned for the use of equitable power in bankruptcy's processes, for three decades.

This is the appropriate way to envision and treat what happened to the Trustee's case and standing as to transfers that debtors PC Funding and SPF Funding made to the Opportunity Finance defendants, as a consequence of the grant of substantive consolidation in 2013. The answer is, nothing. The Trustee still has the same case, and the same standing or lack thereof, as to any particular transfer that he did before that consolidation.[34]

## OUTCOME

At the Trustee's request, the issue just treated was split out from others raised by the Opportunity Finance defendants in their motion for dismissal, and put before the court for a ruling. The rationale for that ruling has just been memorialized. A full disposition of the Opportunity Finance defendants' motion for dismissal cannot be made yet, because other issues remain pending. So, call this memorandum a reprise of what was done to address the mass of "common issues" in the main litigation docket in the underlying cases--which, for the Opportunity Finance defendants' motion for dismissal, results in:

*Ruling #1*:    The substantive consolidation of the cases and estates of all of the debtors but PGW, as ordered in BKY 08-45257 on November 22, 2013, had no effect on the Plaintiff's standing as Trustee to maintain suit under 11 U.S.C. § 544(b) on any of the transfers by

---

[34]And to make sure nothing is thrown back: the statement made in the order for substantive consolidation, at n.90, 506 B.R. at 849, was not a ruling. It was not even made as a categorical declaration of law. It was a conjecture, resonating with the Trustee's position at the time, not even dictum. The accompanying text says that explicitly. The text also makes it clear that the issue on its merits was not before the court then.

any of the debtors that he seeks to avoid in this adversary proceeding, and it had no effect on the

Trustee's case in fact and law as to the avoidability of any such transfer.[35]


*/e/ Gregory F. Kishel*

_____
GREGORY F. KISHEL
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[35]This ruling is expressed in just that degree of abstraction, in line with what the Trustee
requested.  Some fine-tuning will be necessary, for an application to the massive text of the Trustee's
complaint in the context of the Opportunity Finance defendants' motion under Rule 12(b)(6).  That will not
be done until an order formally disposing of the motions for dismissal is entered on those rulings.  That, in
turn, must await rulings on the multiple other weighty issues that the Opportunity Finance defendants and
DZ Bank insisted on pushing forward through their motions under Rule 12.