UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| In re: | **JOINTLY ADMINISTERED UNDER**<br>**CASE NO. 08-45257** |
| PETTERS COMPANY, INC., ET AL, | Court File No. 08-45257 |
| Debtors. | Court File Nos.: |
| (includes: | |
| Petters Group Worldwide, LLC; | 08-45258 (KHS) |
| PC Funding, LLC; | 08-45326 (KHS) |
| Thousand Lakes, LLC; | 08-45327 (KHS) |
| SPF Funding, LLC; | 08-45328 (KHS) |
| PL Ltd., In.; | 08-45329 (KHS) |
| Edge One LLC; | 08-45330 (KHS) |
| MGC Finance, Inc.; | 08-45331 (KHS) |
| PAC Funding LLC; | 08-45371 (KHS) |
| Palm Beach Finance Holdings, Inc.) | 08-45392 (KHS) |
| | Chapter 11 Cases<br>Chief Judge Kathleen H. Sanberg |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DOUGLAS A. KELLEY, in his capacity
as the court-appointed Chapter 11
Trustee of Debtors Petters Company, Inc.;
PC Funding, LLC; and SPF Funding, LLC,

  Plaintiffs,

v.                                          ADV. 10-4301

OPPORTUNITY FINANCE, LLC; OPPORTUNITY
FINANCE SECURITIZATION, LLC; OPPORTUNITY
FINANCE SECURITIZATION II, LLC; OPPORTUNITY
FINANCE SECURITIZATION III, LLC; INTERNATIONAL
INVESTMENT OPPORTUNITIES, LLC; SABES FAMILY
FOUNDATION; SABES MINNESOTA LIMITED
PARTNERSHIP; ROBERT W. SABES; JANET F.
SABES; JON R. SABES; STEVEN SABES; DEUTSCHE
ZENTRALGENOSSENSCHAFTBANK AG; WEST

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *12/01/2016*
Lori Vosejpka, Clerk, by LH

LANDESBANK AG; and THE MINNEAPOLIS FOUNDATION,
        Defendants.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER ON OPPORTUNITY FINANCE DEFENDANTS' MOTION FOR DISMISSAL & REMAINING UNIQUE ISSUES

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

At Minneapolis, Minnesota, December 1, 2016.

This adversary proceeding is part of the Chapter 11 cases of Petters Company, Inc., and related entities. The history of these cases is well documented and, for the sake of brevity, will not be repeated here.[1] The Opportunity Finance defendants,[2] as well as WestLB[3] and the Minneapolis Foundation, filed Motions to Dismiss containing numerous bases for dismissal.[4] Many of those arguments have already been addressed by the Court.[5] Most of the remaining bases for dismissal have been referred to as "Unique Issues"[6] because they present questions unique to the particular parties in this adversary proceeding.[7] This decision addresses all remaining bases for dismissal asserted by the Defendants.

---

[1] *See In re Petters Co., Inc.*, 550 B.R. 438, 440-442 (Bankr. D. Minn. 2016).

[2] "Opportunity Finance defendants" denotes, as a group, Opportunity Finance, LLC; Opportunity Finance Securitization, LLC; Opportunity Finance Securitization II, LLC; Opportunity Finance Securitization III, LLC; International Investment Opportunities, LLC; Sabes Family Foundation; Sabes Minnesota Limited Partnership; Robert W. Sabes; Janet F. Sabes; Jon R. Sabes; and Steven Sabes (collectively "Defendants").

[3] Defendant West Landesbank AG will be referred to as "WestLB."

[4] *See* Adv. No. 10-4301, Dkt. Nos. 34; 44; 35.

[5] *In re Petters Co., Inc.*, 494 B.R. 413 (Bankr. D. Minn. 2013) ("Common Issues I"); *In re Petters Co., Inc.*, 495 B.R. 887 (Bankr. D. Minn. 2013), as amended (Aug. 30, 2013) ("Common Issues II"); *In re Petters Co., Inc.*, 499 B.R. 342 (Bankr. D. Minn. 2013) ("Common Issues III"); *In re Petters Co., Inc.*, 532 B.R. 100 (Bankr. D. Minn. 2015) ("Charitable Defendants"); *In re Petters Co., Inc.*, 550 B.R. 438 (Bankr. D. Minn. 2016) ("SubCon Standing"); *In re Petters Co., Inc.*, 550 B.R. 457 (Bankr. D. Minn. 2016) (The *Effect of Finn* Decision).

[6] Adv. No. 10-4301, Dkt. No. 61.

[7] The Minneapolis Foundation did not file a statement of Unique Issues and has not raised any additional "unique" bases for dismissal, except its status as a charitable organization, which the Court has already addressed. *In re Petters Co., Inc.*, 532 B.R. 100. Nonetheless, the Minneapolis Foundation filed joinders to the Opportunity Finance briefs and the rulings made herein are applicable to its joinder.

Oral argument was presented on November 18, 2015, and the matters were taken under advisement.[8] James A. Lodoen, Adam C. Ballinger, and Mark D. Larsen appeared for Trustee Douglas A. Kelley, in his capacity as the court-appointed Chapter 11 Trustee of Debtors Petters Company, Inc.; PC Funding, LLC; and SPF Funding, LLC (collectively the "Plaintiff"). Joseph G. Petrosinelli and John R. McDonald appeared for the Opportunity Finance defendants. David E. Runck appeared on behalf of the Official Committee of Unsecured Creditors. Eric R. Sherman, Thomas Kelly, and Darryn Beckstrom appeared for defendant WestLB.

This Court has jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 157(b)(1) & 1334, Fed. R. Bankr. P. 7001, and Local Rule 1070-1. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(H). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

This adversary proceeding and the main bankruptcy cases were reassigned when Chief Judge Gregory F. Kishel retired on May 31, 2016. The undersigned hereby certifies familiarity with the record and determines that this matter may be addressed without prejudice to the parties in accordance with Fed. R. Civ. P. 63, as incorporated by Fed. R. Bankr. P. 9028.

### Introduction

The Defendants filed their original Motions to Dismiss in March 2011.[9] The original motions shared arguments in common with motions filed in other clawback adversaries. The Court addressed these common arguments in a series of memoranda decisions issued in the

---

[8] Also on for hearing that day was argument on the effect of the *Finn v. Alliance Bank* decision on Plaintiff's fraudulent transfer claims. Additionally, DZ Bank presented argument on its Motion under Fed. R. Civ. P. 12(c). *See* Dkt. No. 122. This Court addresses that motion in a separate decision.
[9] Any references to docket numbers refers to the entry as docketed in adversary proceeding 10-4301.

summer of 2013.[10]  In addition to those common issues, the parties in this adversary identified a

number of issues unique to this adversary as grounds for dismissal.[11]

Both the Plaintiff and the Defendants filed their Statement of Unique Issues for adversary

proceeding 10-4301 in May 2012.[12]   After the Plaintiff amended the complaint in response to

the *Common Issues* rulings,[13] the Minnesota Supreme Court issued its ruling in *Finn v. Alliance*

*Bank* ("Finn").[14]  The Plaintiff then filed a Third Amended Complaint ("Complaint").[15]

The Court issued decisions on the impact of substantive consolidation and the effect of

the *Finn* decision in May of 2016.  Only the remaining unique issues need to be addressed.

These unique issues are really 12(b)(6) arguments that the Plaintiff has failed to state a claim for

relief.[16]

### Discussion

I. <u>Standing</u>

In this case, the Plaintiff seeks to avoid transfers made by debtor-entities under 11 U.S.C.

§§ 544(b) and 548, as well as recover other transfers as preferences under § 547.  Section 544(b)

empowers a trustee to step into the shoes of an actual unsecured creditor and utilize whatever

state or nonbankruptcy federal law remedies that particular creditor may have.[17]  Thus, to have

standing under § 544(b), the Plaintiff is required to plead the existence of a creditor that would

have standing to pursue fraudulent transfer claims under state law.[18]  Most of the Defendants'

---

[10] *See In re Petters Co., Inc.*, 495 B.R. 887, 892 (Bankr. D. Minn. 2013), as amended (Aug. 30, 2013) (Common Issues fn. 3).
[11] *See* Dkt. No. 61
[12] *See* Dkt. Nos. 63, 65.
[13] *See* Dkt. No. 83.
[14] *Finn v. Alliance Bank*, 860 N.W.2d 638 (Minn. 2015).
[15] *See* Dkt. No. 149.
[16] The Defendants incorporate their previous arguments as against the current iteration of the complaint.  Dkt. No. 152 pg. 7.
[17] *In re Walter*, 462 B.R. 698, 704 (Bankr. N.D. Iowa 2011).
[18] 11 U.S.C. § 544(b); *see also In re Marlar*, 252 B.R. 743, 754 (B.A.P. 8th Cir. 2000), aff'd, 267 F.3d 749 (8th Cir. 2001).

F.R.C.P 12(b)(6) arguments center around the question of whether the Plaintiff has adequately

pleaded his standing to prosecute an action against the Defendants. The rest concern the

substance of the Plaintiff's allegations. The Court finds that the Plaintiff has sufficiently pleaded

his standing to pursue claims under §§ 544(b) and 547, but not under § 550.

The standing issues in this adversary are unique to the Defendants due to the corporate

structure through which they engaged with Petters and his enterprise. The Defendants allege that

they only dealt with PC Funding and SPF Funding, which were special purpose entities

("SPEs"). These two SPEs in particular were set up to be bankruptcy remote.[19] What makes the

SPEs bankruptcy remote is that they were corporate entities separate from PCI and they had no

other creditors. By being removed from PCI, the Defendants were supposedly insulated from

any failure of PCI.[20] Also, since the SPEs would not have any other creditors, if the SPEs

themselves were to fail and end up in bankruptcy, the Defendants would be insulated from

fraudulent transfer liability since no other creditors could furnish a trustee with standing under §

544(b).[21] Additionally, if there were no other creditors then, in theory, avoiding any transfer

under §§ 547 or 548 would not benefit of the estate since the Defendants would be the sole

creditor of the estate to whom the benefit would inure.[22] Therefore, a trustee would not have

standing under any Bankruptcy Code provision to pursue fraudulent transfer remedies.

In response to this corporate structure, the Plaintiff has propounded a number of legal

theories that would give him standing to pursue claims. First, the Plaintiff argued that

---

[19] *In re Petters Co., Inc.*, 506 B.R. 784, 802 (Bankr. D. Minn. 2013).

[20] *Id.*

[21] *Id.* at fn. 21. This assumes that all of the Opportunity Finance defendants were "net winners" and were paid in full before the petition date. The interaction between the SPEs and the Defendants was not solely limited to promissory note transactions with Opportunity Finance, LLC. For example, the Complaint alleges Opportunity Finance, the Sabes Family Foundation, and the Minneapolis Foundation invested with SPF Funding. *See* ¶¶ 104-107. If any one of these entities was owed any amount of money as a creditor at the time of a transfer to another entity, then theoretically they could provide standing to avoid transfers to the others, regardless of their relatedness.

[22] *See* Dkt. No. 41, p. 25.

substantive consolidation provided him a creditor that would provide standing under § 544(b) by expanding creditor liability from PCI to the SPEs.[23]  The Court disagreed and held that substantive consolidation only consolidates the bankruptcy estates and does not reach back beyond the petition date to alter the debtor-creditor relationship between any parties under state law.[24]

> *a. PC Funding/SPF Funding have their own creditors that provide standing under § 544(b)*

The Plaintiff argues that PC Funding and SPF Funding have creditors other than the Defendants.[25]  The original complaint contained the allegation that "[a]t all times material hereto, there was and is at least one or more creditors who held and who hold unsecured claims against the Debtors that were, and are, allowable under the Bankruptcy Code § 502."[26]  The Court ruled this was insufficient and the Plaintiff was directed to identify a creditor by name that would provide him with standing under § 544(b).[27]  In the Third Amended Complaint, the Plaintiff identified Interlachen Harriet Investments Limited ("Interlachen") as an unsecured creditor of both PC Funding and SPF Funding.[28]

In 2011, the Defendants argued that the Plaintiff's allegations that the SPEs had other creditors were conclusory recitations of the element of the cause of action.[29]  The Defendants further argued that the Plaintiff's conclusory assertion that Interlachen has a tort claim against each of Petters' entities is unsupported by the allegations in the Complaint.[30]  The Third Amended Complaint does not resolve these deficiencies.

---

[23] *See generally* SubCon Standing *infra* n. 5.
[24] *Id.*
[25] *See* Dkt. No. 45, pg. 3.
[26] *See e.g.*, Dkt. No. 1 ¶ 141 pg. 40.
[27] *See* Common Issues II Ruling # 6A at 900-01.
[28] *See* Dkt. No. 149 ¶ 78 pg. 20.
[29] *See* Dkt. No. 41, pg. 41; Dkt. No. 49 pg. 11.
[30] Dkt. No. 49.

To properly plead standing under § 544(b), a plaintiff must allege facts that support a

plausible inference that the creditor has an allowable claim against the debtor as of the petition

date.[31] The creditor's claim must have allowed the creditor to avoid a transfer under non-

bankruptcy law, in this case Minn. Stat. § 513.41 et. seq.[32] ("MUFTA"). The allegations in the

Third Amended Complaint that Interlachen filed a proof of claim against every Petters entity and

that they have an allowed claim against the "PCI Debtors,"[33] does not plausibly establish

Interlachen could have avoided transfers made by the SPEs under Minnesota law.

First, the proof of claim does not establish the bases of the claims against the SPEs.[34]

This allegation does not plausibly allege that Interlachen had an allowable claim against either of

the SPEs. The fact allegations in the Complaint detail how Interlachen lent to PCI and not to the

SPEs.[35] Absent from these allegations is an allegation that Interlachen had any lending or

contractual relationship with the SPEs. At most, then, the Court could infer Interlachen may

have a tort claim against the SPEs.[36] But the fact allegations are not sufficient to allow the Court

to draw this inference and the proof of claim does not supplement this theory.[37] The Complaint

contains an allegation that Interlachen's claim is allowed against the "PCI Debtors." The phrase

"PCI Debtors" is defined as the substantively consolidated bankruptcy cases of most of the

---

[31] *See* Common Issues II Ruling # 6A infra at fn. 3.

[32] Now the Uniform Voidable Transactions Act. *See* Minn. Stat. § 513.51.

[33] The phrase is defined as the "substantively consolidated bankruptcy cases and bankruptcy estates of PCI, PC Funding, LLC ("PC Funding"), Thousand Lakes, LLC ("Thousand Lakes"), SPF Funding, LLC ("SPF Funding"), PL Ltd., Inc. ("PL Ltd."), Edge One, LLC ("Edge One"), MGC Finance, Inc. ("MGC Finance"), PAC Funding, LLC ("PAC Funding") and Palm Beach Finance Holdings, Inc. ("Palm Beach")." Dkt. No. 149 pg. 22 fn. 1.

[34] The proof of claim filed in the SPEs' bankruptcy cases refers to the proof of claim filed in the main case, 08-45257. *See* P.O.C. 31-1 in Case No. 08-45328; P.O.C. 27-1 in Case No. 08-45326. In this duplicate claim, Interlachen does not explicitly assert a tort claim against either SPE. Instead Interlachen states they are seeking claims against all Petters affiliates for the reasons set forth in the proofs of claim filed against PCI and PGW. In those proofs of claim, Interlachen attaches the complaint filed against PCI in the district court. *See* POC 83-1 in Case. No. 08-45257. That attached complaint does not make any allegations against either of the SPEs and does not clarify the nature of any claim, to the extent one exists, against the SPEs.

[35] Dkt. No. 149 ¶ 79(a)(2) pg. 28.

[36] To the extent the Plaintiff would have this same tort theory apply to any other creditor named in the Complaint, the pleading is similarly deficient and must be remedied if pursued.

[37] This theory is never stated in the Complaint, it only appeared through briefing. *See* Dkt. No. 103. The word "tort" appears nowhere in the 126-page Complaint.

Petters' entities.  The fact that the claim was allowed against the consolidated estate says nothing about Interlachen's non-bankruptcy claim for standing purposes.[38]  The Court cannot infer from the Complaint, or the proof of claim, that Interlachen would have an enforceable claim, tort or otherwise, under Minnesota state law.

Unless the Plaintiff pleads allegations that Interlachen has or may have a tort claim against the SPEs, the nature of that claim, and how the claim arose, no inference can be drawn that such a tort claim is allowable.  Without those fact allegations and that inference, the Plaintiff has not established a plausible narrative for standing under § 544(b) for the tort creditor theory. The Court notes that if the Complaint did establish a plausible basis for a tort claim, it still would not resolve the standing issue for Counts 8, 13, 19, and 23 which sound in Minn. Stat. § 513.45.

Under Minn. Stat. § 513.45, for a trustee to step into the shoes of a creditor, the creditor's claim against the debtor must have arisen before the transfer to be avoided was made.[39] According to the Complaint, Interlachen did not exist as an entity until February 2008 and did not lend to PCI until April 2008. However, the transfers that the Plaintiff now seeks to avoid were made as early as 1998 and as late as September 2008.[40]  The attachments to the Complaint, charting out the numerous transfers various Petters entities made to the Defendants, shows that some transfers were made after April 2008, but many were made prior to April 2008.[41]  Since Interlachen did not lend to PCI until April 2008, Interlachen cannot provide the Plaintiff with standing for pre-April 2008 transfers. Accordingly, Interlachen does not provide the Plaintiff with standing to prosecute Counts 8, 13, 19, and 23.

---

[38] *See e.g.*, SubCon Standing at 447-48.
[39] Minn. Stat. § 513.45(a).
[40] Dkt. No. 149 ¶ 79(a)(2)(A)-(D).
[41] *Id.*

> b.  *The Plaintiff has sufficiently pleaded his standing to pursue  § 544(b) claims under the insider reverse veil piercing doctrine*

The Plaintiff asserts that he may "reverse pierce the corporate veil" between PCI and the SPEs to treat them as "one entity for all purposes stated herein and with respect to all causes of action pleaded herein. . ." and thereby has standing under § 544(b).[42]  Reverse veil piercing takes many forms and the Plaintiff did not specify on which form he relies.  The Court will therefore review the forms of veil piercing in order to best characterize the Plaintiff's theory in order to determine its applicability.

Each form of veil piercing is essentially a disregard of corporate separateness.[43]  Whether to pierce a corporate veil is an issue governed by state law.[44]  Disregard of a corporate entity is an equitable remedy "generally . . . not available, absent fraud."[45]

The first and most common variety of corporate veil piercing is the vertical veil pierce.[46] In a vertical pierce, a court pierces a limited liability entity's veil to hold the entity's principal liable for the entity's obligations.[47]  Liability therefore extends from the limited liability entity to the entity's principal.

In a reverse veil pierce, either a corporate insider or a person with a claim against a corporate insider has the insider and the corporate entity treated as alter egos for some purpose.[48] There are therefore two distinct forms of reverse veil piercing, each characterized by whether the party seeking to pierce a limited liability entity's corporate veil is outside or inside the limited liability entity.

---

[42] Dkt. No. 149 ¶ 101 pg. 54.
[43] *Erickson–Hellekson–Vye Co. v. A. Wells Co.*, 217 Minn. 361, 15 N.W.2d 162, 173 (1944); *see also Roepke v. W. Nat'l Mut. Ins. Co.*, 302 N.W.2d 350, 352 (1981).
[44] *In re Stoebner v. Lingenfelter*, 115 F.3d 576, 579 (8th Cir.1997).
[45] *G.G.C. Co. v. First Nat'l Bank of St. Paul*, 287 N.W.2d 378, 384 (Minn.1979).
[46] Sometimes referred to as traditional veil piercing.
[47] *Victoria Elevator Co. of Minneapolis v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979).
[48] *See Gregory S. Crespi*, The Reverse Pierce Doctrine: Applying Appropriate Standards, 16 J. Corp. L. 33 (1990).

In an *insider* reverse veil pierce, a limited liability entity's insider seeks to pierce the corporate veil so that the insider may use the entity's claims against third parties.[49][50]  In *Roepke*, the Minnesota Supreme Court framed insider reverse veil piercing as a situation in which "we are not faced with a creditor attempting to pierce the corporate veil to reach an insider; instead we must consider an insider (or someone claiming through him) attempting to pierce the corporate veil from within the corporation.  In this case the pierce is advocated so that the corporate shareholder and the corporate entity shall be considered one and the same."[51]

In an *outsider* reverse veil pierce, a limited liability entity's creditor seeks to hold the entity liable for the insider's obligation.[52]  An outsider reverse veil piercing claim originates from outside the limited liability entity, with liability extending from the entity to the entity's insider.

Finally, there is horizontal veil piercing, in which a limited liability entity is considered to be the alter ego of another limited liability entity with the same owner.[53]  In this situation, a creditor with a claim against one of the limited liability entities seeks to disregard corporate separateness between the entities to reach assets belonging to both.

Based on the facts alleged here, insider reverse veil piercing is the appropriate characterization for the Plaintiff's requested relief. The Court must next determine whether insider reverse veil piercing is an appropriate remedy under applicable law.

---

[49] *In re Phillips*, 139 P.3d 639, 644-645 (Colo. 2006); *citing Crespi*, 16 J.Corp.L. 33, 34 (1990).
[50] Insider reverse veil piercing may be used for other purposes inapplicable here.
[51] *Roepke v. W. Nat. Mut. Ins. Co.*, 302 N.W.2d 350, 352 (Minn. 1981).
[52] *See e.g., Acree v. McMahan*, 585 S.E.2d 873, 874 (Ga. 2003).
[53] *Walkovszky v. Carlton*, 18 N.Y.2d 414, 416 (N.Y. 1966).

> i.    *Insider Reverse Veil Piercing under Delaware and Minnesota Law.*

PCI and PC Funding are Delaware corporations, while SPF Funding is a Minnesota corporation. Whether insider reverse veil piercing is an appropriate remedy under the facts of this case is an issue of first impression under Minnesota and Delaware law.

In the Eighth Circuit, the issue of whether to pierce a corporate veil is a legal determination governed by state law.[54] When interpreting a state's laws, federal courts are bound by decisions of that state's highest court.[55] When there is no state court precedent for the federal court to rely on, the federal court must predict how the state high court would rule.[56] In doing so, the federal court should look to intermediate state court precedent as persuasive authority.[57] Thus, this Court's task is to determine whether the high courts of Minnesota[58] and Delaware[59] would permit insider reverse veil piercing on the facts presented here.

Courts have found insider reverse veil piercing is an appropriate basis for relief for the same policy reasons that justify a "traditional" veil piercing claim.[60] Like traditional veil piercing cases, equity is the overwhelming factor in determining whether insider reverse piercing

---

[54] *Stoebner v. Lingenfelter*, 115 F.3d 576, 579 (8th Cir.1997).

[55] *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006).

[56] *See Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010); *Minnesota Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006); *Cont'l Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1007 (8th Cir. 2006).

[57] *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010).

[58] *See United States v. Eleven Million Seventy-One Thousand and Eighty-Eight Dollars and Sixty-Four Cents ($11,071,188.64) in United States Currency, More or Less, Seized from LaOstriches & Sons, Inc.*, 825 F.3d 365, 372 (8th Cir. 2016) (implying that insider reverse veil piercing is not prohibited in the Eighth Circuit).

[59] Though a Delaware court has never decided whether insider reverse veil piercing is appropriate under Delaware law, some courts have held that Delaware courts would allow insider reverse veil piercing in appropriate circumstances. *See Sky Cable, LLC v. Coley*, 2016 WL 3926492, at *13, *18 (W.D. Va. July 18, 2016); *see also Crystallex International Corp. v. Petroleos de Venezuela, S.A.; PDV Holding, Inc.; and CITGO Holding, Inc.*, 2016 WL 5724777 (D. Del. Sept. 30, 2016).

[60] *C.F. Trust, Inc. v. First Flight L.P.*, 580 S.E.2d 806, 811 (Va. 2003); *see also State v. Easton*, 647 N.Y.S.2d 904, 909 (Sup. Ct. 1995).

is appropriate.[61]   Conversely, if injustice is not corrected by permitting reverse piercing, then it should not be allowed.[62]

> 1.  The Delaware Supreme Court would allow insider reverse veil piercing in an appropriate case.

The foregoing considerations align with the policy reasons articulated by Delaware courts in allowing vertical veil piercings. That said, disregarding corporate separateness is a remedy Delaware courts do not take lightly.[63]   While there is no case in which the Delaware Supreme Court has specifically permitted insider reverse veil piercing, there are many examples of veil piercing in Delaware case law. [64]   There is no reason to believe the Delaware Supreme Court would not permit insider reverse veil piercing in an appropriate context as the Delaware Supreme Court stated in *Adams v. Clearance Corp.* that disregarding the corporate form "can *always be done* if necessary to prevent fraud or chicanery,…."[65]   In *Sky Cable, LLC v. Coley*, "the Court of Chancery of Delaware suggested . . . that a reverse-pierce claim 'might have prevailed' had the claim been properly presented and supported."[66]   Further, there are other Delaware cases indicating that insider reverse veil piercing may be available in certain circumstances.[67]

---

[61] *See e.g., Cargill, Inc. v. Hedge*, 375 N.W.2d 477, 479 (Minn. 1985).

[62] *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999).

[63] *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999).

[64] *Adams v. Clearance Corp.*, 121 A.2d 302, 308 (Del. 1956); *See also Maloney-Refaie v. Bridge at Sch., Inc.*, 958 A.2d 871, 881 (Del. Ch. 2008); *In re Sunstates Corp. S'holder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001); *Outokumpu Eng'g Enterprises, Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 729 (Del. Super. 1996); *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 269 (D. Del. 1989).

[65] *Adams v. Clearance Corp.*, 121 A.2d 302, 308 (Del. 1956) (emphasis added).

[66] *Sky Cable, LLC v. Coley*, No. 5:11CV00048, 2016 WL 3926492, at *13 (W.D. Va. July 18, 2016); *citing Cancan Development, LLC v. Manno*, No. CV 6429-VCL, 2015 WL 3400789, at *22 (Del. Ch. Mar. 30, 2015), aff'd, 132 A.3d 750 (Del. 2016).

[67] One case implicitly acknowledged that insider reverse veil piercing may be a permissible remedy: "[a] creditor of the parent corporation may not, in the absence of fraud, disregard the separate existence of a subsidiary corporation and look directly to specific assets of a subsidiary for satisfaction of his claim against the parent." *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 687 (Del. Ch. 1959); see *also IM2 Merch. & Mfg., Inc. v. Tirex Corp.*, 2000 WL 1664168, at *4 FN 11 (Del. Ch. Nov. 2, 2000); *Abbey v. Skokos*, 2006 WL 2987006, at *2 (Del. Ch. Oct. 10, 2006); *MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at *12 FN 90 (Del. Ch. Dec. 30, 2010); *Cancan Dev., LLC v. Manno*, 2015 WL 3400789, at *22 (Del. Ch. May 27, 2015), aff'd, 132 A.3d 750 (Del. 2016); *Delaware Acceptance Corp. v. Estate of Metzner*, 2016 WL 632893, at *2 (Del. Ch. Feb. 17,

Permitting insider reverse veil piercing would serve the same policy goals which justify traditional corporate veil piercing. Delaware is a chartering jurisdiction, and therefore has strong policy reasons to prevent Delaware corporations from being used as vehicles for fraud.[68]  Indeed, "Delaware's legitimacy as a chartering jurisdiction depends on it."[69]  Lower courts permit piercing the corporate veil as a remedy for fraudulent use of the corporate form: "[veil piercing] may be done only in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation require it, are involved."[70]  In order to pierce the corporate veil under Delaware law, the corporate structure must cause "fraud or similar injustice. Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud."[71]  Here, the allegations of fraud are sufficiently pleaded.  This Court therefore concludes that the Delaware Supreme Court would allow insider reverse veil piercing in order to remedy the type of Ponzi scheme alleged in this case.

2. The Minnesota Supreme Court would permit insider reverse veil piercing on the facts of this case.

Minnesota courts have allowed traditional veil piercing in many cases[72] and insider reverse veil piercing in certain cases.[73]   As in Delaware, piercing the corporate veil is a remedy used "to avoid injustice or fundamental unfairness."[74]  The same policy considerations applicable in Delaware also support an application of insider reverse veil piercing in Minnesota.  In

---

2016); *Spring Real Estate, LLC v. Echo/RT Holdings, LLC*, 2016 WL 769586, at *3 (Del. Ch. Feb. 18, 2016).  The parties also relied heavily on the Southern District of Texas ASARCO decision, which supports an application of insider reverse veil piercing. *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 325 (S.D. Tex. 2008).
[68] *Hamilton Partners, L.P. v. Englard*, 11 A.3d 1180, 1213 (Del. Ch. 2010).
[69] *Hamilton Partners*, 11 A.3d at 1213 (Del. Ch. 2010).
[70] *Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. Ch. 1968).
[71] *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183–84 (Del. Ch. 1999).
[72] *See Equity Trust Co. Custodian ex rel. Eisenmenger IRA v. Cole*, 766 N.W.2d 334, 339 (Minn. Ct. App. 2009).
[73] The facts of those cases are distinguishable from the facts of this case. *Roepke v. W. Nat. Mut. Ins. Co.*, 302 N.W.2d 350 (Minn. 1981); *Cargill, Inc. v. Hedge*, 375 N.W.2d 477 (Minn. 1985); *State Bank in Eden Valley v. Euerle Farms, Inc.*, 441 N.W.2d 121 (Minn. Ct. App. 1989).
[74] *Barton v. Moore*, 558 N.W.2d 746, 749 (Minn. 1997).

*Matchan v. Phoenix Land Inv. Co.*, the Minnesota Supreme Court stated that: "[w]here a corporation has been organized and used as an instrument of fraud…courts will go as far as necessary in disregarding the corporation and its doings in order to accomplish justice. Such a corporation is a mere parasitic growth, a mass of fungus, which will be lopped off clean whenever necessary to sound results."[75]  Declining to disregard corporate separateness between the SPEs and PCI would only serve to further Petters' fraud. Therefore, this Court finds that the Minnesota Supreme Court would allow insider reverse veil piercing under the facts pleaded asserting fraud under Petters' Ponzi scheme.

ii.   *The Plaintiff has adequately pleaded that insider reverse veil piercing as an appropriate remedy*

In order to "state a 'veil-piercing claim,' the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors."[76]  Whether to pierce the corporate veil is primarily a question of fact.[77]  In determining whether it is appropriate to pierce a corporate veil, courts also examine "factors which reveal how the corporation operates and the particular defendant's relationship to that operation."[78]  These factors include whether the corporation was adequately capitalized for the corporate undertaking, whether the corporation was solvent, whether the dominant shareholder siphoned corporate funds, whether the corporation simply functioned as a facade for the dominant shareholder, and whether corporate formalities were observed, including whether dividends were paid, corporate records kept, and whether officers and directors functioned

---

[75] *Matchan v. Phoenix Land Inv. Co.*, 159 Minn. 132, 138, 198 N.W. 417, 420 (1924).
[76] *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003).
[77] *Chao v. Occupational Safety & Health Review Comm'n*, 401 F.3d 355, 365 (5th Cir. 2005).
[78] *Maloney-Refaie v. Bridge at Sch., Inc.*, 958 A.2d 871, 881 (Del. Ch. 2008).

properly.[79]  In Minnesota, courts also consider whether innocent creditors are impacted by the reverse veil pierce along with other policy goals.[80]

The Court finds that the Complaint includes sufficient factual allegations to support the Plaintiff's request to pierce the corporate veil between PCI and the SPEs under the factors just stated.  First, in its pleading of the Ponzi scheme, the Plaintiff has adequately alleged that the SPEs were not adequately capitalized, that the SPEs were insolvent, that PCI siphoned the SPEs funds, and that corporate formalities were not observed. The Plaintiff has plausibly alleged that PCI used the SPEs as a facade for PCI and that PCI and the SPEs were alter egos,[81] how PCI and the SPEs participated in Petters' fraud, and the damage caused by the fraud.

Next, the Plaintiff has alleged that PCI was the sole shareholder of both PC Funding and SPF Funding,[82] which if proven, eliminates the possibility of any harm to innocent shareholders. The impact on creditors which would result from piercing the corporate veil between PCI and the SPEs does not on its face outweigh the other equitable considerations implicated by the alleged facts.  The Plaintiff has sufficiently asserted the Defendants' lack of innocence in the Complaint.[83]  If proven, the Plaintiff may be able to pursue a "subversion" basis of insider reverse veil piercing cases.[84]  The Complaint details that there were no legitimate underlying transactions to support the lending relationship between any Petters entity and the Defendants.[85] Thus, the defendants' expectations in lending to Petters were damaged at the point they parted with funds, because Petters was running a Ponzi scheme and not the business he represented.  As

---

[79] *Maloney-Refaie*, 958 A.2d at 881.
[80] *See  Cargill, Inc. v. Hedge*, 375 N.W.2d 477, 479 (Minn. 1985).
[81] ¶¶ 82-102.
[82] And that Petters was the sole shareholder of PCI.  Dkt. No. 149, pg. 2, ¶ 2.
[83] Dkt. No. 149, ¶ 114.
[84] The allegations that Opportunity Finance knew of the fraud and lent anyway are akin to the usury cases where as a technical matter the corporate form does not break any laws but the purpose behind the corporate form does.  This kind of arrangement would serve no other purpose than to subvert fraud laws, especially in light of admissions made on behalf of Opportunity Finance. *See In re Petters Co., Inc.*, 550 B.R. 438, 446 FN.16 (Bankr. D. Minn. 2016).
[85] Dkt. No. 149, ¶¶ 53-71, 89, 117.

such there was no true separateness between PCI and the SPEs.[86]  Piercing the corporate veil

does not damage creditor expectations.[87]  It would be unreasonable and illogical to hold that

Opportunity Finance's expectations of separateness would be the same irrespective of fraud.  In

sum, the Plaintiff has adequately pleaded facts that if proven would support an application of

insider reverse veil piercing.

### c.  PCI made transfers directly to the Defendants

The last theory of standing proffered by the Plaintiff is that some transfers subject to

avoidance were made by PCI directly to the Defendants and not to the SPEs.  Based on this

theory, one of  PCI's many creditors could provide the Plaintiff with standing under § 544(b) to

bring claims on behalf of the PCI estate.  The Plaintiff has adequately alleged the existence of

such a creditor.[88]  The Plaintiff has also adequately alleged that PCI made transfers directly to

the Defendants as Exhibit K to the Complaint contains a list of transfers allegedly made by PCI

to International Investment Opportunity.[89]  Additionally, Exhibits N and O identify at least 13

transfers from PCI to either the Sabes Family Foundation or the Minneapolis Foundation, the

dates those transfers were made, the amounts, and the underlying documents giving rise to the

debts.[90]

The transfers included in Exhibits L and M cover transfers made by PC Funding to

Opportunity Finance and its principals.[91]  The heading of that paragraph suggests that some of

---

[86] *See In re Petters Co., Inc.*, 506 B.R. 784, 789 (Bankr. D. Minn. 2013).

[87] Regardless of the Defendants' statements that they relied on corporate separateness under Delaware law [Dkt. No. 41, pg. 29], there can be no legitimate expectation of separateness when fraud is involved.  It is well established under Delaware case law that the corporate veil is vulnerable to fraud.  *See e.g., Adtile Techs. Inc. v. Perion Network Ltd.*, 2016 WL 3475335, at *3 (D. Del. June 24, 2016); *Maloney-Refaie v. Bridge at Sch., Inc.*, 958 A.2d 871, 881 (Del. Ch. 2008); *Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 392 (D. Del. 2012); *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 793 (Del. Ch. 1992).

[88] Dkt. No. 149, ¶78, 79.

[89] *See* Dkt. No. 149, ¶ 116, pg. 65; *see also* Exhibit K Dkt. No. 149-2, pg. 33.

[90] Dkt. No. 149-3, pg. 31-36.

[91] *See* Dkt. No. 149, ¶ 117, pg. 65; Dkt. No. 149-3, pg. 1-30.

the transfers were made by PCI, but the exhibit provides no detail on which transfers were made

by PC Funding and which were made by PCI.  This deficiency can be cured by amendment so

dismissal with prejudice is not warranted.[92]  The list of transfers in the exhibits is not intended to

be exhaustive.[93]  In the event the Plaintiff seeks to avoid additional transfers made directly by

PCI the Plaintiff must tie those transfer back to PCI, consistent with this Court's ruling in

*Common Issues II* Ruling # 7A.[94]

> d.  *The Plaintiff has not adequately stated a claim under § 550*

The Complaint contains the allegation that "to the extent that [the Defendants are not an

initial transferees of the SPE,] they are immediate or mediate transferees of the initial

transferees… ."[95]  In order to establish that the Defendants are liable under § 550, the Plaintiff

must plausibly allege that the initial transfer from PCI to the SPEs is avoidable. Because the

Plantiff  pleaded that the initial transfer is avoidable under an actual fraud theory, the Plaintiff

must satisfy the heightened pleading standards of F.R.C.P. 9(b). The Complaint identifies the

who – PCI to the SPEs,[96] but the Complaint fails to establish what was transferred (whose

money, how much), when it was transferred, how it was transferred, or why it was transferred

(aside from furthering the fraud). The Plaintiff has therefore failed to sufficiently allege that the

initial transfer from PCI to the SPEs is avoidable.

In terms of sufficiently pleading the subsequent transfers from the SPEs to the

Opportunity Finance defendants, the Plaintiff has met his burden.  He has largely followed the

same formula previously approved by the Court in *Common Issues II* Ruling # 7A.[97]

---

[92] *U.S. ex rel. Gaudineer & Comito, L.L.P. v. Iowa*, 269 F.3d 932, 936 (8th Cir. 2001).
[93] *See* Dkt. No. 149, ¶ 117.
[94] *In re Petters Co., Inc.*, 495 B.R. 887, 906 (Bankr. D. Minn. 2013), as amended (Aug. 30, 2013).
[95] *See* Dkt. No. 149, ¶ 147.
[96] *Freitas v. Wells Fargo Home Mtg., Inc.*, 703 F.3d 436, 439 (8th Cir.2013); *quoting Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (requiring the newspaper elements).
[97] *In re Petters Co., Inc.*, 495 B.R. 887, 892 (Bankr. D. Minn. 2013), as amended (Aug. 30, 2013).

*e.  The Trustee has standing under § 547*

The Defendants have also argued that the Complaint should be dismissed because the Plaintiff does not have standing under § 547.[98]  The theory is that a trustee can only avoid a transfer if avoiding the transfer benefits one of the debtor's actual creditors.  By the Defendants' logic, any avoidance of a transfer made to them would circle back and only benefit them since they are the only creditors of the SPEs.  However, the plain language of § 550 permits a trustee to recover property or its value for the benefit of the *estate*.  A creditor and the estate are not one and the same.[99]  For that reason, the Defendants' argument fails.  Secondarily, the Court has granted substantive consolidation of the respective Petters entities' estates, which treats them all as a singular estate.[100]  Thus, any avoidance for the benefit of the SPE estates is for the benefit of the consolidated estate and many creditors' claims will be satisfied out of that estate.  This argument for dismissal has no merit.

## II. <u>Substantive Allegations</u>

The remaining arguments for dismissal focus on the substantive allegations contained in the Complaint.  The Defendants argue that the Complaint contains a number of deficiencies, which are discussed next.

*a.  Transferring fully encumbered property to satisfy the claim of a creditor holding a lien on that property is not an avoidable transfer*

To state a claim for avoidance under MUFTA, a plaintiff must allege that the debtor transferred an asset.[101]  Asset is defined as property of the debtor, excluding property that is subject to a *valid* lien.[102]  The Defendants argue that the Plaintiff has failed to state a claim to

---

[98] Dkt. No. 41, pg. 25-26.
[99] *See In re DLC, Ltd.*, 295 B.R. 593, 607 (B.A.P. 8th Cir. 2003), aff'd sub nom. *Stalnaker v. DLC, Ltd.*, 376 F.3d 819 (8th Cir. 2004); *see also* 11 U.S.C. § 101(10).
[100] Bky Case No. 08-45257 Dkt. No. 2098.
[101] Minn. Stat. § 513.41(16).
[102] *See* Minn. Stat. § 513.41(2) (emphasis added).

avoid fraudulent transfers made by the SPEs since the Complaint alleges the SPEs granted

Opportunity Finance a lien on all of the SPEs' assets.[103]  The Defendants point to these liens to

support their argument that no property transferred by the SPEs qualifies as an asset under

MUFTA.[104]  For this argument to have any merit, the Defendants' liens must be valid.

In Counts 1 and 2 of the Third Amended Complaint, the Plaintiff has added claims to

avoid the incurrence of the debt obligation between the SPEs and Opportunity Finance as a

fraudulent transfer.[105]  If the Plaintiff is successful on these claims, then he can overcome the

definitional hurdle in Minn. Stat. § 513.41(2).  The Defendants counter by asserting that

avoidability and enforceability are not the same, which is correct.  That an obligation is

avoidable does not mean it is unenforceable.[106]  But the Plaintiff's claim for avoidance of the

obligation incurred under Counts 1 and 2 is based on actual fraud.  As the Court explained in the

*Effect of Finn* decision, avoiding a transfer made in the course of a rolling Ponzi scheme as

actually fraudulent necessarily implicates a finding that the debt obligation was not honestly

incurred.[107]  If a debt is not honestly incurred then it would not be enforceable as a matter of

policy under Minnesota law.[108]  If the obligation and liens are not enforceable then any transfer

made in satisfaction of them would be an asset of the debtor, and would be included in §

513.41(2).

The Plaintiff does not have to prove the liens were invalid at this stage of the litigation in

order to except the transferred assets from the definitional exclusion in MUFTA.  The Plaintiff

---

[103] *See* Dkt. No. 149, ¶ 56.
[104] Dkt. No. 161, pg. 20-21.
[105] Dkt. No. 149, pg. 69-71.
[106] *See In re Sheldahl, Inc.*, 298 B.R. 874, 876 (Bankr. D. Minn. 2003) (discussing avoidability under 11 U.S.C. § 545 versus enforceability under state law).
[107] *In re Petters Co.*, 550 B.R. 457, 468 (Bankr. D. Minn. 2016).
[108] *Isles Wellness, Inc. v. Progressive N. Ins. Co.*, 725 N.W.2d 90, 92–93 (Minn. 2006) ("[w]e examine each contract to determine whether the illegality has so tainted the transaction that enforcing the contract would be contrary to public policy.  As a general rule, 'a contract is not void as against public policy unless it is injurious to the interests of the public or contravenes some established interest of society.'") (citations omitted).

need only plausibly allege a claim to avoid the debt obligation and associated lien.  Whether the

claim is ultimately successful will be determined later.  A complaint does not fail merely because

the viability of one claim is predicated on the success of another.[109]  If the Plaintiff has properly

pleaded the avoidance of the obligation, then he has properly stated a claim for Counts 1 and 2,

as discussed below.

### b. The Plaintiff has properly stated a claim under § 548

The Defendants make the same argument about lien avoidability and enforceability for

the claims arising under § 548. The outcome is the same as it is for the § 544(b) claims.  Unlike

MUFTA, the Bankruptcy Code provides no statutory carve-out excepting property subject to a

lien from the definition of debtor property.  Instead, "[t]he nature and extent of a debtor's interest

in property are determined by state law."[110]  Thus the outcome on this issue under the

Bankruptcy Code is the same as it is under MUFTA and the Plaintiff has properly stated a claim

under § 548.[111]

### c. Pleading the avoidance of the obligation in Counts 1 & 2

The Defendants argue for dismissal of Counts 1 and 2 in the Third Amended Complaint

for failure to state a claim.[112]  These two counts are for avoidance of the debt obligation the SPEs

incurred by issuing promissory notes to Opportunity Finance as part of the Ponzi scheme.[113]

Count 1 arises under § 548 of the Bankruptcy Code and Count 2 arises under § 544(b) and

---

[109] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007) ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely'").

[110] *In re Mehlhaff*, 491 B.R. 898, 900 (B.A.P. 8th Cir. 2013); *citing Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

[111] *See also, In re Drenckhahn*, 77 B.R. 697, 705 (Bankr. D. Minn. 1987) (stating a debtor does not transfer his own property for purposes of § 727(a)(2)(A) if that property is subject to a valid and enforceable lien).

[112] The Defendants note, following the Court's directive, that they only addressed the sufficiency of Count 2. Dkt. No. 161, pg. 19 FN 10.  However both Counts 1 and 2 are treated here such that they impact the plausibility of other counts in the Complaint.

[113] As well as the Security Agreements and all other promissory note transactions. ¶ 134.

MUFTA.  Since both of these counts are based on actual fraud they are subject to the heightened pleading requirements of F.R.C.P. 9(b) and the "newspaper elements."[114]

The Plaintiff has met his pleading burden for Counts 1 and 2 based on the rulings made in *Common Issues II* Ruling # 7A.[115]  There the Court held that the Plaintiff's template of describing the scheme (how the particular defendant interfaced with the scheme, the number of note transactions, the interest rates, the total amount of the transfers, and the amount of false profits received) was sufficient to identify the transfers.[116]  Further, the Court explained "[t]he details of the tie-back [into particular note transactions] are a subject for the discovery process."[117]

This ruling is not altered by *Finn v. Alliance Bank*.[118]  The Defendants here, much like the Edgewater defendants in *Common Issues II*, advocate a standard whereby a plaintiff must plead all elements of the cause of action for each and every note transaction -  over 700 of them – based on the "transfer-by-transfer" comment in the *Finn* decision.  Aside from the redundancy this would cause, this kind of pleading is not necessary for actual fraud claims.  The Court in *Finn* stated that the inquiry under a <u>constructive</u> fraud claim is a transfer-by-transfer analysis, since the plaintiff is required to plead a series of attendant circumstances (value, insolvency, etc.) that must exist at the time of every transfer in order to be actionable.[119]  This same logic is not applicable to <u>actual</u> fraud claims where the only attendant circumstance is the fraudulent intent of the transferor.  A plaintiff is not required to copy and paste the allegations regarding fraud or the

---

[114] *Freitas v. Wells Fargo Home Mtg., Inc.*, 703 F.3d 436, 439 (8th Cir.2013).
[115] *In re Petters Co.*, 495 B.R. 887, 905-06 (Bankr. D. Minn. 2013), as amended (Aug. 30, 2013).
[116] *Id.*
[117] *Id.*
[118] *Finn v. Alliance Bank*, 860 N.W.2d 638 (Minn. 2015).
[119] *Finn*, 860 N.W.2d at 647 (Minn. 2015).

badges of fraud for over 700 note transfers when they all took place under the same (or highly similar) set of fraudulent circumstances.[120]

Though Counts 1 and 2 seek to avoid the incursion of the note debt, as opposed to repayment on the note, the same logic from *Common Issues II* Ruling # 7A applies.  In the Third Amended Complaint the Plaintiff has followed the same template described in the earlier decision.[121]  In addition to meeting the # 7A requirements the Plaintiff has also included a schedule of the note obligations to be avoided in Exhibit G for PC Funding and Exhibit H for SPF Funding.[122]

The fraudulent intent element required under each of these Counts has been adequately pleaded.  Under Count 1, the Plaintiff can avail himself of the Ponzi scheme presumption for claims arising under the Bankruptcy Code, which will be addressed in detail below.  As for the Count 2 claim arising under MUFTA, the Court has already addressed adequate pleading of the fraudulent intent element in *Finn v. Alliance Bank*.[123]  It is sufficient for a plaintiff to make fact averments supporting fraudulent intent and allege that the same set of circumstances applied to the remainder of the transfers.  At trial, the Plaintiff will be required to prove that intent to defraud existed as to each transfer.  Accordingly, the Plaintiff will be granted leave to amend the Complaint to comply with the rulings made in this order and in this Court's May 31, 2016, order.[124]

---

[120] The Defendants conceded as much at oral argument.  Dkt. No. 166 pg. 150-53.
[121] *See* Dkt. No. 149 ¶¶ 117-129.
[122] *See* Dkt. No. 149-2.
[123] *Finn v. Alliance Bank*, 860 N.W.2d 638 (Minn. 2015).
[124] *In re Petters Co., Inc.*, 550 B.R. 457 (Bankr. D. Minn. 2016).

### d. *Dismissal for failure to plead reasonably equivalent value*

The Court thoroughly addressed the dispute over reasonably equivalent value under

MUFTA, both as a matter of law and as a matter of pleading, in the *Effect of Finn* decision.[125]

The only remaining disputes concerning reasonably equivalent value are those arising under

§ 548.  As with the MUFTA claims, the Defendants present two arguments for dismissal: first,

the Plaintiff cannot allege that the transfers made by the SPEs lacked reasonably equivalent value

due to the presence of a debt and security instrument.[126] Second, if the Plaintiff is able to

overcome this hurdle, he has not sufficiently alleged lack of reasonably equivalent value to state

a claim under F.R.C.P. 8.[127]

The parties disagree on whether Minnesota law or federal law governs the question of

value exchanged.  The disagreement is irrelevant since the outcome under either legal standard is

the same.

The matter of reasonably equivalent value in these clawback cases has been split into two

component parts: principal, on the one hand, and interest or false profits, on the other.  In

*Common Issues III* the Court ruled that transfers made in repayment of the interest component of

a debt within the context of the Petters scheme were not *per se* reasonably equivalent value under

*Scholes v. Lehman*[128] and that the Plaintiff could proceed with his constructive fraud claims.[129]

The ruling on reasonably equivalent value in the *Effect of Finn* decision does not differ in its

outcome.[130]  There the Court explained "*Finn* itself does not bar the Plaintiff here from

maintaining suit in avoidance on the grounds of constructive fraud; it cannot be said that

reasonably equivalent value matched to a Debtor's transfer, as a matter of law…. There is still a

---

[125] *In re Petters Co. Inc.*, 550 B.R. 457, 482 (Bankr. D. Minn. 2016).
[126] Dkt. No. 152, pg. 11.
[127] Dkt. No. 152, pg. 13.
[128] *Scholes v. Lehman*, 56 F.3d 750, 753 (7th Cir. 1995).
[129] Ruling # 9, *In re Petters Co., Inc.*, 499 B.R. 342, 359 (Bankr. D. Minn. 2013).
[130] Ruling # 4, *In re Petters Co., Inc.*, 550 B.R. 457, 482 (Bankr. D. Minn. 2016).

viable theory for an equitable override that denies value to the interest component of repayment

on debt owing by the perpetrator of a Ponzi scheme, incurred in transactions in the main

sequential operation of the scheme, in an action for avoidance under MUFTA."[131]   The only

impact the *Finn* decision had on the original rulings is the availability of the Ponzi scheme

presumption to get from the start point to the end point.   In the *Effect of Finn* decision, the Court

explained that instead of relying on the existence of the scheme, the Plaintiff had to plead the

two-stage rolling fraud in order to implicate the rationale from *Scholes v. Lehman*, which formed

the basis of the decision in *Common Issues III*.   Thus, under both federal and state law the

Plaintiff is not barred from pleading that the transfers for interest were for less than reasonably

equivalent value.

The Plaintiff also seeks to recover principal under a constructive fraud theory.[132]   Citing

*Scholes v. Lehman*, the Plaintiff argues that only innocent investors would be entitled to a

restitution claim in an amount equivalent to principal invested.[133]   According to the Plaintiff the

Complaint has sufficiently alleged that the Defendants lacked good faith and therefore would not

be entitled to a restitution claim.[134]   If the Defendants would not be entitled to a restitution claim,

then repayment of principal, later recast as restitution, is not reasonably equivalent value as a

matter of law and the Plaintiff could pursue his constructive fraud claims to avoid the principal

component of the transfers.   The Defendants do not challenge this position for its reasoning, only

in how it was pleaded.[135]   The Court finds that the pleading for the theory is valid under § 548

and is consistent with the Court's previous rulings.[136]   Further, the Plaintiff has brought two

claims to avoid the incurrence of the debt in the first instance.   If the Plaintiff is successful on

---

[131] *Id.* at 480.
[132] Dkt. No. 158, pg. 22.
[133] *Id.*
[134] Dkt. No. 149, ¶ 114-115, pg. 58-64.
[135] Dkt. No. 161, pg. 15.
[136] *See generally In re Petters Co., Inc.*, 499 B.R. 342, at 374-375 (Bankr. D. Minn. 2013).

those claims then any repayment on those debts does not fall into the *per se* category of transfers for reasonably equivalent value.[137]   Under either theory the Plaintiff can pursue constructive fraud claims for the avoidance of repayment of investment principal.

      *e.   The availability of the Ponzi scheme presumption as a pleading device*

The availability of the Ponzi scheme presumption is one of the most significant issues in this adversary proceeding.   The Defendants argued that it was not available under MUFTA or the Bankruptcy Code as a method of pleading fraudulent intent, insolvency, or lack of reasonably equivalent value.[138]   The Defendants' position is that the Complaint has failed to state a claim since the Plaintiff improperly relied on the presumption to allege required elements for a number of his claims.   The Court has addressed this argument as it pertains to the § 544(b) and MUFTA claims in the *Effect of Finn* decision.[139]   The Court now addresses the role the Ponzi scheme presumption plays in pleading the Plaintiff's § 548 claims.

The Ponzi scheme presumption is generally defined as an evidentiary device, a substitute for other proof of some fact.[140]   A presumption works on an if-then basis: if a party can prove a scheme existed then the fact finder can presume the secondary fact must have been true as well.[141]   The presumption does not apply at the pleading stage, however, because a plaintiff is not required to *prove* anything at the pleading stage.[142]   A plaintiff is only required to make fact allegations that must be taken as true on a motion to dismiss.[143]

---

[137] The Defendants cite *In re Kendall*, 440 B.R. 526, 532 (B.A.P. 8th Cir. 2010) for the proposition that "[t]he mere fact that a contract is void, unenforceable, or illegal does not require a finding that there was no reasonably equivalent value given for purposes of § 548(a)(1)(B)."   This decision demonstrates that ultimately value will be a question of fact for the Court to decide later.

[138] Dkt. No. 161, pg. 12.

[139] *In re Petters Co.*, 550 B.R. at 465 (2016).

[140] *Finn v. Alliance Bank*, 860 N.W.2d 638, 646 (Minn. 2015).

[141] *In re Polaroid Corp.*, 472 B.R. 22, 35 (Bankr. D. Minn. 2012).

[142] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561, 127 S. Ct. 1955, 1968 (2007).

[143] *Id.*

In order to survive a motion to dismiss, a plaintiff must allege facts that plausibly demonstrate entitlement to the relief requested. The standard under *Twombly* "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations.[144] The act of describing a Ponzi scheme in a complaint, its existence and methodology, will frequently cover all the elements of the cause of action.[145] The complaint must set forth facts to establish (1) the existence of the fraudulent scheme, and (2) that the transfer in question was part of that scheme.[146] In describing the scheme, the plaintiff must show that the scheme was fraudulent, that the purveyor never had enough capital on hand to satisfy the outstanding debt due to the nature of the operation, and that the scheme never received any "value" from its creditors because the debts were never enforceable and repayment of the debt only served to perpetuate the scheme. This Court reiterates the requirements it set forth in the *Effect of Finn* decision. Here, the Plaintiff has sufficiently pleaded these facts, satisfying those requirements.[147]

The element of fraudulent intent poses a unique question in this particular case and will be addressed separately. The ruling here is limited to the pleading requirements. Determining the viability of the presumption as an evidentiary device for proving facts at trial is premature.

   *f.   The Plaintiff has sufficiently pleaded that the SPEs transferred funds with fraudulent intent*

The next basis for dismissal presented by the Defendants is that, as a matter of law, the SPEs could not have formed the requisite fraudulent intent to support the Plaintiff's actual fraud claims.

---

[144] *Bell Atl. Corp.*, 550 U.S. at 556 (2007).
[145] Logically, if the description of the scheme did not encapsulate the elements of fraudulent transfer claims then it likely was not a Ponzi scheme as it is understood to be. *In re Polaroid Corp.*, 472 B.R. 22, 33 (Bankr. D. Minn. 2012).
[146] *In re Polaroid Corp.*, 472 B.R. at 53.
[147] *In re Petters Co., Inc.*, 495 B.R. 887 (Bankr. D. Minn. 2013), as amended (Aug. 30, 2013).

Under Minn. Stat. § 513.44(a)(1) a transfer is avoidable as to a creditor if the transfer was made with the intent to hinder, delay or defraud any creditor of the debtor, whether or not the creditor's claim arose before or after the transfer was made.  A "creditor" is defined as a "person that has a claim."[148]  "Claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."[149]  Based on the plain language of the statute, if a debtor has the intent to defraud some future creditor that later gained a right to payment, even if that right is disputed, then the statute's requirements are satisfied.  Here, the Plaintiff has alleged that Interlachen had a claim against the SPEs (which can be amended). Further, the Plaintiff has alleged creditor liability between PCI and the SPEs through the insider reverse veil pierce theory.  The Plaintiff  has sufficiently pleaded these theories to have standing to pursue claims under MUFTA.

The Defendants assert that the language in 11 U.S.C. § 548(a)(1)(A) is "substantially the same" to the language in MUFTA.[150]  This Court disagrees. There are significant differences in the language between the two statutes.  A claim for actual fraud under § 548(a)(1)(A) allows a trustee to avoid any transfer made with the actual intent to hinder, delay, or defraud *any entity* to which the debtor was or became indebted.  First, unlike MUFTA, the § 548 language does not require the existence of a creditor at the time of the transfer in order to avoid the transfer.[151] Second, the plain language of the statute does not require that the debtor intended to defraud a creditor but instead "any entity to which the debtor was or became indebted."[152] Again, this

---

[148] Minn. Stat. § 513.41(4).

[149] Minn. Stat. § 513.41(3).

[150] Dkt. No. 41 pg. 37.

[151] *See* Minn. Stat. § 513.44. ("[a] transfer made or obligation incurred by a debtor is voidable as to a *creditor*….") (emphasis added).

[152] This is significant because Congress could have used the word "creditors" in this statute and did not.  This should be interpreted as deliberate. *United States v. Ahlers*, 305 F.3d 54, 59 (1st Cir. 2002) (noting "It is accepted lore that

means that even if there is no creditor at the time of a transfer that a trustee seeks to avoid, the

trustee is not barred from pursuing the claim.  A trustee needs to allege that when the transfer

was made, the debtor had the intent to defraud a party to whom the debtor owed or would later

owe a debt.  Here, the Plaintiff has alleged that SPF Funding[153] owed debts to Opportunity

Finance, the Sabes Family Foundation, and the Minneapolis Foundation.[154]  The Plaintiff has

also alleged that SPF Funding made transfers for the sole purpose of perpetuating the fraudulent

scheme.[155]  Thus, for example, when SPF Funding made a transfer to the Sabes Family

Foundation and SPF Funding owed Opportunity Finance on an existing note, or Opportunity

Finance entered into a new note transaction, Opportunity Finance would qualify as "any entity to

which the debtor was or later became indebted."  It is plausible that the SPEs had the fraudulent

intent at the time the transfers were made to meet the requirements of § 548(a)(1)(A).[156]

The Court previously addressed the Defendant's arguments that a debtor cannot defraud

creditors by repaying an antecedent debt.  The *Finn v. Alliance Bank* decision does not abrogate

those rulings under the Bankruptcy Code and the Plaintiff has adequately pleaded avoidance of

those obligations.[157]  Further, to the extent the Defendants continue to maintain that the Plaintiff

has not adequately pleaded fraudulent intent; those arguments are not persuasive as determined

in the Court's Common Issues II Ruling #7C.  The Complaint here is sufficiently similar to the

---

when Congress uses certain words in one part of a statute, but omits them in another, an inquiring court should
presume that this differential draftsmanship was deliberate.")  To deny a debtor their discharge under 11 U.S.C. §
727(a)(2) the debtor must have made a transfer "with intent to hinder, delay, or defraud a creditor…."  Hence this
difference should be given significance.
[153] The complaint also alleges PC Funding lent to the Opportunity Finance defendants, which include six different
corporate entities.
[154] Dkt. No. 149, ¶ 109-110, pg. 56-57.
[155] Dkt. No. 149, ¶ 85, pg. 50.
[156] This is another issue that is likely moot since the requirements to plead under MUFTA are more demanding than
the requirements under the Bankruptcy Code.  If the Plaintiff is able to meet the pleading requirements under
MUFTA with the Interlachen claim and the inside reverse pierce theory, he necessarily satisfies the less demanding
here.
[157] *Finn v. Alliance Bank*, 860 N.W.2d 638, 647 (Minn. 2015).

Court's rulings in *Common Issues II* Ruling #7C that the Plaintiff has adequately pleaded badges of fraud.[158]

### g. Dismissal of lien avoidance claims

Count 24 of the Complaint is a claim asserted against all Defendants for lien avoidance under 11 U.S.C. § 506(d).[159]  The Plaintiff originally agreed to dismiss this claim but then reasserted it in the Third Amended Complaint.[160]  The Defendants argue that the Plaintiff's claim must be dismissed because a lien cannot be avoided if no proof of claim has been filed and they have not filed a proof of claim.[161]  There is a split of authority over whether a proof of claim must be filed before a lien can be avoided under this provision.[162]  The Court does not need to address that split in authority now.  In order to plead that a lien is void under § 506(d), a plaintiff[163] must allege that the creditor's claim against the debtor, which the lien secures, is not an allowed secured claim and has not been disallowed for specifically enumerated reasons.[164] [165]  That has not been done here. The Complaint contains no allegations regarding whether any of the Defendants' claims have been allowed or disallowed, or the reasons, if any, for the disallowance. The allegations contained in Count 24 are conclusory.  Therefore, the Plaintiff has failed to

---

[158] *In re Petters Co., Inc.*, 495 B.R. 887, 892 (Bankr. D. Minn. 2013), as amended (Aug. 30, 2013).

[159] Dkt. No. 149, pg. 109.

[160] Dkt. No. 45 pg. 2 n. 1.

[161] Dkt. No. 41, pg. 42.

[162] *See* Collier on Bankruptcy ¶ 506.06[4][a]4-506, p. 506-141 (16th ed. 2016).P 506.06.

[163] *See* Fed. R. Bankr. P. 7001(2).

[164] 11 U.S.C. § 506(d).

[165] The existence of this predicate fact is often determined after a proof of claim is filed, which is part of the basis for the "minority position."  *See In re Painter*, 84 B.R. 59, 62 (Bankr. W.D. Va. 1988).  However, a claim can be disallowed for many reasons not stated in § 506(d).  *See e.g., In re Enron Corp.*, 379 B.R. 425, 429 (S.D.N.Y. 2007) (where the debtor filed an action to disallow the creditor's claim for failure to repay avoidable transfers).  At some point however the issues regarding the debt which the lien secures must be addressed in order to get a declaratory judgment of void status of the lien under 506(d); *Brace v. State Farm Mut. Auto. Ins. Co.*, 33 B.R. 91, 94 (Bankr. S.D. Ohio 1983) (permitting an adversary proceeding to determine the status of the lien under § 506(a)).  If the Plaintiff is seeking only a declaratory judgment that the lien is void as a general proposition in accordance with Fed. R. Bankr. P. 7001 (and not specifically under § 506(d)), which is suggested by the verbiage of the Complaint, then the Complaint is also deficient.  However, the claim here will not be dismissed with prejudice since the deficiencies with the Complaint could be remedied upon amendment.

allege facts supporting an essential element of the claim and Count 24 must be dismissed for failure to state a claim.

### g. *Unjust enrichment*

The Court adopts the reasoning in *Common Issues III* Ruling #12 for dismissing the unjust enrichment claims in the Third Amended Complaint.[166]  The unjust enrichment claim still fails as a matter of law.  If the claims giving the Plaintiff standing to pursue avoidance of transfers made directly by the SPEs fail, then the Plaintiff, as trustee of those estates, would be without an adequate remedy.  However, the unjust enrichment claim would not inure to the estate, but to the creditors of the estate - the parties affected by the lack of an adequate remedy. Since the Plaintiff does not have standing to pursue general claims of creditors (as discussed above) and only property of the estate, he would not be permitted to pursue the unjust enrichment claim in this case. Thus, the claim for unjust enrichment must be dismissed.

## III. West LB Defendants' Unique Issues

WestLB filed its own Motion to Dismiss in this adversary proceeding.[167]  The Court addressed many of the issues raised in WestLB's motion in the *Common Issues* order and in other rulings. To the extent that WestLB's liability was affected by Opportunity Finance's Motion to Dismiss, WestLB filed joinders to the briefing on the other Unique Issues.   The rulings previously made on those Unique Issues also apply to WestLB's Motion and the litigation against them going forward.

WestLB, however, filed its own statement of Unique Issues. One of those issues remains unaddressed.[168] [169]  The parties identified the issue as:

---

[166] *In re Petters Co., Inc.*, 499 B.R. 342, at 374-375 (Bankr. D. Minn. 2013).
[167] Dkt. No. 44.
[168] Dkt. No. 64.

Whether the Trustee has failed to meet his burden of pleading claims against WestLB, pursuant to *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with particular respect to (a) the allegation that WestLB is an initial or subsequent transferee of certain transfers, and (b) to the extent the Trustee is relying upon PCI for standing, any initial transfers made to PC Funding or SPF Funding that were subsequently transferred to WestLB.[170]

### a. WestLB as initial transferee

There are no fact allegations in the Complaint that any Petters entity made a transfer directly to WestLB. Rather, the Complaint details the senior lending relationship WestLB had with Opportunity Finance, whereby WestLB provided investment funds to Opportunity Finance and Opportunity Finance then used those funds to invest with the Petters entities. Thus, any liability to WestLB rested solely with Opportunity Finance which cuts against an inference that a Petters entity made transfers directly to WestLB. There are not enough fact averments in the Complaint for the Court to determine whether it is plausible that WestLB was an initial transferee of any Petters debtor. Thus, all claims brought by the Plaintiff against WestLB as an initial transferee are dismissed.

### b. WestLB as subsequent transferee

The claims against WestLB as a subsequent transferee turn on the sufficiency of the pleading for avoidance of the initial transfers. Because recovery under § 550 is not a claim based on fraud, any claim for recovery under that statute is subject to the pleading standards of F.R.C.P. 8. rather than F.R.C.P. 9[171] Because the Plaintiff has followed the previously approved

---

[169] At the hearing on these motions counsel represented to the Court that the parties had reached a settlement and consequently counsel for WestLB provided no oral argument. Dkt. No. 166, pg. 199-200. That settlement never came before the Court; so this issue remains unresolved.

[170] Dkt. No. 64.

[171] *See* Common Issues II Ruling #7D. 495 B.R. at 917.

template, the Complaint plausibly establishes transfers were made by Opportunity Finance to WestLB after Opportunity Finance received transfers from the SPEs.[172]

In the Complaint the Plaintiff alleges that WestLB funded some transactions between Opportunity Finance and the SPEs.[173]  The Complaint details when WestLB lent money, how much was lent, what the money was for, and that WestLB communicated directly with Petters in the course of its relationship with Opportunity Finance.[174] The Complaint alleges that WestLB invested in Opportunity Finance with the expectation that Opportunity Finance would then invest with Petters.  Petters would repay Opportunity Finance, and Opportunity Finance would in turn repay WestLB.  All of these allegations allow the Court to infer that the formulaic recitation that WestLB was a subsequent transferee is plausible on its face.

The only question remaining is whether avoidance of the initial transfers has been adequately pleaded.  This has largely been addressed in this decision.  The Plaintiff's claims under § 548 against Opportunity Finance as initial transferee are adequately pleaded.  The Plaintiff's claims under § 544(b) and MUFTA against Opportunity Finance as initial transferee have not been adequately pleaded for the reasons stated herein.  If the Plaintiff remedies those deficiencies with respect to the initial transfers then the deficiencies will be cured with respect to subsequent transferees.

The Plaintiff did not adequately plead the avoidance claims on behalf of the PCI estate. As the Court noted earlier, the Plaintiff must amend the Complaint and supplement his pleading on the avoidance of the claims from PCI to the SPEs as initial transferees.[175]

---

[172] *See* Common Issues II Ruling # 7A. 495 B.R. at 906.
[173] Dkt. No. 149 ¶ 21.
[174] Dkt. No. 149 ¶ 115 g, h.
[175] Any liability for WestLB as subsequent transferee would be based on a series of avoidances.  First the Plaintiff must avoid the transfers from PCI to the SPEs, the claim for which must be amended for the reasons stated earlier in this decision.  Then the Plaintiff must avoid the transfers from the SPEs to Opportunity Finance, which also must be

As currently constituted, the Plaintiff's claims against WestLB as subsequent transferee under § 548 from the perspective of the SPEs are adequate.  The remaining claims are dismissed without prejudice.

IV. <u>Amendment of the Third Amended Complaint</u>

At oral argument a request was made to amend the Complaint in this proceeding.[176]  Here there can be no doubt that justice requires leave to amend.  The parties have long waited for resolution of these issues and in the interim the legal principles governing the Complaint have shifted.  Despite the passage of time, the Plaintiffs should have an opportunity to amend their pleadings consistent with those changes and with this decision.  In the interest of judicial economy, the Court will not require the Plaintiff to make a motion to amend.

**Conclusion**

The Defendants' Motions to Dismiss are granted in part and denied in part consistent with the rulings set forth herein, as well as in this Court's May 19, 2016, and May 31, 2016, orders.[177]

**ORDER**

IT IS THEREFORE ORDERED:

1. The Motions to Dismiss brought by the Defendants in Adv. No. 10-4301 are granted as follows:

    a. All of the Plaintiff's claims for avoidance under 11 U.S.C. § 544(b) on behalf of the estates of PC Funding and SPF Funding predicated on the existence of a tort creditor are dismissed without prejudice.

---

amended for reasons just noted.  Then the Plaintiff  must avoid the transfers from Opportunity Finance to WestLB, the claim for which has been adequately pleaded as just noted.
[176] Dkt. No. 166, pg. 199.
[177] *In re Petters Co., Inc.*, 550 B.R. 438 (Bankr. D. Minn. 2016) and *In re Petters Co.*, Inc., 550 B.R. 457 (Bankr. D. Minn. 2016).

    b.   All of the Plaintiff's claims for avoidance on behalf of the estate of PCI

against all of the Defendants for transfers identified in Exhibits L and M to the

Third Amended Complaint are dismissed without prejudice.

    c.   All of the Plaintiff's claims for recovery under 11 U.S.C. § 550 on behalf of

the estate of PCI against all of the Defendants are dismissed without

prejudice.

    d.   All of the Plaintiff's claims for recovery against WestLB under 11 U.S.C.§

550 on behalf of the estates of PC Funding and SPF Funding predicated on

avoidance of the initial transfer under 11 U.S.C. § 544(b) and MUFTA are

dismissed without prejudice.

2.  Count 24 for lien avoidance under 11 U.S.C. § 506(d) is dismissed without prejudice.

3.  Count 25 for Unjust Enrichment is dismissed with prejudice for the reasons stated in

*In re Petters Co., Inc.*, 499 B.R. 342 (Bankr. D. Minn. 2013).

4.  All of the Plaintiff's claims for avoidance under 11 U.S.C. § 544(b) on behalf of the

estates of PC Funding and SPF Funding predicated on the use of substantive

consolidation for standing are dismissed with prejudice in accordance with *In re*

*Petters Co., Inc.*, 550 B.R. 438 (Bankr. D. Minn. 2016).

5.  All of the Plaintiff's claims for avoidance under 11 U.S.C. § 544(b) are dismissed

without prejudice for the reasons stated in *In re Petters Co., Inc.*, 550 B.R. 457

(Bankr. D. Minn. 2016).

6.  The Motions to Dismiss brought by the Defendants in Adv. No. 10-4301 are denied in

all other respects.

7. Pursuant to Fed. R. Civ. P. 15(a)(2), the Plaintiff is granted leave to amend the
   Complaint in accordance with this decision and the orders issued by Judge Kishel
   after the Motions to Dismiss were filed but prior to June 1, 2016, arising out of the
   general clawback litigation in the Petters related adversary proceedings.

8. The Plaintiff shall schedule a status conference to discuss the schedule for
   amendment and answer to be held within 75 days of the date of this order.

/e/ Kathleen H. Sanberg
KATHLEEN H. SANBERG
CHIEF UNITED STATES BANKRUPTCY JUDGE